**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. _____ |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Space Exploration Technologies Corp. ("SpaceX") brings this action for declaratory and injunctive relief, alleging as follows:

## INTRODUCTION

1.     This action stems from an unlawful attempt by the National Labor Relations Board ("NLRB") to subject SpaceX to an administrative proceeding whose structure violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States.

2.     Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

3.      To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

4.      The Fifth Circuit has held that this removal power extends to administrative law judges ("ALJs") who "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

5.      Article II requires that the President "have sufficient control over the performance of [such ALJs'] functions, and, by implication, . . . be able to choose who holds the positions." *Id.* This constitutionally required degree of control is lacking when the ALJs are insulated by "[t]wo layers of for-cause protection"—that is, when the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.*; *see Free Enter. Fund*, 561 U.S. at 492–508. The Fifth Circuit therefore held that the removal restrictions for ALJs set forth in 5 U.S.C. § 7521(a) are unconstitutional as applied to ALJs for the Securities and Exchange Commission ("SEC"). *Jarkesy*, 34 F.4th at 465.

6.      The same reasoning applies to the ALJs of the NLRB, including the ALJ assigned to preside over the pending NLRB proceedings against SpaceX. Like the SEC ALJs in *Jarkesy*, NLRB ALJs are "inferior officers" who "have substantial authority" within agency investigations and enforcement actions. *Jarkesy*, 34 F.4th at 464; *see also Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by two layers of removal protection, which insulate them from oversight by the President. *See* 5 U.S.C. §§ 1202(d), 7521(a); 29 U.S.C. § 153(a). So, like the SEC ALJs in *Jarkesy*, NLRB ALJs are unconstitutionally insulated from the President's

oversight, and the Court should declare that the NLRB ALJs' having two layers of removal protection is unconstitutional. *See Jarkesy*, 34 F.4th at 464.

7.      Neither the Fifth Circuit nor the Supreme Court has decided whether the NLRB Members' layer of removal protection is unconstitutional. But the correct answer, given the relevant Supreme Court precedent and nature of the NLRB Members' functions, is a resounding yes.

8.      The NLRB may argue that its Members' removal protections are constitutional under the reasoning of *Humphrey's Executor v. United States*, 295 U.S. 602, 627–28 (1935). That ruling, particularly as the Supreme Court has recently clarified it, does not apply to the NLRB's Members today.

9.      *Humphrey's Executor* applies only to agency officials who do not exercise "executive power in the constitutional sense," as the Court concluded about the Commissioners of the Federal Trade Commission ("FTC") in 1935. *Id.* at 628; *see also Seila L.*, 140 S. Ct. at 2198; *Jarkesy*, 34 F.4th at 465 n.19. Whatever might have been true of the FTC's Commissioners in 1935, it is quite clear today that the NLRB's Members exercise substantial executive power under the Constitution. There is no justification for extending *Humphrey's Executor* to them.

10.     The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority, of course. But it also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of electoral accountability." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021).

11.     Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers

does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

12.    When a party is regulated by administrative officials who are shielded by unconstitutional removal protections, Supreme Court precedent teaches that the party is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.

13.    To prevent SpaceX from undergoing protracted administrative proceedings before an unconstitutionally structured agency—after which SpaceX is unlikely to have a chance to secure meaningful retrospective relief—the Court should stay or enjoin the current agency proceedings, declare that the NLRB's structure violates the separation of powers under Article II of the Constitution, and permanently enjoin the NLRB and its General Counsel from pursuing unfair labor practice charges against SpaceX before agency officials that are unconstitutionally insulated from presidential oversight.

14.    The NLRB proceedings against SpaceX also suffer from another constitutional infirmity. They violate the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

15.    The right to trial by jury "is a 'fundamental' component" of the American legal system and "remains one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (quoting *Reid v. Covert*, 354 U.S. 1, 9–10 (1957)).

16.    SpaceX does not take issue with the NLRA's express authorization of backpay, *see* 29 U.S.C. § 160(c), which is a form of equitable relief when it is restitutionary in nature, *see Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570–73 (1990).

17.     But the NLRB has recently claimed for itself the authority to award a broader range of relief, including traditional forms of legal relief that go far beyond the equitable restitutionary backpay remedy permitted by the statute. *See Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022).

18.     Indeed, the NLRB's administrative complaint against SpaceX seeks these expanded remedies.

19.     These new remedies, however, are nothing short of compensatory damages intended "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Id.* at 1.

