UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br> Defendants. | Case No. 1:24-cv-00001 |

**DECLARATION OF SCOTT BECK IN SUPPORT OF MOTION TO INTERVENE**

I, Scott Beck, declare as follows:

1. I have personal knowledge of the facts herein and, if called upon to testify to those facts, I could and would do so competently.

2. I was employed by Space Exploration Technologies Corp. ("SpaceX") full time beginning in 2017 as a Structures Designer.

3. My employment was involuntarily terminated on June 16, 2022. At the time of my termination my position was Thermal Hardware Engineer II.

4. During my entire employment with SpaceX I worked at its headquarters which is located at One Rocket Road, Hawthorne, CA 90250. During the course of my employment with SpaceX I lived in Los Angeles and Manhattan Beach, California.

5. On or about December 14, 2021 I became aware of published accounts by several former employees of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it. I found these accounts very disconcerting.

6. Separately, on or about May 19, 2022 I learned that SpaceX's CEO Elon Musk was accused of sexually harassing a SpaceX flight attendant and that in response, he publicly ridiculed the alleged victim. In response to Musk's denial and ridicule of the alleged victim, SpaceX's President, Gwynne Shotwell publicly supported Musk by sending an email to the company claiming that the allegations against him were not true.

7. In addition to these specific issues arising from the allegations concerning Musk's alleged sexual harassment, I, as a SpaceX employee, was continually bombarded with social media posts by CEO Elon Musk in degrading women and the LGBTQ community that featured inappropriate sexual comments and jokes. These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms, making it impossible for employees to avoid Musk's degrading and demeaning comments. Indeed, important information about our substantive work was often mixed into Musk's Tweets, so we could not afford to ignore them.

8. Neither SpaceX management nor its Human Relations department took corrective action to remediate the hostile work environment that was created by Musk.

9. In order to try to effectuate change in the workplace, in late May 2022, I began discussing with other colleagues mechanisms for getting management to take action. I attended a series of meetings at SpaceX headquarters in Hawthorne and at nearby off-campus locations to discuss what action we could take. I and others in the group decided to write an Open Letter to SpaceX's executive team asking that the company distance itself from Musk's social media comments—that is, make clear that those comments were not SpaceX's own position—and that it clarify and enforce an anti-harassment policy in the workplace.

10. I, along with other SpaceX employees shared this letter internally within SpaceX channels from California on June 15, 2022.

11. On June 16, 2022, SpaceX terminated my employment at an in-person meeting in Hawthorne, California. The termination meeting was attended by Vice President of HR, Brian Bjelde, HR Manager Rebecca Balayan, with President Gwynne Shotwell attending by video conference. To the best of my knowledge, Mr. Bjelde, Ms. Balayan, and Ms. Shotwell were based in Hawthorne during the events described in this declaration.

12. During the termination meeting the above SpaceX officials told me that my employment was being terminated for my participation in conceiving of, drafting, and distributing the Open Letter.

13. After my termination I, along with other seven other colleagues who were terminated over the same issue (participating in the Open Letter), retained counsel (Anne Shaver of Lieff, Cabraser Heimann & Bernstein, LLP and Laurie Burgess, Burgess Law Offices, P.C.) to file charges under the NLRB on our behalf.

14. Our counsel filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022.

15. I spent significant time providing evidence of SpaceX's misconduct to NLRB agents in Region 31 in Los Angeles, California. Thereafter my counsel filed amended charges and on January 3, 2024 Region 31 issued a complaint with a hearing set for March 5, 2024 in Los Angeles, California.

2920392.3

16. My lawyers advised me that SpaceX filed a Complaint in Texas on January 4, 2024. I have reviewed that Complaint, which among other things seeks to require a "trial by jury" of the allegations contained in the NLRB Complaint. In fact, SpaceX's employment agreement that I was required to execute requires all employees to *forego* trial by jury as a term of employment by forcing us to accept arbitration of all employment-related disputes. The agreement further provides that such disputes must take place "in the state of the SpaceX facility in which I primarily work or in the case that I work remotely, the state of the SpaceX facility in which my supervisor(s) work(s). Where the facility is in Hawthorne or Los Angeles, California, the arbitration will occur in Los Angeles County, California." Therefore, pursuant to SpaceX's employment agreement any claims that involve my employment must be adjudicated in Los Angeles, California.

17. Other mandatory employment documents mandate that legal actions with SpaceX are governed by the laws of the State of California. Specifically, the "confidentiality agreement" states that "[t]he validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws."

18. It would be an extreme hardship for me to participate in any litigation in the State of Texas. I would have to pay the costs of travel, lodging, and meals, as well as take extra time off my post-graduate studies over and above what would normally be required to provide testimony in order to travel.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 8th of January, 2024 in Manhattan Beach, California.

*/s/* Scott Beck

2920392.3