**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br> Defendants. | Case No. 24-cv-0001 |

**MOTION OF DEFENDANTS TO TRANSFER VENUE**
**PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a)**
**AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION AND MOTION ........................................................................ 1

THE STATUTORY DESIGN OF THE NLRA ................................................... 1

ISSUES IN DISPUTE ...................................................................................... 3

FACTUAL BACKGROUND ............................................................................ 3

ARGUMENT .................................................................................................... 5

   I.    This Case may not be heard in this venue and should be transferred in the interest of justice. .............................................................................................................. 5

      A.   Venue here is improper because no party resides in this district and there is no substantial connection between the conduct in the complaint and this venue. ....................... 6

      B.   The interest of justice favors transfer rather than dismissal. ........................................... 7

   II.   This case should be immediately transferred; even if venue were not improper here, the interest of justice and convenience of parties and witnesses support transfer to the Central District of California under 28 U.S.C. § 1404(a). ....................................................... 8

      A.   This Court should transfer the case before deciding anything else. ............................... 9

      B.   SpaceX's choice of venue should be accorded little or no weight because it has filed an anticipatory suit to engage in forum-shopping. ..................................................... 10

      C.   Legal standards for motions to transfer venue pursuant to Section 1404(a). ................. 13

      D.   This Court should transfer the case to the Central District of California. ...................... 15

            1. Private-interest factors weigh in favor of transfer to the Central District of California. ......................................................................................... 15

            2. Public-interest factors weigh strongly in favor of transfer to the Central District of California. ......................................................................................... 17

CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Aftab v. Gonzalez,*
  597 F. Supp. 2d 76 (D.D.C. 2009) ........................................................................... 9

*Alpha Servs., LLC v. Looman,*
  No. CV 23-2988, 2023 WL 6795545 (E.D. La. Oct. 13, 2023) ......................... 18

*Andrade v. Chojnacki,*
  934 F. Supp. 817 (S.D. Tex. 1996).................................................................. 7, 12

*Barham v. UBS Fin. Servs.,*
  496 F. Supp. 2d 174 (D.D.C. 2007) ...................................................................... 14

*Boire v. Pilot Freight Carriers, Inc.,*
  515 F.2d 1185 (5th Cir. 1975) ................................................................................. 3

*Bokat v. Tidewater Equip. Co.,*
  363 F.2d 667 (5th Cir. 1966)................................................................................... 3

*Care One, LLC v. NLRB,*
  No. 2:23-cv-03221, 2023 WL 4156859 (D.N.J. June 23, 2023)............................ 9

*Corp. of Am. Holdings v. NLRB,*
  942 F. Supp. 2d 1 (D.D.C. 2013) .............................................................. 9, 17, 20

*Cottman Transmission Sys., Inc. v. Martino,*
  36 F.3d 291 (3rd Cir. 1994)............................................................................. 7, 12

*Curtis v. BP Am., Inc.,*
  808 F. Supp. 2d 976 (S.D. Tex. 2011) ................................................................... 9

*Flory v. United States,*
  79 F.3d 24 (5th Cir. 1996) ...................................................................................... 8

*Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.,*
  No. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) ............................ 10

*Garner v. Team,*
  *sters, Chauffeurs & Helpers Loc. Union No. 776,* 346 U.S. 485 (1953)................... 2

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947)............................................................................................... 17

*Hill v. Keliher,*
  No. 4:19-CV-02528, 2019 WL 3837113 (S.D. Tex. Aug. 14, 2019) ................... 13

*In re Munson,*
  No. 03-5034., 2003 WL 21396874 (D.C. Cir. 2003) ............................................. 6

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) .......................................................................... 13, 14

*Jarkesy v. SEC,*
  34 F.4th 446 (5th Cir. 2022)................................................................... 12, 17, 20

*Koehring Co. v. Hyde Const. Co.,*
  324 F.2d 295 (5th Cir. 1963)................................................................................... 8

*Lake City Stevedores, Inc. v. Steamship Lumber Queen,*
  343 F. Supp. 933 (S.D. Tex. 1972)........................................................................ 14