20.     Money damages designed to compensate for losses are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993).

21.     But not even Congress can "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

22.     As the Fifth Circuit has held with respect to similar SEC proceedings, when an administrative agency seeks legal relief for an alleged statutory violation, the Seventh Amendment prohibits it from substituting an ALJ hearing for a trial by jury. *See Jarkesy*, 34 F.4th at 451–55.

23.     Finally, the NLRB is also unconstitutionally structured because its Members exercise all three constitutional powers—legislative, executive, and judicial—in the same administrative proceedings.

24.     This case brings the problem into clear focus: the NLRB's Regional Office for Region 31 (the "Region") has conveyed to SpaceX that it plans to ask for the NLRB Members' approval to go to federal district court to request injunctive relief against SpaceX—a quintessentially prosecutorial act of the Executive—even though the same NLRB Members would

later preside in a quasi-legislative, quasi-judicial capacity in the unfair labor practice proceeding involving the same alleged violations of the NLRA.

25.     Even after acting as prosecutor by charging SpaceX with violations of federal labor law before an Article III tribunal, the same NLRB Members would then issue the agency's ultimate order on whether SpaceX has violated federal labor law.

26.     In that adjudication, the NLRB Members would have significant leeway to adopt new interpretations of the NLRA as a policy matter and adjudicate whether the evidence supports a determination that SpaceX violated the statute as they interpret it.

27.     On top of that, the agency would then insist that subsequent judicial review before an Article III court must give significant deference to the NLRB Members' interpretations of the NLRA and findings of fact.

28.     The NLRB's current way of functioning is miles away from the traditional understanding of the separation of powers, which views "[t]he accumulation of all powers legislative, executive and judiciary in the same hands" as "the very definition of tyranny." THE FEDERALIST NO. 47 (James Madison).

29.     And although the Supreme Court upheld aspects of the NLRB's basic structure nearly a century ago, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937), the Court has subsequently clarified that the Constitution's due process guarantee precludes an individual from serving as prosecutor and adjudicator in the same case, *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

30.     If the current Members of the NLRB are asked to make a prosecutorial determination about whether SpaceX is in violation of the NLRA, there is an objectively high risk that they would not later be able to provide the neutral adjudicative forum that the Constitution

demands, and so would need to recuse from further participation in any agency adjudication against SpaceX.

31.     For this reason, too, SpaceX is entitled to declaratory and injunctive relief to ensure that it is not subjected to unlawful proceedings before an unconstitutionally structured agency.

## JURISDICTION AND VENUE

32.     This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over SpaceX's claims that fundamental aspects of the NLRB's structure violate the Constitution. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

33.     The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

34.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity; and a substantial part of the events or omissions giving rise to the claim occurred in Boca Chica, Texas, where SpaceX maintains its Starbase rocket development and launch facility, its fastest-growing facility and a key component to its operations and overall success. The NLRB's administrative proceeding targets a variety of SpaceX actions and policies that allegedly occurred across its many U.S. facilities, including in response to an "Open Letter" that was broadly distributed to employees at all SpaceX facilities across the country. For example, the administrative complaint alleges unfair labor practices based on the company President's June 15 and June 16, 2022 emails to all employees companywide, and seeks certain remedies that would affect all of SpaceX's facilities. Moreover, a significant portion of the employees who interacted with the Open Letter were based

at Starbase (in addition to employees who interacted with the Open Letter while based at SpaceX's Houston facility, which is also located in this judicial district).

## PARTIES

35.     Plaintiff SpaceX, a privately held Delaware corporation, is a pioneer in the aerospace industry, employing more than 13,000 employees in Texas, California, Florida, Washington, and Washington, D.C. SpaceX has facilities and employees in several cities in Texas, including the Starbase rocket development and launch facility in Boca Chica.

36.     Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. *See* 29 U.S.C. § 160.

37.     Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

38.     Defendant Lauren M. McFerran is Chairman of the NLRB. She is sued in her official capacity.

39.     Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

40.     Defendant Gwynne A. Wilcox is a Member of the NLRB. She is sued in her official capacity.

41.     Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

42.     Defendant John Doe is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against SpaceX, whose identity has not yet been disclosed to SpaceX. He is sued in his official capacity.

## FACTS

43.     On June 15, 2022, a small group of SpaceX employees using the company's internal communications platforms sent an Open Letter to thousands of SpaceX employees, during working hours.