*Lebus for & on Behalf of NLRB v. Manning, Maxwell & Moore, Inc.*,
  218 F. Supp. 702 (W.D. La. 1963) ........................................................ 3
*Lentz v. Eli Lilly & Co.*,
  464 F. Supp. 2d 35 (D.D.C. 2006) ........................................................ 13
*Mesa Power Grp., LLC v. Gov't of*,
  *Can.*, 255 F. Supp. 3d 175 (D.D.C. 2017).............................................. 10
*Mill Creek Press, Inc. v. Thomas Kinkade Co.*,
  No. 3:04-CV-1213-G, 2004 WL 2607987 (N.D.Tex. Nov. 16, 2004) .................... 11
*Mission Ins. Co. v. Puritan Fashions Corp.*,
  706 F.2d 599.......................................................................... 10
*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938).................................................................... 2
*Nat'l Ass'n of Life Underwriters v. Clarke*,
  761 F. Supp. 1285 (W.D. Tex. 1991)................................................... 6
*NLRB v. Washington Aluminum Co.*,
  370 U.S. 9 (1962)..................................................................... 1
*909 Corp. v. Vill. of Bolingbrook Police Pension Fund*,
  741 F. Supp. 1290 (S.D. Tex. 1990)................................................ 11, 12
*Norwood v. Kirkpatrick*,
  349 U.S. 29(1955)..................................................................... 13
*Onyeneho v. Allstate Ins. Co.*,
  466 F. Supp. 2d 1 (D.D.C. 2006) ................................................. 19, 20
*Overstreet v. El Paso Disposal, L.P.*,
  668 F. Supp. 2d 988 (W.D. Tex. 2009)................................................. 3
*Pac. Mar. Ass'n v. NLRB*,
  905 F. Supp. 2d 55 (D.D.C. 2012) ................................................. 9, 17
*Paragon Indus., L.P. v. Denver Glass Mach., Inc.*,
  No. CIV.A. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008)........... 10, 11, 13
*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
  626 F.3d 973 (7th Cir. 2010)......................................................... 15
*Reuben H. Donnelley Corp. v. F.T.C.*,
  580 F.2d 264 (7th Cir. 1978).......................................................... 6
*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018) .......................................................... 9
*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*,
  654 F. Supp. 734 (D.D.C. 1986) ................................................... 15, 19
*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
  549 U.S. 422 (2007).................................................................. 9
*Starnes v. McGuire*,
  512 F.2d 918 (D.C. Cir. 1974) ........................................................ 19
*Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.*,
  196 F. Supp. 2d 21 (D.D.C. 2002) .................................................... 13
*Trout Unlimited v. U.S. Dep't of Agric.*,
  944 F. Supp. 13 (D.D.C. 1996) ....................................................... 17
*Turner & Newall, PLC v. Canadian Universal Ins. Co.*,
  652 F. Supp. 1308 (D.D.C. 1987) ................................................. 14, 19

**Statutes**

28 U.S.C. § 1292(a)(1) ........................................................................................... 10
28 U.S.C. § 1391(e) .............................................................................................. 3, 6
28 U.S.C. § 1391(e)(1) .............................................................................................. 6
28 U.S.C. § 1391(e)(1)(B) ...................................................................................... 15
28 U.S.C. § 1391(e)(1)(C) ...................................................................................... 15
28 U.S.C. § 1404(a) ........................................................................................ passim
28 U.S.C. § 1406(a) ........................................................................................ passim
29 U.S.C. § 151-169 ................................................................................................ 1
29 U.S.C. § 153(a) .................................................................................................. 2
29 U.S.C. § 155 .................................................................................................... 4, 6
29 U.S.C. § 157 ....................................................................................................... 2
29 U.S.C. § 158 ....................................................................................................... 1
29 U.S.C. § 160(e), (f) ........................................................................................... 2
29 U.S.C. § 160(j) .................................................................................................. 3

**Rules**

Fed. R. Civ. 12 ....................................................................................................... 9
Fed. R. Civ. P. 45(c) ............................................................................................. 16

**Regulations**

29 C.F.R. § 101.37 ................................................................................................. 3
29 C.F.R. § 102.15 ................................................................................................. 2
29 C.F.R. § 102.35, 102.45 .................................................................................... 2
29 C.F.R. § 102.46-47 ........................................................................................... 2

**Other Authorities**

14D Fed. Prac. & Proc. Juris. § 3815 (4th ed.) ..................................................... 6
15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.) ...................................................... 10
*Transfer & Choice of Federal Law: The Appellate Model*,
  93 MICH. LAW REV. 703 (1995) ......................................................................... 9

## INTRODUCTION AND MOTION

Plaintiff Space Exploration Technologies Corp. ("SpaceX") initiated this action in this Court even though nearly all the operative events giving rise to the case occurred in and around Hawthorne, California, where SpaceX is headquartered. Employees whose statutory rights and remedies will be affected were employed there, and the relief sought would be directed to agency proceedings in California. This case has virtually zero nexus to this venue and represents an apparent effort to preempt anticipated litigation and forum-shop various legal theories to a venue SpaceX perceives as more favorable. Defendants respectfully move the Court to transfer this action in the interests of justice to the Central District of California pursuant to 28 U.S.C. § 1406(a) or, alternatively, 28 U.S.C. § 1404(a). Counsel for Defendants has conferred with the counsel for SpaceX and cannot agree about the disposition of this motion.

## THE STATUTORY DESIGN OF THE NLRA

The National Labor Relations Board ("NLRB" or "Agency") is an independent federal agency created by Congress in 1935 to administer the National Labor Relations Act ("NLRA" or "Act").[1] The Act's core substantive guarantee is contained in Section 7, which protects most private-sector employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection" as well as the right to refrain from "any or all" of these activities.[2] The Act protects these rights whether or not employees are unionized or are seeking or opposing union representation.[3]

---

[1] 29 U.S.C. § 151-169

[2] *Id*. § 157.

[3] *See, e.g*., *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14-15 (1962) (walkout by "wholly unorganized" workers over cold conditions protected by Section 7).

1

To enforce Section 7 rights, the NLRA prohibits certain employer and union activity as "unfair labor practices" (or "ULPs") under Section 8 of the Act.[4] Section 10 of the Act makes the five-seat Board of the Agency (the "Board") the exclusive public body responsible for adjudicating ULPs, subject to enforcement or review in a court of appeals.[5] ULP proceedings commence upon the filing of a charge by any person.[6] Under Section 3(d) of the Act, the NLRB General Counsel has "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of [administrative] complaints . . . , and in respect of the prosecution of such complaints before the Board."[7] On behalf of the General Counsel, the Regional Director for the office where a charge is filed conducts an investigation with the assistance of staff.[8] If the Regional Director determines that a charge has merit, an administrative complaint issues and an adversarial hearing is held before an administrative law judge ("ALJ"), who thereafter issues a decision and recommended order.[9] That decision is then appealable to the Board in Washington, D.C., which acts as an adjudicatory body.[10] The Board's decision and order constitutes the final agency determination.[11] It is only that "final order of the Board" that is reviewable in an appropriate federal court of appeals pursuant to Section 10(e) and (f) of the NLRA.[12]

District courts generally lack jurisdiction to review or supervise the conduct of NLRB

---

[4] 29 U.S.C. § 158.