44.     The Open Letter demanded that SpaceX take certain actions addressing perceived shortcomings, and solicited the thousands of recipient-employees to support the Open Letter's demands and fill out a linked survey hosted externally.

45.     The Open Letter caused significant distraction to SpaceX employees around the country.

46.     SpaceX discharged several employees involved with the Open Letter for violating numerous company policies.

47.     On November 16, 2022, former SpaceX employees (collectively, the "Charging Parties") filed charges with the NLRB alleging that SpaceX committed unfair labor practices in violation of the NLRA when it terminated their employment (the "Charges").

48.     On March 16, 2023, the NLRB sought SpaceX's response to the Charges. SpaceX submitted its position statement and supporting evidence refuting the Charging Parties' allegations on April 28, 2023.

49.     On December 14, 2023, the Region informed SpaceX that it had made determinations on all eight Charges and authorized a complaint against SpaceX.

50.     On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, together with a consolidated administrative complaint and notice that an administrative hearing would occur on March 5, 2024 before an ALJ.

## COUNT I – THE NLRB'S ALJS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

51.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

52.     NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Jarkesy*, 34 F.4th at 464; *Westrock Servs.*, 366 N.L.R.B. No. 157, slip op. at 1.

53.     At the same time, the NLRB may attempt to remove its ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). And under the NLRA, Board Members are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

54.     Given NLRB ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

55.     The statutes' provision of at least two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508; *Jarkesy*, 34 F.4th at 463–65.

56.     But for these unlawful removal restrictions, either the ALJ assigned to SpaceX's administrative case or the NLRB Members who bear responsibility to supervise and exercise

control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

57.     Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

58.     Accordingly, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

59.     Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

60.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

61.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before an ALJ unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

62.     Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See Collins*, 141 S. Ct. at 1787–89.

63.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. In contrast to the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

64.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

### COUNT II – THE NLRB'S MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

65.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

66.     The NLRB's Members may be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

67.     Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

68.     For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").

69.     More generally, the NLRB also enforces and implements the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

70.     In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

71.     The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power."' *Seila L.*, 140 S. Ct. at 2198 n.2 (citation omitted).

72.     Also, the removal protections for NLRB Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

73.     The combination of the NLRB Members' strict removal protections and exercise of substantial executive power violates Article II of the Constitution.

74.     But for these unlawful removal restrictions, the NLRB Members would face the prospect of removal by the President—including based on their conduct during the proceedings against SpaceX.

75.     Being subject to proceedings before unconstitutionally insulated agency officials is a "here-and-now injury" justifying pre-enforcement judicial intervention. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *Cochran*, 20 F.4th at 210 n.16, 212–13.

76.     So, here too, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

77.     Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

78.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

79.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before an NLRB whose Members are unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

80.     Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins*, 141 S. Ct. at 1787–89.

81.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

82.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## COUNT III – THE NLRB ALJ'S ADJUDICATION OF PRIVATE RIGHTS WITHOUT A JURY TRIAL VIOLATES THE SEVENTH AMENDMENT

83.   SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

84.   The Seventh Amendment to the Constitution of the United States provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII.

85.   The term "Suits at common law" "include[s] all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452.

86.   "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Id.*

87.   The NLRA authorizes the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take . . . affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

88.   Although the statute thus permits backpay as "an incident to equitable relief," *Jones & Laughlin*, 301 U.S. at 48, today's NLRB currently asserts much broader authority to award monetary damages.

89.   For example, Defendant Jennifer Abruzzo, General Counsel of the NLRB, has ordered Regional Directors to "request from the Board the full panoply of remedies available to ensure that victims of unlawful conduct are made whole for losses suffered as a result of unfair labor practices." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-06 at 1 (Sept. 8, 2021).

90.     Ms. Abruzzo later elaborated on the "full panoply of remedies" that Regions should seek. *See* Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-07 at 1 (Sept. 15, 2021). She contended that "[a] monetary remedy comprised only of backpay and lost benefits often fails to truly make whole victims of an unfair labor practice," and urged that "Regions should always make sure to seek compensation for any and all damages, direct and consequential, attributable to an unfair labor practice," including housing, medical, or training expenses relating to the allegedly unlawful employment practice. *See id.* at 2–4 (listing examples).

91.     Recently, in *Thryv*, a divided Board determined that it has authority to issue monetary awards "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." 372 N.L.R.B. No. 22, slip op. at 1.