[5] *Id.* § 160 (a), (c), (e).

[6] *Id.* § 160(b).

[7] *Id.* § 153(d).

[8] *Id.*; 29 C.F.R. § 102.15.

[9] 29 C.F.R. § 102.35, 102.45.

[10] 29 U.S.C. § 153(a).

[11] *Id.* § 160(c); 29 C.F.R. § 102.46-47.

[12] 29 U.S.C. § 160(e), (f); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938); *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

proceedings or the General Counsel's prosecutorial decisions.[13] When the Agency's usual processes may be rendered ineffective due to the passage of time, the Board may authorize an action in district court for temporary injunctive relief pursuant to Section 10(j) of the Act, which expires when the Board issues its final order in the underlying case.[14] The Agency's longstanding practice is to seek such relief where the ULPs are alleged to have been committed.[15]

## ISSUES IN DISPUTE

Is venue improper under 28 U.S.C. § 1391(e), and if so, does the interest of justice favor transfer rather than dismissal under 28 U.S.C. § 1406(a)? Should the Court exercise its discretion to transfer this case to the Central District of California under 28 U.S.C. § 1404(a)?

## FACTUAL BACKGROUND

This case stems from eight ULP charges, all filed on November 16, 2022 by or on behalf of individual discharged employees who reported to or were supervised by managers at the SpaceX facility located at 1 Rocket Road, Hawthorne, Los Angeles County, California (the "Hawthorne Facility").[16] SpaceX maintains its principal place of business at the Hawthorne Facility.[17] NLRB Board members and its General Counsel maintain offices and conduct their

---

[13] *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966).

[14] *See* 29 C.F.R. § 101.37; 29 U.S.C. § 160(j); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975).

[15] *See, e.g., Lebus for & on Behalf of NLRB v. Manning, Maxwell & Moore, Inc.,* 218 F. Supp. 702, 703 (W.D. La. 1963); *Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 991 (W.D. Tex. 2009).

[16] Doc. 18, Declaration of Laurie Burgess ("Burgess Decl.") ¶¶4, 12 (seven of eight discharged employees lived in California and worked at the Hawthorne Facility, the eighth resided in Washington but was managed from Hawthorne, and none "have any relationship with the State of Texas"); ULP Compl ¶¶1, 2, 5.

[17] *Mission: SpaceX Facilities*, SpaceX, https://www.spacex.com/mission/ (last visited Jan 10, 2024). SpaceX is a Delaware corporation with operations in California, Florida, Texas, Washington State, and Washington, D.C. Compl. ¶35. *See also* ULP Compl. ¶¶1, 5. In filings

3

official duties in Washington, D.C.[18] The Agency's Division of Judges, which oversees its ALJs, has three offices: Washington, D.C., San Francisco, and New York City.[19] On December 19, 2024, Region 31 of the NLRB, whose offices are located in Los Angeles, advised SpaceX that the Agency was considering Section 10(j) injunction proceedings, which would be filed in the Central District of California.[20] Following an investigation of the ULP charges, Region 31 found merit to them, and issued an administrative complaint ("ULP Complaint") on January 3, 2024.[21]

The ULP Complaint alleges unlawful conduct by SpaceX supervisors and agents taking place nearly entirely at the Hawthorne Facility.[22] Most significantly, the ULP Complaint alleges that eight individuals were unlawfully fired in response to their NLRA-protected conduct in organizing an Open Letter related to working conditions.[23] The ULP Complaint also alleges a series of unlawful interrogations regarding the Open Letter taking place primarily at the Hawthorne Facility.[24] It further alleges that SpaceX supervisors and agents at the Hawthorne

---

with the Securities and Exchange Commission, SpaceX has represented that the Hawthorne Facility is its principal place of business. *See, e.g.*, Notice of Exempt Offering of Securities, https://www.sec.gov/Archives/edgar/data/1181412/000118141222000003/xslFormDX01/primary_doc.xml (Aug. 5, 2022).

[18] 29 U.S.C. § 155; Compl. ¶36.

[19] *Division of Judges Directory*, National Labor Relations Board, https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory#DC (last visited Jan. 8, 2024).

[20] Compl. ¶128. While venue for a section 10(j) petition is technically proper in a number of locations, the NLRB's consistent practice for many years has been to file such petitions in the district where the facts alleged as ULPs took place.

[21] Compl. ¶¶24, 47-50, 128; ULP Compl. at p. 1, 11. The ULP Complaint is filed herewith as sealed Exhibit A. Proposed Intervenors have represented they now intend to move for an order protecting identities of individuals who fear harassment. *See* Burgess Decl. ¶7; Doc. 17, at p.1, n.1. Defendants intend to move to seal, providing proposed redactions, as soon as practicable.

[22] Certain conduct affecting one employee was alleged to have been committed in Redmond, Washington. *See* ULP Compl. ¶¶21-23.

[23] ULP Compl. ¶5.