92.     Such compensation goes far beyond the statutory category of backpay. According to the Board, it encompasses such items as "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Id.* at 9–10 (citation omitted).

93.     In substance, this expanded remedy permits a broad range of consequential damages, although the *Thryv* majority sought to avoid that label on the ground that it "refer[s] to a specific type of legal damages." *Id.* at 8.

94.     Even the *Thryv* majority, however, acknowledged that the expanded remedy provides monetary relief for compensatory purposes. *See id.* ("[M]aking employees whole should

include, at least, compensating them for direct or foreseeable pecuniary harms resulting from the respondent's unfair labor practice.").

95.     Although restitutionary backpay (through which an employer disgorges money that it wrongfully holds and that rightfully belongs to the employee) is categorized as a form of equitable relief, *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990), nonrestitutionary compensatory damages are not.

96.     On the contrary, "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens*, 508 U.S. at 255 (some emphasis omitted).

97.     The Board's newly expanded remedy goes beyond the vindication of public rights, "the public interest in effecting federal labor policy," and instead focuses on "the wrong done the individual employee." *Terry*, 494 U.S. at 573 (citation omitted).

98.     Indeed, the *Thryv* majority expanded the Board's traditional remedy precisely because it determined that backpay is not enough, on its own, "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 10 (citation omitted); *see also id.* at 12.

99.     In accordance with *Thryv* and Ms. Abruzzo's directives, the NLRB's administrative complaint against SpaceX specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged.

100.     The fact that the administrative complaint also seeks equitable relief does not strip SpaceX of its jury-trial right. *Jarkesy*, 34 F.4th at 454 ("the Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims").

101.    Nor does the fact that NLRB proceedings are administrative in nature. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the NLRB. *Granfinanciera*, 492 U.S. at 61.

102.    Without interim injunctive relief from this Court, SpaceX's claims will be improperly adjudicated by an administrator instead of a jury.

103.    SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

104.    Yet unless the NLRB is enjoined from proceeding against SpaceX before an NLRB ALJ rather than a jury, SpaceX will be irreparably harmed.

105.    As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

106.    The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as early in the proceedings as possible—as soon as the NLRB gave notice of an ALJ hearing.

107.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

### COUNT IV – THE NLRB'S EXERCISE OF PROSECUTORIAL,
### LEGISLATIVE, AND ADJUDICATORY AUTHORITY
### IN THE SAME PROCEEDINGS VIOLATES
### THE SEPARATION OF POWERS AND DUE PROCESS

108.    SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

109.    Under Section 10(j) of the NLRA, "The Board shall have power, upon issuance of a complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j).

110.    Under the NLRB's current procedures, Members of the NLRB approve the determination whether to petition for injunctive relief under Section 10(j). *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/ sites/default/files/attachments/basic-page/node-1727/MASTER%20REVISED%202013%2010(J) %20MANUAL.pdf.

111.    This approval process includes the NLRB Members' evaluation of the NLRB Regional Director's presentation of the "merits" of the alleged legal violations, including a presentation of "the relevant facts and legal arguments and authorities establishing the violations" and of the charged party's asserted "defenses." *Id.* § 5.2.1, at 13.

112.    Because a Section 10(j) proceeding seeks preliminary injunctive relief, the decision also considers whether the alleged violations threaten "irreparable harm." *Id.* §§ 4.0, 5.2.1, at 10, 13.

113.    To secure Section 10(j) relief, the NLRB's litigators must ultimately make a sufficient showing on both their likelihood of success on the merits of the alleged violations and on the balance of equities, such as the likelihood of irreparable harm. *See, e.g.*, *McKinney ex rel. NLRB v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 296–99 (5th Cir. 2015).

114.    In these ways, NLRB Members who grant their approval to request Section 10(j) relief in a given case exercise prosecutorial authority based on their assessment of the charged parties' responsibility for the alleged unfair labor practices and for ensuing irreparable harm.

115.    This approval process is not a neutral adjudication of an adversarial proceeding. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side: the NLRB officials who wish to litigate the alleged statutory violations.

116.    This memorandum provides the NLRB officials' views about "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged party]," and the NLRB officials' "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13.

117.    Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

118.    The Supreme Court has held, however, that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 579 U.S. at 8.

119.    "The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision." *Id.* at 9.

120.    Such circumstances present the risk that "the judge's 'own personal knowledge and impression' of the case, acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court." *Id.* at 9–10.