[24] ULP Compl. ¶¶6, 9, 19, 24, and 26.

Facility disparaged employees, created the impression of surveillance, and illegally instructed employees not to discuss their investigatory interviews with anyone.[25]

The ULP Complaint included a notice setting a date for hearing on March 5, 2024, in Los Angeles.[26] Copies of it were sent to counsel for the charging parties, based in California, as well as counsel for SpaceX in Hawthorne, California; Los Angeles, California; and elsewhere, but the ULP Complaint itself contains no reference to Texas.[27]

SpaceX's own complaint alleges that "a substantial part of the events or omissions giving rise to the claim occurred in Boca Chica, Texas, where SpaceX maintains its Starbase rocket development and launch facility."[28] Beyond this statement, general references to its Texas operations, and potential NLRA remedies that might be applied companywide, SpaceX pleads no facts establishing a nexus between the conduct complained of and this venue.[29] And the complaint's fact section never once mentions Texas.[30]

## ARGUMENT

### I.   This Case may not be heard in this venue and should be transferred in the interest of justice.

SpaceX filed a Complaint for Declaratory and Injunctive Relief in this Court, even though nearly all relevant events have occurred in and around Hawthorne, California. No parties

---

[25] ULP Compl. ¶¶8 (disparage), 12 (disparage), 20 (instruction not to discuss interview with anyone), 25 (impression of surveillance), 27 (impression of surveillance), 28 (instruction not to discuss interview).

[26] Compl. ¶¶46-50

[27] A notice attached to Region 31's complaint is addressed to employees' counsel and employer's counsel, one of whom has an address in Houston, Texas. ULP Compl. at p. 12.

[28] Compl. ¶34.

[29] Compl. ¶34.

[30] Compl. ¶¶43-50.

reside here. This case has virtually no connection to Texas, much less a "substantial" one. Transfer to the clearly appropriate venue under 28 U.S.C. § 1406(a) is both just and efficient.

### A. Venue here is improper because no party resides in this district and there is no substantial connection between the conduct in the complaint and this venue.

SpaceX's foundation for laying venue here is less than paper thin. 28 U.S.C. § 1391(e) governs venue for civil actions against federal agencies and officers. Venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides."[31] A corporate plaintiff resides "only in the judicial district in which it maintains its principal place of business."[32] A federal agency resides where its principal office is located.[33] The presence of an agency regional office within a judicial district does not make the agency a resident of the district for venue purposes.[34] And officers sued in their official capacities reside where "official duties are performed."[35]

Here, SpaceX is a resident of California where its headquarters and principal place of business is located. And all named Defendants reside in Washington D.C., where the Agency is headquartered and its Board members and General Counsel maintain their offices and discharge their duties.[36] As another judge of this Court ruled, district courts "should not accept venue if the

---

[31] 28 U.S.C. § 1391(e)(1).

[32] *Id.* § 1391(c)(2)

[33] *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 266 n.3 (7th Cir. 1978); *In re Munson*, No. 03-5034., 2003 WL 21396874 (D.C. Cir. 2003).

[34] *Reuben H. Donnelley Corp.,* 580 F.2d at 267.

[35] Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3815 (4th ed.); *see Nat'l Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) (cause of action arose "in Washington, D.C., where the Office of the Comptroller of the Currency made the . . . decision").

[36] 29 U.S.C. § 155. SpaceX also names as a "John Doe" defendant the ALJ who will be assigned by the Division of Judges to hear and decide the ULP Complaint in the first instance. That judge's home office is located in San Francisco, New York City, or Washington, D.C.

activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiff[s'] claims."[37] "Insubstantial" would be a generous characterization here. In asserting that venue is proper, SpaceX points to its Starbase facility in Boca Chica, Texas, as one whose growth is increasingly important to SpaceX.[38] But SpaceX's complaint says nothing about how this facility, or any other Texas operation, relates to the conduct giving rise to its claims.[39]

SpaceX alleges that: (1) an Open Letter was "broadly distributed to employees at all SpaceX facilities across the country," including an unspecified number of employees based in Texas, (2) the Region's complaint seeks certain remedies that would affect all SpaceX facilities, and (3) the Region's complaint includes allegations that, from an unspecified location, SpaceX's president emailed all employees companywide.[40] Notably, no actual conduct by any of the defendants is alleged to have occurred in Texas. And "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough" to lay venue.[41]

### B.   *The interest of justice favors transfer rather than dismissal.*

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

---

[37] *Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996).

[38] Compl. ¶34.

[39] Importantly, the claims giving rise to SpaceX's suit are essentially administrative procedures rightfully taking place outside of Texas. They are the filing and investigation of charges with and by Region 31 (in California), the issuance of the ULP Complaint and scheduling of a hearing (also in California), an anticipated recommendation to the Board regarding Section 10(j) (from California to Washington, D.C.), and the Board's consideration of any future exceptions or special appeals (in Washington, D.C.). Compl. ¶¶47-50, 111, 128; ULP Compl. at pp. 1-2, 10-11.

[40] Compl. ¶34.