121.    The same risks are inherent in NLRB adjudications before Members of the Board that previously authorized pursuit of Section 10(j) relief based on the "Go 10(j)" Memorandum's presentation of facts and law.

122.    After having placed their imprimatur on a federal-court filing that alleges, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to third parties, there is a substantial risk that such NLRB Members will be psychologically wedded to that position when they adjudicate the administrative complaint.

123.    That risk is even greater if, in the meantime, the agency's bid for Section 10(j) relief has succeeded, because the Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Williams*, 579 U.S. at 11.

124.    In addition to making factual determinations, the NLRB adjudicative process often involves significant quasi-legislative authority under which the NLRB Members can decide to adopt new interpretations of the NLRA's requirements.

125.    "The National Labor Relations Board, uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through

adjudication rather than rulemaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

126.   Then, in an eventual appeal by an aggrieved person, the NLRB claims deference from U.S. Courts of Appeals to both its interpretations of the NLRA and its findings of fact.

127.   But it is well settled that "[e]ven appeal and a trial de novo will not cure a failure to provide a neutral and detached adjudicator." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 618 (1993).

128.   On December 19, 2023, an NLRB attorney communicated that the Region will be making a submission to the General Counsel's Injunction Litigation Branch about the appropriateness of Section 10(j) relief in this dispute.

129.   That communication suggests that a recommendation that Defendants McFerran, Kaplan, Wilcox, and Prouty (the "NLRB Member Defendants") approve Section 10(j) proceedings is imminent.

130.   The NLRB Member Defendants' exercise of prosecutorial authority in making the significant decision of approving a Section 10(j) proceeding against SpaceX leaves those Members unable to participate as adjudicators on the same underlying charges against SpaceX consistent with the Fifth Amendment's due process guarantee.

131.   SpaceX is therefore entitled to declaratory relief sufficient to ensure that its due process rights are not violated.

132.   Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before agency officials who are obligated to recuse from participation.

133.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

134.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before NLRB Members who are constitutionally obligated to recuse themselves, SpaceX will be irreparably harmed.

135.     As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

136.     If the current NLRB Members authorize the Section 10(j) litigation against SpaceX and fail to recuse from the agency adjudication and participate in a decision, "ordering a rehearing . . . may not provide complete relief." *Williams*, 579 U.S. at 16; *see also, e.g.*, *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 61–62 (1972) (A party "is entitled to a neutral and detached judge in the first instance.").

137.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

138.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, SpaceX hereby requests that the Court order the following relief and enter a judgment:

1.      Declaring that:

      a.      The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a), are unconstitutional;

      b.      The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional;

      c.      The NLRB proceedings against SpaceX deprive it of its constitutional right to trial by jury;

      and

      d.      Members of the NLRB who participate in the decision to authorize Section 10(j) litigation against SpaceX are constitutionally obligated to recuse from further NLRB proceedings on the same unfair labor practice allegations.

2.      Preliminarily enjoining Defendants from subjecting SpaceX to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3.      Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4.      Permanently enjoining the NLRB Member Defendants from adjudicating allegations relating to the same underlying set of events as any Section 10(j) action against SpaceX that they authorize;

5.      Awarding SpaceX its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

6.      Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: January 4, 2024                    Respectfully submitted,

                                          By:     */s/ Catherine L. Eschbach*

                                          **MORGAN LEWIS & BOCKIUS LLP**
                                          Catherine L. Eschbach
                                          Attorney-in-Charge
                                          Texas Bar No. 24097665
                                          Southern District of Texas Bar No. 3846447
                                          1000 Louisiana Street, Suite 4000
                                          Houston, TX 77002-5006
                                          catherine.eschbach@morganlewis.com
                                          Tel: (713) 890-5719
                                          Fax: (713) 890-5001

                                          Harry I. Johnson, III (*pro hac vice* forthcoming)
                                          Of Counsel
                                          2049 Century Park East, Suite 700
                                          Los Angeles, CA 90067-3109
                                          Tel: (310) 907-1000

                                          Michael E. Kenneally (*pro hac vice* forthcoming)
                                          Amanda L. Salz (*pro hac vice* forthcoming)
                                          Of Counsel
                                          1111 Pennsylvania Avenue, N.W.
                                          Washington, DC  20004-2541
                                          michael.kenneally@morganlewis.com
                                          amanda.salz@morganlewis.com
                                          Tel: (202) 739-3000

                                          *Attorneys for Space Exploration Technologies*
                                          *Corporation*