[41] *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994).

such case to any district or division in which it could have been brought."[42] As discussed above, this Court is the wrong venue for this case. While a court may dismiss a case under Section 1406(a), the Fifth Circuit has recognized that "the interest of justice" may require a transfer in order to avoid "time-consuming and justice-defeating technicalities."[43] While dismissal would not deprive SpaceX of the opportunity to refile its action in an appropriate venue, SpaceX is seeking preliminary relief.[44] Efficiency and economy are best served by an immediate transfer expediting this case towards consideration rather than requiring the burden and expense of refiling the case in another court and requiring defendants to be again served with process.[45] And as discussed below, there is one venue that is clearly appropriate given the anticipatory nature of SpaceX's claims—the Central District of California. Dismissal would thus serve no purpose and the case should be transferred.

## II. This case should be immediately transferred; even if venue were not improper here, the interest of justice and convenience of parties and witnesses support transfer to the Central District of California under 28 U.S.C. § 1404(a).

The Agency urges the Court to decide the transfer question before addressing other issues. Even assuming arguendo venue was permissibly laid here, 28 U.S.C. § 1404(a) permits the Court to transfer this case in the interest of justice. And here, not only is such a transfer in the interest of justice because of SpaceX's forum-shopping, the relevant factors the Fifth Circuit has identified in a Section 1404(a) analysis also favor transfer.

---

[42] 28 U.S.C. § 1406(a).

[43] *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297 (5th Cir. 1963).

[44] Compl. at p. 24 (Prayer for Relief ¶¶ 2-4).

[45] Service on government defendants is mandatory. *See, e.g., Flory v. United States*, 79 F.3d 24, 26 (5th Cir. 1996).

### A. This Court should transfer the case before deciding anything else.

SpaceX will soon file a motion for preliminary injunctive relief. And the Board will, at the appropriate time, file a motion seeking dismissal of this case under Federal Rule of Civil Procedure 12. But this Court should transfer this case before reaching these other matters. Courts possess discretion to determine the appropriate venue as a threshold issue, without needing to first assess jurisdiction or the underlying merits of the matter.[46] The Fifth Circuit has agreed that courts have "considerable leeway to choose among threshold grounds for denying audience to a case on the merits."[47] Consistent with this principle, courts have granted motions to transfer, including at the Board's request, prior to determining other threshold or merits issues.[48] These decisions effectuate the commonsense notion that sometimes "[a]djudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists."[49]

Deciding the venue issue prior to determining the jurisdictional and merits arguments also avoids potential procedural complications. For example, if this Court were to address the merits of a motion by SpaceX for a preliminary injunction before resolving the Board's transfer

---

[46] *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

[47] *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (cleaned up).

[48] *See, e.g., Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011); *Care One, LLC v. NLRB*, No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023); *Lab. Corp. of Am. Holdings v. NLRB*, 942 F. Supp. 2d 1 (D.D.C. 2013); *Pac. Mar. Ass'n v. NLRB,* 905 F. Supp. 2d 55, 58–59 (D.D.C. 2012) (transferring to the District of Oregon), and cases cited therein.

[49] *Aftab v. Gonzalez,* 597 F. Supp. 2d 76, 79 (D.D.C. 2009); *see also* Robert A. Ragazzo, *Transfer & Choice of Federal Law: The Appellate Model,* 93 MICH. LAW REV. 703, 746 n.265 (1995) (citing 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 0.404[4.-2] (2d ed. 1994)) ("Because a permanent transfer has the effect of changing the federal law applicable to the case, district courts should make transfer decisions as early in the proceedings as practicable.") As explained below, deciding the motion to transfer first is even more appropriate here given the SpaceX's attempt to forum shop and thereby derive an anticipated benefit from "the federal law applicable to this case." *Ragazzo, supra*, at 746 n.265.

motion, any order granting or denying that request would be appealable to the Fifth Circuit.[50] However, if the case were then later transferred to California, any final orders or interlocutory appeals would be heard by the Ninth Circuit—creating the potential for conflicting orders and complicating the litigation in this case. Additionally, reaching the merits of such disputes prior to transferring to the appropriate venue would likely engender ancillary disputes concerning the impact of the transferor court's antecedent rulings on future proceedings.[51] Preventing these potential outcomes serves as further reason to decide the venue question as an initial matter prior to reaching the other issues presented in this case.

### B. SpaceX's choice of venue should be accorded little or no weight because it has filed an anticipatory suit to engage in forum-shopping.

As the Fifth Circuit and various Texas courts, including this Court, have long recognized, a plaintiff's choice of venue should be accorded little to no weight "when a party files a declaratory judgment action, in anticipation of suit by its adversary."[52] "Anticipatory suits are disfavored because they are an aspect of forum-shopping."[53] They "deprive a potential plaintiff of his choice of forum, [and are] also one of the compelling circumstances courts cite when declining to apply the first-filed rule."[54]

---

[50] *See* 28 U.S.C. § 1292(a)(1).

[51] A transfer "leaves in place whatever already has been done in the transferor court." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.); *see, e.g.*, *Mesa Power Grp., LLC v. Gov't of Can.*, 255 F. Supp. 3d 175, 181 (D.D.C. 2017) ("[I]f the transferor court already decided an issue (based on its own interpretation of the law) [then] the 'law of the case' governs that issue even in the transferee court.").

[52] *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir.1983); *Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.*, No. H-07-637, 2007 WL 5186798, *4 (S.D. Tex. Sept. 11, 2007).

[53] *Mission Ins. Co.,* 706 F.2d at 602 n.3.

[54] *Frank's Tong Service, Inc.*, No. H-07-637, 2007 WL 5186798, *4.

In determining whether a suit is anticipatory, courts examine the parties' "activities prior to filing of a suit."[55] This is because, "[t]he Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment" when it has notice that the other party intends to file suit in a different forum.[56] Moreover, "[w]hen a plaintiff files an anticipatory suit in order to avoid litigation by the defendant, the 'true plaintiff' is divested of his right to select the proper forum. Allowing [the anticipating party] to choose the forum subverts the real plaintiff's advantage in choosing the forum" and creates "disincentives to responsible litigation by rewarding the winner of a race to the courthouse."[57]

Here, SpaceX's suit is an "action for declaratory and injunctive relief."[58] And in addition to the administrative hearing scheduled to take place in Los Angeles, SpaceX's complaint asserts its belief that a district court action for relief under Section 10(j) of the NLRA "is imminent."[59] The practical effect of the relief sought by SpaceX would be to preclude the Board from seeking such a Section 10(j) injunction because the Board members who decide whether to authorize those proceedings would, in SpaceX's view, permanently lose their ability to decide the underlying ULP question.[60] And the seasoned NLRA practitioners representing SpaceX would be

---

[55] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4

[56] *909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990).

[57] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (discussing *Mill Creek Press, Inc. v. Thomas Kinkade Co.,* No. 3:04-CV-1213-G, 2004 WL 2607987, *7 (N.D.Tex. Nov. 16, 2004)).

[58] Compl. at p. 1.

[59] *See*, *e.g.*, Compl. ¶¶128-29; *see id.* at ¶¶1, 6, 50, 58-59, 61, 104, 137, p. 24 (Prayer for Relief ¶¶ 1-3); *see also* ULP Compl. at p.10. We note that at present, while the matter is being considered, neither the Board nor its General Counsel have made the determination to seek Section 10(j) relief.

[60] Compl. p. 24 (Prayer for Relief ¶¶ 1(d), 4)).

aware of the Agency's usual choice of venue in Section 10(j) cases—where the ULPs were alleged to have been committed. SpaceX's complaint is thus the quintessential example of an anticipatory suit designed to prevent the proper choice of venue by another party. And its repeated citations to the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022),[61] only highlight SpaceX's apparent attempt to forum-shop to obtain the advantage of that case's holdings.

Finally, SpaceX's preference for venue in Texas should be given little weight in light of how "insubstantial [its basis is] in relation to the totality of events giving rise to Plaintiff[s'] claims."[62] Indeed, SpaceX grounds its claim of venue in Texas on the existence of a purportedly fast-growing Starbase facility, the assertion that unidentified Texas employees "interacted with [an] Open Letter," and a fear that the Board may award remedies that could affect all SpaceX facilities.[63] More is needed than unsubstantiated claims and speculation. In contrast, the ULP Complaint that SpaceX seeks to avoid makes clear that the locus of disputed conduct took place and is taking place in California. That is where employees were allegedly interrogated and fired, where ULP charges were filed, where Region 31 investigated those charges, and where a hearing is scheduled to take place. And any Section 10(j) action would be filed in the Central District of California. Thus, SpaceX's anticipatory suit before this Court is a blatant example of forum-shopping that this Court "cannot allow."[64]

---

[61] *See*, *e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100 (citing *Jarkesy*, 34 F.4th 446).

[62] *Andrade*, 934 F. Supp. at 827 n.18; *see Cottman Transmission Sys.*, 36 F.3d at 294 ("[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough").

[63] Compl. ¶34.

[64] *909 Corp.*, 741 F. Supp. at 1292 (S.D. Tex. 1990).

### *C. Legal standards for motions to transfer venue pursuant to Section 1404(a).*

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[65] "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their [choice of venue] privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."[66] Ordinarily, the Fifth Circuit reads Section 1404(a) to impose a "good cause burden" on the party seeking transfer.[67] This burden "is less demanding" than what is needed to warrant a *forum non conveniens* dismissal and "reflects the appropriate deference to which the plaintiff's choice of venue is entitled."[68] But as discussed above, a plaintiff's choice of venue is not entitled to deference when the action involves forum shopping or anticipatory litigation aimed at divesting the "true plaintiff" of its right to select the proper forum.[69]

Ultimately, transfer is proper where (a) the movant has established that the action could have been brought in the proposed transferee district and (b) the balance of convenience and justice weighs in favor of transfer.[70] As part of the balancing analysis required under Section

---

[65] 28 U.S.C. § 1404(a).

[66] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32(1955)); *see also Hill v. Keliher*, No. 4:19-CV-02528, 2019 WL 3837113, at *3 (S.D. Tex. Aug. 14, 2019) (granting transfer motion).

[67] *In re Volkswagen*, 545 F.3d at 315.

[68] *Id.* at 314-15. Indeed, a "district court should grant the transfer" when the movant demonstrates that "the transferee venue is clearly more convenient." *Id.* at 315.

[69] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4.

[70] 28 U.S.C. § 1404(a); *In re Volkswagen*, 545 F.3d at 312, 315 (the "preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue," thereafter the court considers convenience and justice considerations); *see also Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002); *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006).

1404(a), the Fifth Circuit specifies a number of "private and public interest factors" to guide the Court's broad discretion.[71] "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[72] "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[73]

These factors are not necessarily exhaustive; nor can any one factor be said to be dispositive.[74] And in weighing whether the "interest of justice" favors transfer, courts consider whether the plaintiff has engaged in forum-shopping.[75] Because the transfer provisions are in part intended to prevent forum-shopping, it is against the interest of justice "to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific

---

[71] *In re Volkswagen*, 545 F.3d at 315; *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

[72] *In re Volkswagen*, 545 F.3d at 315 (cleaned up).

[73] *Id.* (cleaned up).

[74] *Id.*

[75] *See Lake City Stevedores, Inc. v. Steamship Lumber Queen*, 343 F. Supp. 933, 935 (S.D. Tex. 1972) ("Judicial discretion over every motion to transfer should prevent a plaintiff from forum shopping"); *Turner & Newall, PLC v. Canadian Universal Ins. Co.,* 652 F. Supp. 1308, 1312 (D.D.C. 1987) (explaining that Section 1404(a) is designed to "prevent forum shopping"); *see also In re Volkswagen*, 545 F.3d at 313 (warning that plaintiffs should not abuse privilege of filing claims in any judicial division appropriate under the general venue statute).

precedents."[76] Such forum-shopping "may count against a plaintiff's choice of forum" in the transfer analysis.[77]

### D.  This Court should transfer the case to the Central District of California.

Good cause supports to transfer this matter to the Central District of California. The first requirement for a transfer is met here—that is, SpaceX could have brought this action in the Central District of California, where it resides under 28 U.S.C. § 1391(e)(1)(C). And under 28 U.S.C. § 1391(e)(1)(B), a substantial part of the operative events giving rise to this action occurred within the Central District of California. That venue is where Region 31's investigation was based, where an action for Section 10(j) relief would be filed, and where the hearing that SpaceX seeks to enjoin is scheduled to take place. The second requirement is also met here— balancing the private and public-interest factors, along with the interest of justice, make it clear that transfer is appropriate. Accordingly, as shown below, the Court should find that the Board has satisfied its good cause burden to show that the factors favor a transfer.

1.  Private-interest factors weigh in favor of transfer to the Central District of California.

None of the Fifth Circuit's four private-interest factors point towards the Southern District of Texas being an appropriate forum. As to the first factor, proof as to claims will largely come down to witness testimony and electronic records. Because electronic records are easily transported, the relative ease of access to sources of proof primarily considers witness testimony. SpaceX has requested injunctive relief, and evidence regarding balance-of-hardship and the public interest includes effects an injunction would have on SpaceX's Hawthorne workforce,

---

[76] *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,* 654 F. Supp. 734, 737 (D.D.C. 1986).

[77] *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 n.2 (7th Cir. 2010).

potentially necessitating testimony from California-based witnesses. Here, the ULP complaint alleges that several SpaceX supervisors and agents were involved in ULPs at SpaceX's Hawthorne Facility.[78] None of the eight terminated employees who filed charges initiating the proceedings SpaceX seeks to enjoin "have any relationship with the State of Texas"—rather, all of these potential non-party witnesses were managed from California, with seven of the eight having "lived in California and worked at SpaceX's headquarters in Hawthorne, California, during the entire course of their employment."[79] In contrast, SpaceX's complaint does not allege that any of the individuals at issue in the Region's complaint took any action in Texas.[80] Nor does it identify any Texas-based witnesses. Thus, the first private interest factor strongly points to venue in the Central District of California.

As to the second and third private interest factors, there is little reason to believe that the availability of compulsory process or the cost of attendance of witnesses supports venue in the Southern District of Texas. The operative facts primarily arose out of SpaceX's Hawthorne Facility and Region 31's investigation and prosecution in California. Indeed, this is where SpaceX is headquartered and where witnesses are most likely to be found. The terminated employees in question are (at present) non-party witnesses who are not subject to compulsory process in the Southern District of Texas, unlike the several potential SpaceX witnesses who reside and work in California and who would be subject to compulsory process in the Central District of California.[81] Moreover, SpaceX is represented by counsel in this suit with an office in

---

[78] ULP Compl. ¶¶6, 8-10, 12-13, 19-20, 24-28. See also Doc. 18-1 at p. 12.

[79] Burgess Decl. ¶4, 12.

[80] SpaceX's complaint states that an unspecified, allegedly "significant," number of Texas-based SpaceX employees were among the many employees who "interacted with an Open Letter," which it admits "was broadly distributed to all SpaceX facilities across the country." Compl. ¶34.

[81] Fed. R. Civ. P. 45(c); Doc. 18-1 at p. 12, 13.

Los Angeles. So it is not clear why it would not be more convenient for SpaceX to litigate this case in Texas but for its apparent interest in the Fifth Circuit's recent decision in *Jarkesy*, 34 F.4th 446,[82] or other forum shopping considerations that Section 1404(a) is designed to hem-in.

As for other practical problems, this final private interest factor points in the direction of venue in the Central District of California. Not only will counsel for the Board and proposed intervenors have to appear *pro hac vice* here and retain local counsel, but so will SpaceX's attorneys.[83] In sum, the balance of private interest factors weighs in favor of transfer to the Central District of California. That is where the operative events arose, where witnesses are more likely to be found, where Region 31 is located, where the Region conducted its investigation, and where the administrative hearing that SpaceX now seeks to enjoin is scheduled to take place.

> 2. Public-interest factors weigh strongly in favor of transfer to the Central District of California.

Of the four public interest factors, the second—the local interest in deciding localized interests decided at home—weighs most heavily in favor of transfer here. There is a compelling interest in having local disputes and all related issues "resolved in the locale where they arise."[84] Courts have moreover recognized a "strong local interest" in having labor controversies decided by the court "where the affected employees are located."[85]

---

[82] *See*, *e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100.

[83] *See* Compl. at p. 25 (three of the four attorneys for SpaceX have stated that appearance by *pro hac vice* is forthcoming)

[84] *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) ; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home.").

[85] *Lab Corp. of Am. Holdings.*, 942 F. Supp. 2d at 4; *see also Pac. Mar. Ass'n*, 905 F. Supp. at 61 (transferring case to Oregon, the "true locus of this dispute," based in part on location of work, conduct at issue, and Board's administrative processes).

Here, the Hawthorne Facility was the site of almost all of the alleged ULPs by SpaceX managers or agents.[86] And while one discharged employee was interrogated while working from a Washington State facility, the remaining seven discharged employees were all based out of the Hawthorne Facility; all eight employees reported to management there.[87] "None of them have worked [in Texas], none of the protected activity that they engaged in occurred there, [and] their terminations did not occur there."[88] Moreover, the Region 31 Office that investigated and is prosecuting the ULP Complaint is based in Los Angeles, which is also where a hearing on the merits of the ULP Complaint is scheduled to occur.[89] And as discussed above, any potential Section 10(j) injunction action against SpaceX arising from the ULP Complaint would be brought there. This Court should find that transfer is supported by a profound local interest in having this matter, arising out of a California labor dispute, resolved in the that venue.

Relative docket congestion, related to the first public interest factor, also favors transfer here. While "congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered" by district courts in the

---

[86] ULP Compl. ¶¶4, 6, 8-10, 12-13, 19-20, 24-28 (identifying Brian Bjelde as having an office at the Hawthorne facility, identifying Lindsay Chapman, John Edwards, and Jessica Jensen as taking action at the Hawthorne facility); *see also* ULP Compl. ¶¶4, 7, 10-11, 14-18 (identifying Sandy Simmons as engaging with employees "outside of the Hawthorne facility," and identifying Michael Saqr and Gwynne Shotwell as taking action from an unspecified location); Doc. 19, Declaration of Tom Moline ("Moline Decl.") ¶12 (stating SpaceX President Gwynne Shotwell was based in Hawthorne around the time of his termination); Doc. 18-1 at p. 12 (alleging that Bjelde and Chapman, as well as another potential party witness, are located in California).

[87] Burgess Decl. ¶4.

[88] Burgess Decl. ¶12.

[89] *See Alpha Servs., LLC v. Looman*, No. CV 23-2988, 2023 WL 6795545, at *7 (E.D. La. Oct. 13, 2023) (denying transfer because "the administrative proceedings that Plaintiffs seek to enjoin are ongoing in this District.").

motion-to-transfer analysis.[90] The latest statistics reporting median case-processing times and pending cases per judgeship show median disposition times are significantly shorter, and fewer cases are pending per judge, in the Central District of California.[91]

The final two public-interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law—have little bearing here. This action primarily involves a claim of unconstitutional agency action grounded in federal law and the Constitution. The District Court for the Central District of California is not a disadvantage to this Court in resolving such claims.

Finally, Section 1404(a)'s "the interest of justice" factor weighs in favor of transfer, in light of SpaceX's forum-shopping in this Court.[92] This Court should not condone SpaceX's deliberate selection of this forum to obtain a perceived benefit from the application of certain

---

[90] *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974) (en banc).

[91] *See* Table C-5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September, 30, 2023, https://www.uscourts.gov/statistics/table/c-5/judicial-business/2023/09/30 (Sep. 30, 2023) (noting that median disposition time in civil cases for the Central District of California is 4.4 months compared to 7.9 months in the Southern District of Texas); U.S. District Courts—National Judicial Caseload Profile, 36, 68, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1 (Sep. 30, 2023) (showing that the Central District of California has 489 pending cases per judgeship versus 768 for the Southern District of Texas).

[92] *See Onyeneho v. Allstate Ins. Co.,* 466 F. Supp. 2d 1, 5 (D.D.C. 2006) ("To the extent that plaintiffs are engaging in forum shopping, it weighs in favor of transfer to a more appropriate forum."); *Turner & Newall,* 652 F. Supp. at 1312 (considering whether "transfer is warranted in the interest of justice because [plaintiff] engaged in forum shopping" by filing in this Court "simply to benefit from [the D.C.] Circuit's ruling" in another case); *accord Schmid Labs.,* 654 F. Supp. at 736.

precedents,[93] while avoiding a forum with perhaps less favorable precedent but much stronger connections to the underlying dispute.[94]

## CONCLUSION

Because venue here is improper and there is one clearly proper venue in which this case should be presented, the interest of justice and other relevant factors support immediately transferring this case to the Central District of California.

Respectfully submitted,

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of Texas*

Daniel David Hu
*Chief, Civil Division*

By: *s/ Benjamin S. Lyles*
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance and*
  *Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

DANIEL BRASIL BECKER
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

*s/ David Boehm*
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 11th day of January, 2023.

---

[93] *See, e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100 (citing *Jarkesy*, 34 F.4th 446).

[94] *See Lab. Corp. of Am. Holdings*, 942 F. Supp. 2d at 5 (citing the plaintiff's "forum shopping" as a reason to transfer a lawsuit seeking to enjoin an NLRB representation case); *see also Onyeneho*, 466 F. Supp. 2d at 5 (granting transfer where court was "indeed concerned about the possibility of forum shopping here" based on the argument "that plaintiffs have chosen this forum simply to avoid disadvantageous precedent in the Fourth Circuit").