# Exhibit B-2

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 31

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.** | |
| **and** | **Cases 31-CA-307446** |
| | **31-CA-307532** |
| | **31-CA-307539** |
| | **31-CA-307546** |
| | **31-CA-307551** |
| | **31-CA-307555** |
| **ANNE SHAVER** | |
| **and** | **Case 31-CA-307514** |
| **TOM MOLINE, an Individual** | |
| **and** | **Case 31-CA-307525** |
| **PAIGE HOLLAND-THIELEN, an Individual** | |

## RESPONDENT SPACE EXPLORATION TECHNOLOGIES CORP.'S MOTION TO EXTEND TIME FOR FILING ITS ANSWER TO THE COMPLAINT AND MOTION TO POSTPONE THE HEARING

Pursuant to Section 102.16(a), 102.22, and 102.24(a) of the Rules and Regulations of the National Labor Relations Board ("NLRB") and NLRB Form 4338, Respondent Space Exploration Technologies Corp. moves to extend both the time for filing and serving Respondent's answer to the complaint issued on January 3, 2024 and postpone the hearing in the above-referenced matter.  In support of this motion, Respondent states the following:

1.      The deadline for filing and serving Respondent's answer to the complaint is currently January 17, 2024.  The Administrative Law Judge ("ALJ") hearing is currently scheduled for March 5, 2024.

2.      On January 4, 2024, one day after the complaint issued in this case, Respondent filed a complaint in the U.S. District Court for the Southern District of Texas challenging the constitutionality of multiple facets of this proceeding and the NLRB's structure.  *See Space Exploration Technologies Corp. v. NLRB et al.*, Case 1:24-cv-00001 (S.D. Tex.) (filed Jan. 4, 2024) ("federal court litigation").  A copy of the complaint in the federal court litigation is attached as Exhibit A.

3.      Respondent requests that the hearing in this case be postponed indefinitely pending the resolution of the federal court litigation, along with the deadline for filing its answer.

4.      *In the alternative* to indefinite postponement, Respondent requests that the hearing be postponed until **June 7, 2024**, to allow for resolution of the federal court litigation.  In the event the hearing is postponed to June 7 (instead of indefinitely), Respondent requests the deadline for filing its answer be extended to **May 10, 2024**, to allow for resolution of the federal court litigation.

5.      Respondent is making this request because postponement is in the interests of justice and preservation of agency and party resources, given the multiple procedural issues and the complexity of the merits issues in the federal court litigation that currently must be decided on a short timeline.  These issues must be decided before Respondent is required to file any responsive pleading and before the hearing commences in this case, because the commencement and the continuation of the hearing constitutes a constitutional injury to Respondent.  *See* Exhibit A.

6.      The complaint filed by Respondent in the federal court litigation also seeks preliminary and permanent injunctive relief, which if granted would preclude the NLRB proceeding from moving forward under the Agency's current structure.

7.      Respondent intends to file its preliminary injunction motion today, January 12, 2024.  Under the local rules for the U.S. District Court for the Southern District of Texas and the court rules for Judge Rolando Olvera, to whom the federal court case has been assigned, parties would have 21 days to file a response to Respondent's motion, Respondent would have 10 days to file a reply, and parties would have 10 days to file a surreply.  *See*  Local Rules for the Southern District of Texas LR 7.3, 7.4, *available at*

https://www.txs.uscourts.gov/sites/txs/files/LR_August_2023.pdf; Civil Procedures/Local Rules for Judge Olvera Civil at 6, *available at*

https://www.txs.uscourts.gov/sites/txs/files/Judge%20Olvera%20Local%20Rules%20%28Civil%29%203-8-23.pdf.

8.      Assuming a January 12 filing date, Respondent's preliminary injunction motion would not be fully briefed until February 22, 2024, <u>after</u> Respondent's answer in this case is due and fewer than 11 days before the hearing in this case is currently scheduled to commence. Extending the answer deadline and postponing the hearing in this case would ensure Judge Olvera has sufficient time to decide the multiple constitutional issues presented by the federal court litigation before this case moves forward.

9.      Further, depending on the outcome of Respondent's preliminary injunction motion, either party may then wish to pursue appellate relief, for which there would be very little time before the hearing under the current deadlines (and which also would take place after Respondent's answer is due).

10.     Additionally, the preliminary injunction process described above – which needs to be adjudicated quickly and before this case moves forward – could be delayed even further as the defendants in the federal court litigation filed a motion to transfer venue to the U.S. District Court for the Central District of California on January 11, 2023.  A copy of the motion to transfer is attached as <u>Exhibit B</u>.  Respondent opposes this motion.

11.     Any transfer motion will need to be briefed, and Judge Olvera may wish to decide that motion before ruling on Respondent's preliminary injunction motion.

12.     Further, if the transfer motion is granted, that will result in further delay while the new court gets up to speed on the case and the complex constitutional issues.

13.     In addition, the Charging Parties in this case moved to intervene in the federal court litigation on January 8, 2024, which Respondent also opposes.  The motion to intervene will need to be briefed and decided as well.  This is yet another procedural issue that will need to be decided, and could potentially delay resolution of Respondent's preliminary injunction motion in the federal court litigation.

14.     The federal court litigation issued described above should be resolved before Respondent is required to take any further action in this case, including by filing an answer to the complaint and/or preparing and participating in a hearing.  Accordingly, extension of the answer deadline and postponement of the hearing are warranted.

15.     *In the alternative* to postponing the date of the hearing and extending the deadline for filing the answer as requested in Paragraphs 3 and 4 above (i.e., in the event the Region denies both requests), Respondent requests that the hearing be postponed to **April 8, 2024** because of witness availability, as described below.  In the event the hearing is postponed

to April 8, Respondent requests that the deadline for filing its answer be extended to **March 8, 2024**.  Respondent also requests the answer deadline be extended to that date, regardless.

16.     Respondent requests the alternative postponement and extension described in Paragraph 15 above because nearly all of Respondent's witnesses who are named in the complaint are Respondent executives with wide-ranging job responsibilities and have significant, prescheduled conflicts with the March 5, 2024 hearing date (and early March 2024 in general, when they would be expected to testify) resulting from their general job responsibilities and from business travel.  For example, we have already identified the following conflicts in terms of business travel: Gwynne Shotwell, Respondent's President and COO, will be out of the country for a business trip on March 5-7, 2024, when the hearing is scheduled to commence.  Shotwell also has pre-existing speaking engagements, conferences, and company board meetings on March 8, March 18-21, and April 4.  Moreover, Jessica Jensen, Vice President of Customer Operations, has pre-scheduled business trips on March 18-21, 2024.

17.     These Respondent executives are all named in the Complaint and are expected to be witnesses called for the hearing.

18.     In addition, a Senior Director who is not named in the Complaint but whom Respondent expects to call as a witness to testify regarding key facts relating to launch and pre-launch operations in support of Respondent's defenses to the Complaint allegations, has pre-scheduled business meetings and travel on March 5, March 19-21, and April 4-5, 2024, as well as a pre-existing personal commitment on March 7-8, 2024.

19.     These conflicts were scheduled and confirmed before the complaint and notice of hearing issued in this case on January 3, 2024.  Respondent will be substantially prejudiced in presenting its case if key witnesses are not able to testify and present evidence at the hearing.

There is no corresponding prejudice to the General Counsel or Charging Parties with a postponement.  The complaint allegations pertain to alleged events occurring between May and August 2022, 18 months or more before the complaint was issued.  An additional delay of several weeks will not prejudice the General Counsel or Charging Parties.

20.     Respondent's counsel has attempted to confer with Counsel for the General Counsel and Charging Parties' counsel about the requests to extend the answer deadline and postpone the hearing, via emails sent at 9:36-37 AM, today.  Counsel for the General Counsel both opposes the request to postpone the hearing indefinitely and opposes the request to postpone the hearing to June 7, 2024.  Counsel for the General Counsel also opposes the request to postpone the hearing to April 8, 2024 (and the answer to March 8), because counsel for the General Counsel required "sufficient detail as to which witnesses are unavailable and why they are unavailable until April 8, 2024" and Respondent needed to note the position of the Charging Party.  Respondent hopes that this motion provides that detail, without limiting the fact that there are likely other conflicts of which Respondent does not yet know.  After receiving a response from counsel from the Charging Parties shortly before the filing of this motion, Respondent has now informed counsel for the General Counsel of the charging parties' opposition to all postponements requested.

21.     However, Counsel for the General Counsel "would not oppose a one-week extension of the due date for the answer to January 24, 2024, should Respondent decide to make such a request."

22.      Counsel for the Charging Parties responded shortly before the filing of this motion.  Counsel for the Charging Parties oppose all requests to postpone the hearing and all requests to extend the due date for the Answer.

23.     Respondent makes this motion because of deadlines under NLRB rules and regulations, and does not waive any of its contentions, claims, defenses, and remedies appearing in the complaint attached as Exhibit A, or any contentions, claims, defenses or remedies in the instant action.

Dated: January 12, 2024                                  Respectfully submitted,


By:*/s/ Harry I. Johnson III*
Harry I. Johnson III
MORGAN, LEWIS & BOCKIUS LLP
2409 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (310) 255-9005
harry.johnson@morganlewis.com

*Counsel for Space Exploration Technologies Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2024, a copy of Respondent Space Exploration Technologies Corp.'s Motion to Extend Time for Filing Its Answer to the Complaint and Motion to Postpone the Hearing in NLRB Case No. 31-CA-307446, et al. was filed electronically using the NLRB's e-filing system and served by email on the following:

> Lynn Ta, Attorney
> National Labor Relations Board, Region 31
> 11500 W Olympic Blvd, Suite 600
> Los Angeles, CA 90064
> lynn.ta@nlrb.gov
>
> Anne Shaver, Attorney at Law
> Lieff Cabraser Heimann & Bernstein, LLP
> 275 Battery Street, 29th Floor
> San Francisco, CA 94111
> ashaver@lchb.com
>
> Laurie M. Burgess, Attorney
> Burgess Law Offices PC
> 498 Utah Street
> San Francisco, CA 94110-1435
> lburgess@burgess-laborlaw.com

*/s/ Lauren M. Emery*
Lauren M. Emery
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, 29th Floor
Chicago, IL 60606-1511
Phone: (312) 324-1147
lauren.emery@morganlewis.com

*Counsel for Space Exploration Technologies Corp.*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. _____ |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Space Exploration Technologies Corp. ("SpaceX") brings this action for declaratory and injunctive relief, alleging as follows:

### INTRODUCTION

1.      This action stems from an unlawful attempt by the National Labor Relations Board ("NLRB") to subject SpaceX to an administrative proceeding whose structure violates Article II, the Fifth Amendment, and the Seventh Amendment of the Constitution of the United States.

2.      Article II vests all executive power in the President, "who must 'take Care that the Laws be faithfully executed.'" *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).

3.      To discharge that responsibility, the President must have the power to remove subordinate officers who assist in carrying out the President's duties. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513–14 (2010).

4.      The Fifth Circuit has held that this removal power extends to administrative law judges ("ALJs") who "perform substantial executive functions." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

5.      Article II requires that the President "have sufficient control over the performance of [such ALJs'] functions, and, by implication, . . . be able to choose who holds the positions." *Id.* This constitutionally required degree of control is lacking when the ALJs are insulated by "[t]wo layers of for-cause protection"—that is, when the ALJs are removable only for cause, by officials who themselves are removable only for cause. *Id.*; *see Free Enter. Fund*, 561 U.S. at 492–508. The Fifth Circuit therefore held that the removal restrictions for ALJs set forth in 5 U.S.C. § 7521(a) are unconstitutional as applied to ALJs for the Securities and Exchange Commission ("SEC"). *Jarkesy*, 34 F.4th at 465.

6.      The same reasoning applies to the ALJs of the NLRB, including the ALJ assigned to preside over the pending NLRB proceedings against SpaceX. Like the SEC ALJs in *Jarkesy*, NLRB ALJs are "inferior officers" who "have substantial authority" within agency investigations and enforcement actions. *Jarkesy*, 34 F.4th at 464; *see also Westrock Servs., Inc.*, 366 N.L.R.B. No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). And like SEC ALJs, NLRB ALJs are covered by two layers of removal protection, which insulate them from oversight by the President. *See* 5 U.S.C. §§ 1202(d), 7521(a); 29 U.S.C. § 153(a). So, like the SEC ALJs in *Jarkesy*, NLRB ALJs are unconstitutionally insulated from the President's

oversight, and the Court should declare that the NLRB ALJs' having two layers of removal protection is unconstitutional. *See Jarkesy*, 34 F.4th at 464.

7.       Neither the Fifth Circuit nor the Supreme Court has decided whether the NLRB Members' layer of removal protection is unconstitutional. But the correct answer, given the relevant Supreme Court precedent and nature of the NLRB Members' functions, is a resounding yes.

8.       The NLRB may argue that its Members' removal protections are constitutional under the reasoning of *Humphrey's Executor v. United States*, 295 U.S. 602, 627–28 (1935). That ruling, particularly as the Supreme Court has recently clarified it, does not apply to the NLRB's Members today.

9.       *Humphrey's Executor* applies only to agency officials who do not exercise "executive power in the constitutional sense," as the Court concluded about the Commissioners of the Federal Trade Commission ("FTC") in 1935. *Id.* at 628; *see also Seila L.*, 140 S. Ct. at 2198; *Jarkesy*, 34 F.4th at 465 n.19. Whatever might have been true of the FTC's Commissioners in 1935, it is quite clear today that the NLRB's Members exercise substantial executive power under the Constitution. There is no justification for extending *Humphrey's Executor* to them.

10.       The existence of unconstitutional removal protections inflicts twofold harm. It limits the President's constitutional authority, of course. But it also produces an administrative bureaucracy that operates on regulated parties without the constitutionally required "degree of electoral accountability." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021).

11.       Because such removal protections affect not just the President, but also ordinary Americans who must interact with the administrative state, it makes no legal difference whether the President objects to a given statutory limit on his removal powers: "the separation of powers

does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'" *Free Enter. Fund*, 561 U.S. at 497 (citations omitted).

12.     When a party is regulated by administrative officials who are shielded by unconstitutional removal protections, Supreme Court precedent teaches that the party is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* at 513.

13.     To prevent SpaceX from undergoing protracted administrative proceedings before an unconstitutionally structured agency—after which SpaceX is unlikely to have a chance to secure meaningful retrospective relief—the Court should stay or enjoin the current agency proceedings, declare that the NLRB's structure violates the separation of powers under Article II of the Constitution, and permanently enjoin the NLRB and its General Counsel from pursuing unfair labor practice charges against SpaceX before agency officials that are unconstitutionally insulated from presidential oversight.

14.     The NLRB proceedings against SpaceX also suffer from another constitutional infirmity. They violate the Seventh Amendment, which preserves the right to trial by jury "[i]n Suits at common law." U.S. CONST. amend. VII.

15.     The right to trial by jury "is a 'fundamental' component" of the American legal system and "remains one of our most vital barriers to governmental arbitrariness." *Jarkesy*, 34 F.4th at 452 (quoting *Reid v. Covert*, 354 U.S. 1, 9–10 (1957)).

16.     SpaceX does not take issue with the NLRA's express authorization of backpay, *see* 29 U.S.C. § 160(c), which is a form of equitable relief when it is restitutionary in nature, *see Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570–73 (1990).

17. But the NLRB has recently claimed for itself the authority to award a broader range of relief, including traditional forms of legal relief that go far beyond the equitable restitutionary backpay remedy permitted by the statute. *See Thryv, Inc.*, 372 N.L.R.B. No. 22 (Dec. 13, 2022).

18. Indeed, the NLRB's administrative complaint against SpaceX seeks these expanded remedies.

19. These new remedies, however, are nothing short of compensatory damages intended "to compensate [unlawfully terminated] employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of" the unlawful termination. *Id.* at 1.

20. Money damages designed to compensate for losses are "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993).

21. But not even Congress can "conjure away the Seventh Amendment by mandating that traditional legal claims" proceed before "an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

22. As the Fifth Circuit has held with respect to similar SEC proceedings, when an administrative agency seeks legal relief for an alleged statutory violation, the Seventh Amendment prohibits it from substituting an ALJ hearing for a trial by jury. *See Jarkesy*, 34 F.4th at 451–55.

23. Finally, the NLRB is also unconstitutionally structured because its Members exercise all three constitutional powers—legislative, executive, and judicial—in the same administrative proceedings.

24. This case brings the problem into clear focus: the NLRB's Regional Office for Region 31 (the "Region") has conveyed to SpaceX that it plans to ask for the NLRB Members' approval to go to federal district court to request injunctive relief against SpaceX—a quintessentially prosecutorial act of the Executive—even though the same NLRB Members would

later preside in a quasi-legislative, quasi-judicial capacity in the unfair labor practice proceeding involving the same alleged violations of the NLRA.

25. Even after acting as prosecutor by charging SpaceX with violations of federal labor law before an Article III tribunal, the same NLRB Members would then issue the agency's ultimate order on whether SpaceX has violated federal labor law.

26. In that adjudication, the NLRB Members would have significant leeway to adopt new interpretations of the NLRA as a policy matter and adjudicate whether the evidence supports a determination that SpaceX violated the statute as they interpret it.

27. On top of that, the agency would then insist that subsequent judicial review before an Article III court must give significant deference to the NLRB Members' interpretations of the NLRA and findings of fact.

28. The NLRB's current way of functioning is miles away from the traditional understanding of the separation of powers, which views "[t]he accumulation of all powers legislative, executive and judiciary in the same hands" as "the very definition of tyranny." THE FEDERALIST No. 47 (James Madison).

29. And although the Supreme Court upheld aspects of the NLRB's basic structure nearly a century ago, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937), the Court has subsequently clarified that the Constitution's due process guarantee precludes an individual from serving as prosecutor and adjudicator in the same case, *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

30. If the current Members of the NLRB are asked to make a prosecutorial determination about whether SpaceX is in violation of the NLRA, there is an objectively high risk that they would not later be able to provide the neutral adjudicative forum that the Constitution

6

demands, and so would need to recuse from further participation in any agency adjudication against SpaceX.

31.     For this reason, too, SpaceX is entitled to declaratory and injunctive relief to ensure that it is not subjected to unlawful proceedings before an unconstitutionally structured agency.

## JURISDICTION AND VENUE

32.     This action arises under the Constitution and laws of the United States. This Court has federal question jurisdiction under 28 U.S.C. § 1331 over SpaceX's claims that fundamental aspects of the NLRB's structure violate the Constitution. *See, e.g.*, *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023).

33.     The Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and under the Court's inherent equitable powers.

34.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity; and a substantial part of the events or omissions giving rise to the claim occurred in Boca Chica, Texas, where SpaceX maintains its Starbase rocket development and launch facility, its fastest-growing facility and a key component to its operations and overall success. The NLRB's administrative proceeding targets a variety of SpaceX actions and policies that allegedly occurred across its many U.S. facilities, including in response to an "Open Letter" that was broadly distributed to employees at all SpaceX facilities across the country. For example, the administrative complaint alleges unfair labor practices based on the company President's June 15 and June 16, 2022 emails to all employees companywide, and seeks certain remedies that would affect all of SpaceX's facilities. Moreover, a significant portion of the employees who interacted with the Open Letter were based

at Starbase (in addition to employees who interacted with the Open Letter while based at SpaceX's Houston facility, which is also located in this judicial district).

## PARTIES

35.    Plaintiff SpaceX, a privately held Delaware corporation, is a pioneer in the aerospace industry, employing more than 13,000 employees in Texas, California, Florida, Washington, and Washington, D.C. SpaceX has facilities and employees in several cities in Texas, including the Starbase rocket development and launch facility in Boca Chica.

36.    Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The National Labor Relations Act ("NLRA") empowers the NLRB to initiate administrative proceedings to prevent unfair labor practices. *See* 29 U.S.C. § 160.

37.    Defendant Jennifer A. Abruzzo is General Counsel of the NLRB. She is sued in her official capacity.

38.    Defendant Lauren M. McFerran is Chairman of the NLRB. She is sued in her official capacity.

39.    Defendant Marvin E. Kaplan is a Member of the NLRB. He is sued in his official capacity.

40.    Defendant Gwynne A. Wilcox is a Member of the NLRB. She is sued in her official capacity.

41.    Defendant David M. Prouty is a Member of the NLRB. He is sued in his official capacity.

42.    Defendant John Doe is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceedings against SpaceX, whose identity has not yet been disclosed to SpaceX. He is sued in his official capacity.

## FACTS

43.    On June 15, 2022, a small group of SpaceX employees using the company's internal communications platforms sent an Open Letter to thousands of SpaceX employees, during working hours.

44.    The Open Letter demanded that SpaceX take certain actions addressing perceived shortcomings, and solicited the thousands of recipient-employees to support the Open Letter's demands and fill out a linked survey hosted externally.

45.    The Open Letter caused significant distraction to SpaceX employees around the country.

46.    SpaceX discharged several employees involved with the Open Letter for violating numerous company policies.

47.    On November 16, 2022, former SpaceX employees (collectively, the "Charging Parties") filed charges with the NLRB alleging that SpaceX committed unfair labor practices in violation of the NLRA when it terminated their employment (the "Charges").

48.    On March 16, 2023, the NLRB sought SpaceX's response to the Charges. SpaceX submitted its position statement and supporting evidence refuting the Charging Parties' allegations on April 28, 2023.

49.    On December 14, 2023, the Region informed SpaceX that it had made determinations on all eight Charges and authorized a complaint against SpaceX.

50.    On January 3, 2024, the Regional Director for Region 31 issued an order consolidating the administrative cases, together with a consolidated administrative complaint and notice that an administrative hearing would occur on March 5, 2024 before an ALJ.

## COUNT I – THE NLRB'S ALJS ARE UNCONSTITUTIONALLY
## INSULATED FROM REMOVAL

51. SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

52. NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053–55 (2018); *Jarkesy*, 34 F.4th at 464; *Westrock Servs.*, 366 N.L.R.B. No. 157, slip op. at 1.

53. At the same time, the NLRB may attempt to remove its ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). And under the NLRA, Board Members are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

54. Given NLRB ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

55. The statutes' provision of at least two layers of removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund*, 561 U.S. at 492–508; *Jarkesy*, 34 F.4th at 463–65.

56. But for these unlawful removal restrictions, either the ALJ assigned to SpaceX's administrative case or the NLRB Members who bear responsibility to supervise and exercise

control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

57.     Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *see also, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021) (en banc), *aff'd and remanded sub nom. Axon Enter.*, 143 S. Ct. 890.

58.     Accordingly, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

59.     Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

60.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

61.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before an ALJ unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

62.     Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See Collins*, 141 S. Ct. at 1787–89.

63.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. In contrast to the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

64.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

### COUNT II – THE NLRB'S MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

65.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

66.     The NLRB's Members may be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

67.     Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

68.     For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").

69.     More generally, the NLRB also enforces and implements the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

70.     In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

71.     The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power."' *Seila L.*, 140 S. Ct. at 2198 n.2 (citation omitted).

72.     Also, the removal protections for NLRB Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Ex'r*, 295 U.S. at 620 (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency, 29 U.S.C. § 153(a).

73.     The combination of the NLRB Members' strict removal protections and exercise of substantial executive power violates Article II of the Constitution.

74.     But for these unlawful removal restrictions, the NLRB Members would face the prospect of removal by the President—including based on their conduct during the proceedings against SpaceX.

75.     Being subject to proceedings before unconstitutionally insulated agency officials is a "here-and-now injury" justifying pre-enforcement judicial intervention. *Axon Enter.*, 143 S. Ct. at 903 (citation omitted); *Cochran*, 20 F.4th at 210 n.16, 212–13.

76.     So, here too, SpaceX is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [SpaceX is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

77.     Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

78.     SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

79.     Yet, unless the NLRB is enjoined from proceeding against SpaceX before an NLRB whose Members are unconstitutionally insulated from presidential oversight, SpaceX will be irreparably harmed.

80.     Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against SpaceX, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins*, 141 S. Ct. at 1787–89.

81.     The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

82.     The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## COUNT III – THE NLRB ALJ'S ADJUDICATION OF PRIVATE RIGHTS WITHOUT A JURY TRIAL VIOLATES THE SEVENTH AMENDMENT

83.     SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

84.     The Seventh Amendment to the Constitution of the United States provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII.

85.     The term "Suits at common law" "include[s] all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452.

86.     "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Id.*

87.     The NLRA authorizes the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take . . . affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

88.     Although the statute thus permits backpay as "an incident to equitable relief," *Jones & Laughlin*, 301 U.S. at 48, today's NLRB currently asserts much broader authority to award monetary damages.

89.     For example, Defendant Jennifer Abruzzo, General Counsel of the NLRB, has ordered Regional Directors to "request from the Board the full panoply of remedies available to ensure that victims of unlawful conduct are made whole for losses suffered as a result of unfair labor practices." Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-06 at 1 (Sept. 8, 2021).

90.     Ms. Abruzzo later elaborated on the "full panoply of remedies" that Regions should seek. *See* Nat'l Lab. Rels. Bd., Office of the Gen. Counsel, Memorandum 21-07 at 1 (Sept. 15, 2021). She contended that "[a] monetary remedy comprised only of backpay and lost benefits often fails to truly make whole victims of an unfair labor practice," and urged that "Regions should always make sure to seek compensation for any and all damages, direct and consequential, attributable to an unfair labor practice," including housing, medical, or training expenses relating to the allegedly unlawful employment practice. *See id.* at 2–4 (listing examples).

91.     Recently, in *Thryv*, a divided Board determined that it has authority to issue monetary awards "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." 372 N.L.R.B. No. 22, slip op. at 1.

92.     Such compensation goes far beyond the statutory category of backpay. According to the Board, it encompasses such items as "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. *Id.* at 9–10 (citation omitted).

93.     In substance, this expanded remedy permits a broad range of consequential damages, although the *Thryv* majority sought to avoid that label on the ground that it "refer[s] to a specific type of legal damages." *Id.* at 8.

94.     Even the *Thryv* majority, however, acknowledged that the expanded remedy provides monetary relief for compensatory purposes. *See id.* ("[M]aking employees whole should

include, at least, compensating them for direct or foreseeable pecuniary harms resulting from the respondent's unfair labor practice.").

95.     Although restitutionary backpay (through which an employer disgorges money that it wrongfully holds and that rightfully belongs to the employee) is categorized as a form of equitable relief, *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 570 (1990), nonrestitutionary compensatory damages are not.

96.     On the contrary, "compensatory damages," or "monetary relief for all losses . . . sustained as a result of the alleged breach of . . . duties," are "the classic form of *legal* relief." *Mertens*, 508 U.S. at 255 (some emphasis omitted).

97.     The Board's newly expanded remedy goes beyond the vindication of public rights, "the public interest in effecting federal labor policy," and instead focuses on "the wrong done the individual employee." *Terry*, 494 U.S. at 573 (citation omitted).

98.     Indeed, the *Thryv* majority expanded the Board's traditional remedy precisely because it determined that backpay is not enough, on its own, "to restore the wronged to the position he would have occupied but for the action of the wrongdoer." *Id.* at 10 (citation omitted); *see also id.* at 12.

99.      In accordance with *Thryv* and Ms. Abruzzo's directives, the NLRB's administrative complaint against SpaceX specifies that the General Counsel seeks all relief as may be just and proper to remedy the unfair labor practices alleged.

100.     The fact that the administrative complaint also seeks equitable relief does not strip SpaceX of its jury-trial right. *Jarkesy*, 34 F.4th at 454 ("the Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims").

101.    Nor does the fact that NLRB proceedings are administrative in nature. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency" like the NLRB. *Granfinanciera*, 492 U.S. at 61.

102.    Without interim injunctive relief from this Court, SpaceX's claims will be improperly adjudicated by an administrator instead of a jury.

103.    SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

104.    Yet unless the NLRB is enjoined from proceeding against SpaceX before an NLRB ALJ rather than a jury, SpaceX will be irreparably harmed.

105.    As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

106.    The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as early in the proceedings as possible—as soon as the NLRB gave notice of an ALJ hearing.

107.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

**COUNT IV – THE NLRB'S EXERCISE OF PROSECUTORIAL,
LEGISLATIVE, AND ADJUDICATORY AUTHORITY
IN THE SAME PROCEEDINGS VIOLATES
THE SEPARATION OF POWERS AND DUE PROCESS**

108.    SpaceX restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

109.    Under Section 10(j) of the NLRA, "The Board shall have power, upon issuance of a complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j).

110.    Under the NLRB's current procedures, Members of the NLRB approve the determination whether to petition for injunctive relief under Section 10(j). *See* Office of the General Counsel, *Section 10(j) Manual* §§ 5.2–5.5, at 13–16 (Feb. 2014), https://www.nlrb.gov/ sites/default/files/attachments/basic-page/node-1727/MASTER%20REVISED%202013%2010(J) %20MANUAL.pdf.

111.    This approval process includes the NLRB Members' evaluation of the NLRB Regional Director's presentation of the "merits" of the alleged legal violations, including a presentation of "the relevant facts and legal arguments and authorities establishing the violations" and of the charged party's asserted "defenses." *Id.* § 5.2.1, at 13.

112.    Because a Section 10(j) proceeding seeks preliminary injunctive relief, the decision also considers whether the alleged violations threaten "irreparable harm." *Id.* §§ 4.0, 5.2.1, at 10, 13.

113.     To secure Section 10(j) relief, the NLRB's litigators must ultimately make a sufficient showing on both their likelihood of success on the merits of the alleged violations and on the balance of equities, such as the likelihood of irreparable harm. *See, e.g.*, *McKinney ex rel. NLRB v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 296–99 (5th Cir. 2015).

114.     In these ways, NLRB Members who grant their approval to request Section 10(j) relief in a given case exercise prosecutorial authority based on their assessment of the charged parties' responsibility for the alleged unfair labor practices and for ensuing irreparable harm.

115.     This approval process is not a neutral adjudication of an adversarial proceeding. By design, the NLRB's Section 10(j) approval process relies primarily on the presentation in the "Go 10(j)" memorandum prepared by one side: the NLRB officials who wish to litigate the alleged statutory violations.

116.     This memorandum provides the NLRB officials' views about "the relevant facts and legal arguments and authorities establishing the violations," the NLRB officials' "responses to defenses raised by the [charged party]," and the NLRB officials' "responses [to the charged party's] arguments against 10(j)" relief. *Section 10(j) Manual*, *supra*, § 5.2.1, at 13.

117.     Even after relying on this one-sided presentation of the facts and law as their primary basis for authorizing Section 10(j) proceedings, the same NLRB Members often judge whether the same charged parties have engaged in the alleged unfair labor practices, and issue findings of fact, orders, and remedies that are then subject to deferential judicial review. 29 U.S.C. § 160(c), (e)–(f).

118.     The Supreme Court has held, however, that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 579 U.S. at 8.

119.   "The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision." *Id.* at 9.

120.   Such circumstances present the risk that "the judge's 'own personal knowledge and impression' of the case, acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court." *Id.* at 9–10.

121.   The same risks are inherent in NLRB adjudications before Members of the Board that previously authorized pursuit of Section 10(j) relief based on the "Go 10(j)" Memorandum's presentation of facts and law.

122.   After having placed their imprimatur on a federal-court filing that alleges, on behalf of the NLRB itself, that a specific party has likely violated the NLRA in ways that cause irreparable harm to third parties, there is a substantial risk that such NLRB Members will be psychologically wedded to that position when they adjudicate the administrative complaint.

123.   That risk is even greater if, in the meantime, the agency's bid for Section 10(j) relief has succeeded, because the Members might "be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process" in federal court. *Williams*, 579 U.S. at 11.

124.   In addition to making factual determinations, the NLRB adjudicative process often involves significant quasi-legislative authority under which the NLRB Members can decide to adopt new interpretations of the NLRA's requirements.

125.   "The National Labor Relations Board, uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through

adjudication rather than rulemaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

126.    Then, in an eventual appeal by an aggrieved person, the NLRB claims deference from U.S. Courts of Appeals to both its interpretations of the NLRA and its findings of fact.

127.    But it is well settled that "[e]ven appeal and a trial de novo will not cure a failure to provide a neutral and detached adjudicator." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 618 (1993).

128.    On December 19, 2023, an NLRB attorney communicated that the Region will be making a submission to the General Counsel's Injunction Litigation Branch about the appropriateness of Section 10(j) relief in this dispute.

129.    That communication suggests that a recommendation that Defendants McFerran, Kaplan, Wilcox, and Prouty (the "NLRB Member Defendants") approve Section 10(j) proceedings is imminent.

130.    The NLRB Member Defendants' exercise of prosecutorial authority in making the significant decision of approving a Section 10(j) proceeding against SpaceX leaves those Members unable to participate as adjudicators on the same underlying charges against SpaceX consistent with the Fifth Amendment's due process guarantee.

131.    SpaceX is therefore entitled to declaratory relief sufficient to ensure that its due process rights are not violated.

132.    Moreover, without interim injunctive relief from this Court, SpaceX will be required to undergo an unconstitutional proceeding before agency officials who are obligated to recuse from participation.

133.    SpaceX bears a strong likelihood of success on this claim for the reasons detailed above.

134.    Yet, unless the NLRB is enjoined from proceeding against SpaceX before NLRB Members who are constitutionally obligated to recuse themselves, SpaceX will be irreparably harmed.

135.    As the Supreme Court has recognized, "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker," qualifies as a "here-and-now injury." *Axon Enter.*, 143 S. Ct. at 893.

136.    If the current NLRB Members authorize the Section 10(j) litigation against SpaceX and fail to recuse from the agency adjudication and participate in a decision, "ordering a rehearing . . . may not provide complete relief." *Williams*, 579 U.S. at 16; *see also, e.g.*, *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 61–62 (1972) (A party "is entitled to a neutral and detached judge in the first instance.").

137.    The harm to SpaceX, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. Unlike the NLRB, which did not file the adjudicative proceedings until 18 months after the allegedly unlawful conduct, SpaceX has filed this action as quickly as possible—as soon as the NLRB gave notice of an ALJ hearing.

138.    The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, SpaceX hereby requests that the Court order the following relief and enter a judgment:

1.      Declaring that:

    a.      The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a), are unconstitutional;

    b.      The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional;

    c.      The NLRB proceedings against SpaceX deprive it of its constitutional right to trial by jury; and

    d.      Members of the NLRB who participate in the decision to authorize Section 10(j) litigation against SpaceX are constitutionally obligated to recuse from further NLRB proceedings on the same unfair labor practice allegations.

2.      Preliminarily enjoining Defendants from subjecting SpaceX to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3.      Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4.      Permanently enjoining the NLRB Member Defendants from adjudicating allegations relating to the same underlying set of events as any Section 10(j) action against SpaceX that they authorize;

5.      Awarding SpaceX its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

6.      Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: January 4, 2024

Respectfully submitted,

By:     /s/ Catherine L. Eschbach

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-in-Charge
Texas Bar No. 24097665
Southern District of Texas Bar No. 3846447
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
Tel: (713) 890-5719
Fax: (713) 890-5001

Harry I. Johnson, III (*pro hac vice* forthcoming)
Of Counsel
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Tel: (310) 907-1000

Michael E. Kenneally (*pro hac vice* forthcoming)
Amanda L. Salz (*pro hac vice* forthcoming)
Of Counsel
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
Tel: (202) 739-3000

*Attorneys for Space Exploration Technologies Corporation*

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

SPACE EXPLORATION
TECHNOLOGIES CORP.,

              Plaintiff,

     v.

NATIONAL LABOR RELATIONS
BOARD, a federal administrative agency,
JENNIFER ABRUZZO, in her official
capacity as the General Counsel of the
National Labor Relations Board, LAUREN
M. McFERRAN, in her official capacity as
the Chairman of the National Labor
Relations Board, MARVIN E. KAPLAN,
GWYNNE A. WILCOX, and DAVID M.
PROUTY, in their official capacities as
Board Members of the National Labor
Relations Board, and JOHN DOE in his
official capacity as an Administrative Law
Judge of the National Labor Relations
Board,

              Defendants.

Case No. 24-cv-0001

## MOTION OF DEFENDANTS TO TRANSFER VENUE
## PURSUANT TO 28 U.S.C. § 1406(a) AND § 1404(a)
## AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

INTRODUCTION AND MOTION.................................................................................. 1

THE STATUTORY DESIGN OF THE NLRA........................................................... 1

ISSUES IN DISPUTE.................................................................................................. 3

FACTUAL BACKGROUND........................................................................................ 3

ARGUMENT ................................................................................................................ 5

   I.   This Case may not be heard in this venue and should be transferred in the interest of justice. .......................................................................................................................... 5

      A.   Venue here is improper because no party resides in this district and there is no substantial connection between the conduct in the complaint and this venue......................... 6

      B.   The interest of justice favors transfer rather than dismissal............................................ 7

   II.   This case should be immediately transferred; even if venue were not improper here, the interest of justice and convenience of parties and witnesses support transfer to the Central District of California under 28 U.S.C. § 1404(a). ........................................................ 8

      A.   This Court should transfer the case before deciding anything else................................. 9

      B.   SpaceX's choice of venue should be accorded little or no weight because it has filed an anticipatory suit to engage in forum-shopping. ..................................................................... 10

      C.   Legal standards for motions to transfer venue pursuant to Section 1404(a). ................. 13

      D.   This Court should transfer the case to the Central District of California........................ 15

           1. Private-interest factors weigh in favor of transfer to the Central District of California. ............................................................................................................................ 15

           2. Public-interest factors weigh strongly in favor of transfer to the Central District of California. ...................................................................................................................... 17

CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aftab v. Gonzalez,*
597 F. Supp. 2d 76 (D.D.C. 2009) ........................................................................ 9

*Alpha Servs., LLC v. Looman,*
No. CV 23-2988, 2023 WL 6795545 (E.D. La. Oct. 13, 2023) ........................ 18

*Andrade v. Chojnacki,*
934 F. Supp. 817 (S.D. Tex. 1996) .................................................................. 7, 12

*Barham v. UBS Fin. Servs.,*
496 F. Supp. 2d 174 (D.D.C. 2007) .................................................................... 14

*Boire v. Pilot Freight Carriers, Inc.,*
515 F.2d 1185 (5th Cir. 1975) .............................................................................. 3

*Bokat v. Tidewater Equip. Co.,*
363 F.2d 667 (5th Cir. 1966) ................................................................................ 3

*Care One, LLC v. NLRB,*
No. 2:23-cv-03221, 2023 WL 4156859 (D.N.J. June 23, 2023) ........................ 9

*Corp. of Am. Holdings v. NLRB,*
942 F. Supp. 2d 1 (D.D.C. 2013) ............................................................ 9, 17, 20

*Cottman Transmission Sys., Inc. v. Martino,*
36 F.3d 291 (3rd Cir. 1994) ............................................................................. 7, 12

*Curtis v. BP Am., Inc.,*
808 F. Supp. 2d 976 (S.D. Tex. 2011) ................................................................. 9

*Flory v. United States,*
79 F.3d 24 (5th Cir. 1996) .................................................................................... 8

*Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.,*
No. H-07-637, 2007 WL 5186798 (S.D. Tex. Sept. 11, 2007) ........................ 10

*Garner v. Team,*
*sters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485 (1953) ................. 2

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947) ............................................................................................ 17

*Hill v. Keliher,*
No. 4:19-CV-02528, 2019 WL 3837113 (S.D. Tex. Aug. 14, 2019) ............... 13

*In re Munson,*
No. 03-5034., 2003 WL 21396874 (D.C. Cir. 2003) ......................................... 6

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) ........................................................................ 13, 14

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) ................................................................. 12, 17, 20

*Koehring Co. v. Hyde Const. Co.,*
324 F.2d 295 (5th Cir. 1963) ................................................................................ 8

*Lake City Stevedores, Inc. v. Steamship Lumber Queen,*
343 F. Supp. 933 (S.D. Tex. 1972) ..................................................................... 14

*Lebus for & on Behalf of NLRB v. Manning, Maxwell & Moore, Inc.*,
218 F. Supp. 702 (W.D. La. 1963) ........................................................... 3
*Lentz v. Eli Lilly & Co.*,
464 F. Supp. 2d 35 (D.D.C. 2006) ........................................................... 13
*Mesa Power Grp., LLC v. Gov't of*,
*Can.*, 255 F. Supp. 3d 175 (D.D.C. 2017) ................................................ 10
*Mill Creek Press, Inc. v. Thomas Kinkade Co.*,
No. 3:04-CV-1213-G, 2004 WL 2607987 (N.D.Tex. Nov. 16, 2004) .......... 11
*Mission Ins. Co. v. Puritan Fashions Corp.*,
706 F.2d 599.............................................................................................. 10
*Myers v. Bethlehem Shipbuilding Corp.*,
303 U.S. 41 (1938)...................................................................................... 2
*Nat'l Ass'n of Life Underwriters v. Clarke*,
761 F. Supp. 1285 (W.D. Tex. 1991).......................................................... 6
*NLRB v. Washington Aluminum Co.*,
370 U.S. 9 (1962)........................................................................................ 1
*909 Corp. v. Vill. of Bolingbrook Police Pension Fund*,
741 F. Supp. 1290 (S.D. Tex. 1990)....................................................... 11, 12
*Norwood v. Kirkpatrick*,
349 U.S. 29(1955)...................................................................................... 13
*Onyeneho v. Allstate Ins. Co.*,
466 F. Supp. 2d 1 (D.D.C. 2006) .......................................................... 19, 20
*Overstreet v. El Paso Disposal, L.P.*,
668 F. Supp. 2d 988 (W.D. Tex. 2009)...................................................... 3
*Pac. Mar. Ass'n v. NLRB*,
905 F. Supp. 2d 55 (D.D.C. 2012) ........................................................ 9, 17
*Paragon Indus., L.P. v. Denver Glass Mach., Inc.*,
No. CIV.A. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008)....... 10, 11, 13
*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
626 F.3d 973 (7th Cir. 2010)...................................................................... 15
*Reuben H. Donnelley Corp. v. F.T.C.*,
580 F.2d 264 (7th Cir. 1978)...................................................................... 6
*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
882 F.3d 96 (5th Cir. 2018)....................................................................... 9
*Schmid Labs., Inc. v. Hartford Accident & Indem. Co.*,
654 F. Supp. 734 (D.D.C. 1986) ........................................................... 15, 19
*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007)................................................................................... 9
*Starnes v. McGuire*,
512 F.2d 918 (D.C. Cir. 1974) ................................................................... 19
*Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.*,
196 F. Supp. 2d 21 (D.D.C. 2002) ............................................................ 13
*Trout Unlimited v. U.S. Dep't of Agric.*,
944 F. Supp. 13 (D.D.C. 1996) .................................................................. 17
*Turner & Newall, PLC v. Canadian Universal Ins. Co.*,
652 F. Supp. 1308 (D.D.C. 1987) .......................................................... 14, 19

iii

## Statutes

28 U.S.C. § 1292(a)(1) ............................................................................................. 10
28 U.S.C. § 1391(e) ............................................................................................... 3, 6
28 U.S.C. § 1391(e)(1) ................................................................................................. 6
28 U.S.C. § 1391(e)(1)(B) ......................................................................................... 15
28 U.S.C. § 1391(e)(1)(C) ......................................................................................... 15
28 U.S.C. § 1404(a) ........................................................................................... passim
28 U.S.C. § 1406(a) ........................................................................................... passim
29 U.S.C. § 151-169 ................................................................................................... 1
29 U.S.C. § 153(a) ...................................................................................................... 2
29 U.S.C. § 155 ...................................................................................................... 4, 6
29 U.S.C. § 157 ........................................................................................................... 2
29 U.S.C. § 158 ........................................................................................................... 1
29 U.S.C. § 160(e), (f) ............................................................................................... 2
29 U.S.C. § 160(j) ....................................................................................................... 3

## Rules

Fed. R. Civ. 12 ........................................................................................................... 9
Fed. R. Civ. P. 45(c) ................................................................................................. 16

## Regulations

29 C.F.R. § 101.37 ..................................................................................................... 3
29 C.F.R. § 102.15 ..................................................................................................... 2
29 C.F.R. § 102.35, 102.45 ........................................................................................ 2
29 C.F.R. § 102.46-47 ................................................................................................ 2

## Other Authorities

14D Fed. Prac. & Proc. Juris. § 3815 (4th ed.) ........................................................ 6
15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.) ........................................................ 10
*Transfer & Choice of Federal Law: The Appellate Model*,
    93 MICH. LAW REV. 703 (1995) ............................................................................ 9

iv

## INTRODUCTION AND MOTION

Plaintiff Space Exploration Technologies Corp. ("SpaceX") initiated this action in this Court even though nearly all the operative events giving rise to the case occurred in and around Hawthorne, California, where SpaceX is headquartered. Employees whose statutory rights and remedies will be affected were employed there, and the relief sought would be directed to agency proceedings in California. This case has virtually zero nexus to this venue and represents an apparent effort to preempt anticipated litigation and forum-shop various legal theories to a venue SpaceX perceives as more favorable. Defendants respectfully move the Court to transfer this action in the interests of justice to the Central District of California pursuant to 28 U.S.C. § 1406(a) or, alternatively, 28 U.S.C. § 1404(a). Counsel for Defendants has conferred with the counsel for SpaceX and cannot agree about the disposition of this motion.

## THE STATUTORY DESIGN OF THE NLRA

The National Labor Relations Board ("NLRB" or "Agency") is an independent federal agency created by Congress in 1935 to administer the National Labor Relations Act ("NLRA" or "Act").[1] The Act's core substantive guarantee is contained in Section 7, which protects most private-sector employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection" as well as the right to refrain from "any or all" of these activities.[2] The Act protects these rights whether or not employees are unionized or are seeking or opposing union representation.[3]

---

[1] 29 U.S.C. § 151-169

[2] *Id*. § 157.

[3] *See, e.g.*, *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14-15 (1962) (walkout by "wholly unorganized" workers over cold conditions protected by Section 7).

1

To enforce Section 7 rights, the NLRA prohibits certain employer and union activity as "unfair labor practices" (or "ULPs") under Section 8 of the Act.[4] Section 10 of the Act makes the five-seat Board of the Agency (the "Board") the exclusive public body responsible for adjudicating ULPs, subject to enforcement or review in a court of appeals.[5] ULP proceedings commence upon the filing of a charge by any person.[6] Under Section 3(d) of the Act, the NLRB General Counsel has "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of [administrative] complaints . . . , and in respect of the prosecution of such complaints before the Board."[7] On behalf of the General Counsel, the Regional Director for the office where a charge is filed conducts an investigation with the assistance of staff.[8] If the Regional Director determines that a charge has merit, an administrative complaint issues and an adversarial hearing is held before an administrative law judge ("ALJ"), who thereafter issues a decision and recommended order.[9] That decision is then appealable to the Board in Washington, D.C., which acts as an adjudicatory body.[10] The Board's decision and order constitutes the final agency determination.[11] It is only that "final order of the Board" that is reviewable in an appropriate federal court of appeals pursuant to Section 10(e) and (f) of the NLRA.[12]

District courts generally lack jurisdiction to review or supervise the conduct of NLRB

---

[4] 29 U.S.C. § 158.

[5] *Id.* § 160 (a), (c), (e).

[6] *Id.* § 160(b).

[7] *Id.* § 153(d).

[8] *Id.*; 29 C.F.R. § 102.15.

[9] 29 C.F.R. § 102.35, 102.45.

[10] 29 U.S.C. § 153(a).

[11] *Id.* § 160(c); 29 C.F.R. § 102.46-47.

[12] 29 U.S.C. § 160(e), (f); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938); *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

proceedings or the General Counsel's prosecutorial decisions.[13] When the Agency's usual processes may be rendered ineffective due to the passage of time, the Board may authorize an action in district court for temporary injunctive relief pursuant to Section 10(j) of the Act, which expires when the Board issues its final order in the underlying case.[14] The Agency's longstanding practice is to seek such relief where the ULPs are alleged to have been committed.[15]

## ISSUES IN DISPUTE

Is venue improper under 28 U.S.C. § 1391(e), and if so, does the interest of justice favor transfer rather than dismissal under 28 U.S.C. § 1406(a)? Should the Court exercise its discretion to transfer this case to the Central District of California under 28 U.S.C. § 1404(a)?

## FACTUAL BACKGROUND

This case stems from eight ULP charges, all filed on November 16, 2022 by or on behalf of individual discharged employees who reported to or were supervised by managers at the SpaceX facility located at 1 Rocket Road, Hawthorne, Los Angeles County, California (the "Hawthorne Facility").[16] SpaceX maintains its principal place of business at the Hawthorne Facility.[17] NLRB Board members and its General Counsel maintain offices and conduct their

---

[13] *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966).

[14] *See* 29 C.F.R. § 101.37; 29 U.S.C. § 160(j); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975).

[15] *See, e.g., Lebus for & on Behalf of NLRB v. Manning, Maxwell & Moore, Inc.,* 218 F. Supp. 702, 703 (W.D. La. 1963); *Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 991 (W.D. Tex. 2009).

[16] Doc. 18, Declaration of Laurie Burgess ("Burgess Decl.") ¶¶4, 12 (seven of eight discharged employees lived in California and worked at the Hawthorne Facility, the eighth resided in Washington but was managed from Hawthorne, and none "have any relationship with the State of Texas"); ULP Compl ¶¶1, 2, 5.

[17] *Mission: SpaceX Facilities*, SpaceX, https://www.spacex.com/mission/ (last visited Jan 10, 2024). SpaceX is a Delaware corporation with operations in California, Florida, Texas, Washington State, and Washington, D.C. Compl. ¶35. *See also* ULP Compl. ¶¶1, 5. In filings

official duties in Washington, D.C.[18] The Agency's Division of Judges, which oversees its ALJs, has three offices: Washington, D.C., San Francisco, and New York City.[19] On December 19, 2024, Region 31 of the NLRB, whose offices are located in Los Angeles, advised SpaceX that the Agency was considering Section 10(j) injunction proceedings, which would be filed in the Central District of California.[20] Following an investigation of the ULP charges, Region 31 found merit to them, and issued an administrative complaint ("ULP Complaint") on January 3, 2024.[21]

The ULP Complaint alleges unlawful conduct by SpaceX supervisors and agents taking place nearly entirely at the Hawthorne Facility.[22] Most significantly, the ULP Complaint alleges that eight individuals were unlawfully fired in response to their NLRA-protected conduct in organizing an Open Letter related to working conditions.[23] The ULP Complaint also alleges a series of unlawful interrogations regarding the Open Letter taking place primarily at the Hawthorne Facility.[24] It further alleges that SpaceX supervisors and agents at the Hawthorne

---

with the Securities and Exchange Commission, SpaceX has represented that the Hawthorne Facility is its principal place of business. *See, e.g.*, Notice of Exempt Offering of Securities, https://www.sec.gov/Archives/edgar/data/1181412/000118141222000003/xslFormDX01/primary_doc.xml (Aug. 5, 2022).

[18] 29 U.S.C. § 155; Compl. ¶36.

[19] *Division of Judges Directory*, National Labor Relations Board, https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory#DC (last visited Jan. 8, 2024).

[20] Compl. ¶128. While venue for a section 10(j) petition is technically proper in a number of locations, the NLRB's consistent practice for many years has been to file such petitions in the district where the facts alleged as ULPs took place.

[21] Compl. ¶¶24, 47-50, 128; ULP Compl. at p. 1, 11. The ULP Complaint is filed herewith as sealed Exhibit A. Proposed Intervenors have represented they now intend to move for an order protecting identities of individuals who fear harassment. *See* Burgess Decl. ¶7; Doc. 17, at p.1, n.1. Defendants intend to move to seal, providing proposed redactions, as soon as practicable.

[22] Certain conduct affecting one employee was alleged to have been committed in Redmond, Washington. *See* ULP Compl. ¶¶21-23.

[23] ULP Compl. ¶5.

[24] ULP Compl. ¶¶6, 9, 19, 24, and 26.

4

Facility disparaged employees, created the impression of surveillance, and illegally instructed employees not to discuss their investigatory interviews with anyone.[25]

The ULP Complaint included a notice setting a date for hearing on March 5, 2024, in Los Angeles.[26] Copies of it were sent to counsel for the charging parties, based in California, as well as counsel for SpaceX in Hawthorne, California; Los Angeles, California; and elsewhere, but the ULP Complaint itself contains no reference to Texas.[27]

SpaceX's own complaint alleges that "a substantial part of the events or omissions giving rise to the claim occurred in Boca Chica, Texas, where SpaceX maintains its Starbase rocket development and launch facility."[28] Beyond this statement, general references to its Texas operations, and potential NLRA remedies that might be applied companywide, SpaceX pleads no facts establishing a nexus between the conduct complained of and this venue.[29] And the complaint's fact section never once mentions Texas.[30]

## ARGUMENT

**I.     This Case may not be heard in this venue and should be transferred in the interest of justice.**

SpaceX filed a Complaint for Declaratory and Injunctive Relief in this Court, even though nearly all relevant events have occurred in and around Hawthorne, California. No parties

---

[25] ULP Compl. ¶¶8 (disparage), 12 (disparage), 20 (instruction not to discuss interview with anyone), 25 (impression of surveillance), 27 (impression of surveillance), 28 (instruction not to discuss interview).

[26] Compl. ¶¶46-50

[27] A notice attached to Region 31's complaint is addressed to employees' counsel and employer's counsel, one of whom has an address in Houston, Texas. ULP Compl. at p. 12.

[28] Compl. ¶34.

[29] Compl. ¶34.

[30] Compl. ¶¶43-50.

reside here. This case has virtually no connection to Texas, much less a "substantial" one. Transfer to the clearly appropriate venue under 28 U.S.C. § 1406(a) is both just and efficient.

> ### A. Venue here is improper because no party resides in this district and there is no substantial connection between the conduct in the complaint and this venue.

SpaceX's foundation for laying venue here is less than paper thin. 28 U.S.C. § 1391(e) governs venue for civil actions against federal agencies and officers. Venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides."[31] A corporate plaintiff resides "only in the judicial district in which it maintains its principal place of business."[32] A federal agency resides where its principal office is located.[33] The presence of an agency regional office within a judicial district does not make the agency a resident of the district for venue purposes.[34] And officers sued in their official capacities reside where "official duties are performed."[35]

Here, SpaceX is a resident of California where its headquarters and principal place of business is located. And all named Defendants reside in Washington D.C., where the Agency is headquartered and its Board members and General Counsel maintain their offices and discharge their duties.[36] As another judge of this Court ruled, district courts "should not accept venue if the

---

[31] 28 U.S.C. § 1391(e)(1).

[32] *Id.* § 1391(c)(2)

[33] *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 266 n.3 (7th Cir. 1978); *In re Munson*, No. 03-5034., 2003 WL 21396874 (D.C. Cir. 2003).

[34] *Reuben H. Donnelley Corp.,* 580 F.2d at 267.

[35] Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3815 (4th ed.); *see Nat'l Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) (cause of action arose "in Washington, D.C., where the Office of the Comptroller of the Currency made the . . . decision").

[36] 29 U.S.C. § 155. SpaceX also names as a "John Doe" defendant the ALJ who will be assigned by the Division of Judges to hear and decide the ULP Complaint in the first instance. That judge's home office is located in San Francisco, New York City, or Washington, D.C.

activities that transpired in the forum district were insubstantial in relation to the totality of events giving rise to Plaintiff[s'] claims."[37] "Insubstantial" would be a generous characterization here. In asserting that venue is proper, SpaceX points to its Starbase facility in Boca Chica, Texas, as one whose growth is increasingly important to SpaceX.[38] But SpaceX's complaint says nothing about how this facility, or any other Texas operation, relates to the conduct giving rise to its claims.[39]

SpaceX alleges that: (1) an Open Letter was "broadly distributed to employees at all SpaceX facilities across the country," including an unspecified number of employees based in Texas, (2) the Region's complaint seeks certain remedies that would affect all SpaceX facilities, and (3) the Region's complaint includes allegations that, from an unspecified location, SpaceX's president emailed all employees companywide.[40] Notably, no actual conduct by any of the defendants is alleged to have occurred in Texas. And "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough" to lay venue.[41]

### B. *The interest of justice favors transfer rather than dismissal.*

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

---

[37] *Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996).

[38] Compl. ¶34.

[39] Importantly, the claims giving rise to SpaceX's suit are essentially administrative procedures rightfully taking place outside of Texas. They are the filing and investigation of charges with and by Region 31 (in California), the issuance of the ULP Complaint and scheduling of a hearing (also in California), an anticipated recommendation to the Board regarding Section 10(j) (from California to Washington, D.C.), and the Board's consideration of any future exceptions or special appeals (in Washington, D.C.). Compl. ¶¶47-50, 111, 128; ULP Compl. at pp. 1-2, 10-11.

[40] Compl. ¶34.

[41] *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3rd Cir. 1994).

7

such case to any district or division in which it could have been brought."[42] As discussed above, this Court is the wrong venue for this case. While a court may dismiss a case under Section 1406(a), the Fifth Circuit has recognized that "the interest of justice" may require a transfer in order to avoid "time-consuming and justice-defeating technicalities."[43] While dismissal would not deprive SpaceX of the opportunity to refile its action in an appropriate venue, SpaceX is seeking preliminary relief.[44] Efficiency and economy are best served by an immediate transfer expediting this case towards consideration rather than requiring the burden and expense of refiling the case in another court and requiring defendants to be again served with process.[45] And as discussed below, there is one venue that is clearly appropriate given the anticipatory nature of SpaceX's claims—the Central District of California. Dismissal would thus serve no purpose and the case should be transferred.

## II. This case should be immediately transferred; even if venue were not improper here, the interest of justice and convenience of parties and witnesses support transfer to the Central District of California under 28 U.S.C. § 1404(a).

The Agency urges the Court to decide the transfer question before addressing other issues. Even assuming arguendo venue was permissibly laid here, 28 U.S.C. § 1404(a) permits the Court to transfer this case in the interest of justice. And here, not only is such a transfer in the interest of justice because of SpaceX's forum-shopping, the relevant factors the Fifth Circuit has identified in a Section 1404(a) analysis also favor transfer.

---

[42] 28 U.S.C. § 1406(a).

[43] *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297 (5th Cir. 1963).

[44] Compl. at p. 24 (Prayer for Relief ¶¶ 2-4).

[45] Service on government defendants is mandatory. *See, e.g., Flory v. United States*, 79 F.3d 24, 26 (5th Cir. 1996).

### A. This Court should transfer the case before deciding anything else.

SpaceX will soon file a motion for preliminary injunctive relief. And the Board will, at the appropriate time, file a motion seeking dismissal of this case under Federal Rule of Civil Procedure 12. But this Court should transfer this case before reaching these other matters. Courts possess discretion to determine the appropriate venue as a threshold issue, without needing to first assess jurisdiction or the underlying merits of the matter.[46] The Fifth Circuit has agreed that courts have "considerable leeway to choose among threshold grounds for denying audience to a case on the merits."[47] Consistent with this principle, courts have granted motions to transfer, including at the Board's request, prior to determining other threshold or merits issues.[48] These decisions effectuate the commonsense notion that sometimes "[a]djudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists."[49]

Deciding the venue issue prior to determining the jurisdictional and merits arguments also avoids potential procedural complications. For example, if this Court were to address the merits of a motion by SpaceX for a preliminary injunction before resolving the Board's transfer

---

[46] *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

[47] *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (cleaned up).

[48] *See, e.g., Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011); *Care One, LLC v. NLRB*, No. 2:23-cv-03221, 2023 WL 4156859, at *6 (D.N.J. June 23, 2023); *Lab. Corp. of Am. Holdings v. NLRB,* 942 F. Supp. 2d 1 (D.D.C. 2013); *Pac. Mar. Ass'n v. NLRB,* 905 F. Supp. 2d 55, 58–59 (D.D.C. 2012) (transferring to the District of Oregon), and cases cited therein.

[49] *Aftab v. Gonzalez,* 597 F. Supp. 2d 76, 79 (D.D.C. 2009); *see also* Robert A. Ragazzo, *Transfer & Choice of Federal Law: The Appellate Model,* 93 MICH. LAW REV. 703, 746 n.265 (1995) (citing 1B JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 0.404[4.-2] (2d ed. 1994)) ("Because a permanent transfer has the effect of changing the federal law applicable to the case, district courts should make transfer decisions as early in the proceedings as practicable.") As explained below, deciding the motion to transfer first is even more appropriate here given the SpaceX's attempt to forum shop and thereby derive an anticipated benefit from "the federal law applicable to this case." *Ragazzo*, *supra*, at 746 n.265.

motion, any order granting or denying that request would be appealable to the Fifth Circuit.[50]

However, if the case were then later transferred to California, any final orders or interlocutory

appeals would be heard by the Ninth Circuit—creating the potential for conflicting orders and

complicating the litigation in this case. Additionally, reaching the merits of such disputes prior to

transferring to the appropriate venue would likely engender ancillary disputes concerning the

impact of the transferor court's antecedent rulings on future proceedings.[51] Preventing these

potential outcomes serves as further reason to decide the venue question as an initial matter prior

to reaching the other issues presented in this case.

### B.  *SpaceX's choice of venue should be accorded little or no weight because it has filed an anticipatory suit to engage in forum-shopping.*

As the Fifth Circuit and various Texas courts, including this Court, have long recognized,

a plaintiff's choice of venue should be accorded little to no weight "when a party files a

declaratory judgment action, in anticipation of suit by its adversary."[52] "Anticipatory suits are

disfavored because they are an aspect of forum-shopping."[53] They "deprive a potential plaintiff

of his choice of forum, [and are] also one of the compelling circumstances courts cite when

declining to apply the first-filed rule."[54]

---

[50] *See* 28 U.S.C. § 1292(a)(1).

[51] A transfer "leaves in place whatever already has been done in the transferor court." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.); *see, e.g.*, *Mesa Power Grp., LLC v. Gov't of Can.*, 255 F. Supp. 3d 175, 181 (D.D.C. 2017) ("[I]f the transferor court already decided an issue (based on its own interpretation of the law) [then] the 'law of the case' governs that issue even in the transferee court.").

[52] *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir.1983); *Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., L.P.*, No. H-07-637, 2007 WL 5186798, *4 (S.D. Tex. Sept. 11, 2007).

[53] *Mission Ins. Co.,* 706 F.2d at 602 n.3.

[54] *Frank's Tong Service, Inc.*, No. H-07-637, 2007 WL 5186798, *4.

In determining whether a suit is anticipatory, courts examine the parties' "activities prior to filing of a suit."[55] This is because, "[t]he Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment" when it has notice that the other party intends to file suit in a different forum.[56] Moreover, "[w]hen a plaintiff files an anticipatory suit in order to avoid litigation by the defendant, the 'true plaintiff' is divested of his right to select the proper forum. Allowing [the anticipating party] to choose the forum subverts the real plaintiff's advantage in choosing the forum" and creates "disincentives to responsible litigation by rewarding the winner of a race to the courthouse."[57]

Here, SpaceX's suit is an "action for declaratory and injunctive relief."[58] And in addition to the administrative hearing scheduled to take place in Los Angeles, SpaceX's complaint asserts its belief that a district court action for relief under Section 10(j) of the NLRA "is imminent."[59] The practical effect of the relief sought by SpaceX would be to preclude the Board from seeking such a Section 10(j) injunction because the Board members who decide whether to authorize those proceedings would, in SpaceX's view, permanently lose their ability to decide the underlying ULP question.[60] And the seasoned NLRA practitioners representing SpaceX would be

---

[55] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4

[56] *909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990).

[57] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4 (discussing *Mill Creek Press, Inc. v. Thomas Kinkade Co.,* No. 3:04-CV-1213-G, 2004 WL 2607987, *7 (N.D.Tex. Nov. 16, 2004)).

[58] Compl. at p. 1.

[59] *See*, *e.g.*, Compl. ¶¶128-29; *see id.* at ¶¶1, 6, 50, 58-59, 61, 104, 137, p. 24 (Prayer for Relief ¶¶ 1-3); *see also* ULP Compl. at p.10. We note that at present, while the matter is being considered, neither the Board nor its General Counsel have made the determination to seek Section 10(j) relief.

[60] Compl. p. 24 (Prayer for Relief ¶¶ 1(d), 4)).

11

aware of the Agency's usual choice of venue in Section 10(j) cases—where the ULPs were alleged to have been committed. SpaceX's complaint is thus the quintessential example of an anticipatory suit designed to prevent the proper choice of venue by another party. And its repeated citations to the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022),[61] only highlight SpaceX's apparent attempt to forum-shop to obtain the advantage of that case's holdings.

Finally, SpaceX's preference for venue in Texas should be given little weight in light of how "insubstantial [its basis is] in relation to the totality of events giving rise to Plaintiff[s'] claims."[62] Indeed, SpaceX grounds its claim of venue in Texas on the existence of a purportedly fast-growing Starbase facility, the assertion that unidentified Texas employees "interacted with [an] Open Letter," and a fear that the Board may award remedies that could affect all SpaceX facilities.[63] More is needed than unsubstantiated claims and speculation. In contrast, the ULP Complaint that SpaceX seeks to avoid makes clear that the locus of disputed conduct took place and is taking place in California. That is where employees were allegedly interrogated and fired, where ULP charges were filed, where Region 31 investigated those charges, and where a hearing is scheduled to take place. And any Section 10(j) action would be filed in the Central District of California. Thus, SpaceX's anticipatory suit before this Court is a blatant example of forum-shopping that this Court "cannot allow."[64]

---

[61] *See, e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100 (citing *Jarkesy*, 34 F.4th 446).

[62] *Andrade*, 934 F. Supp. at 827 n.18; *see Cottman Transmission Sys.*, 36 F.3d at 294 ("[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough").

[63] Compl. ¶34.

[64] *909 Corp.*, 741 F. Supp. at 1292 (S.D. Tex. 1990).

### C. Legal standards for motions to transfer venue pursuant to Section 1404(a).

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[65] "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their [choice of venue] privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."[66] Ordinarily, the Fifth Circuit reads Section 1404(a) to impose a "good cause burden" on the party seeking transfer.[67] This burden "is less demanding" than what is needed to warrant a *forum non conveniens* dismissal and "reflects the appropriate deference to which the plaintiff's choice of venue is entitled."[68] But as discussed above, a plaintiff's choice of venue is not entitled to deference when the action involves forum shopping or anticipatory litigation aimed at divesting the "true plaintiff" of its right to select the proper forum.[69]

Ultimately, transfer is proper where (a) the movant has established that the action could have been brought in the proposed transferee district and (b) the balance of convenience and justice weighs in favor of transfer.[70] As part of the balancing analysis required under Section

---

[65] 28 U.S.C. § 1404(a).

[66] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32(1955)); *see also Hill v. Keliher*, No. 4:19-CV-02528, 2019 WL 3837113, at *3 (S.D. Tex. Aug. 14, 2019) (granting transfer motion).

[67] *In re Volkswagen*, 545 F.3d at 315.

[68] *Id.* at 314-15. Indeed, a "district court should grant the transfer" when the movant demonstrates that "the transferee venue is clearly more convenient." *Id.* at 315.

[69] *Paragon Indus.*, No. CIV.A. 3-07CV2183-M, 2008 WL 3890495, at *4.

[70] 28 U.S.C. § 1404(a); *In re Volkswagen*, 545 F.3d at 312, 315 (the "preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue," thereafter the court considers convenience and justice considerations); *see also Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002); *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006).

1404(a), the Fifth Circuit specifies a number of "private and public interest factors" to guide the Court's broad discretion.[71] "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[72] "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[73]

These factors are not necessarily exhaustive; nor can any one factor be said to be dispositive.[74] And in weighing whether the "interest of justice" favors transfer, courts consider whether the plaintiff has engaged in forum-shopping.[75] Because the transfer provisions are in part intended to prevent forum-shopping, it is against the interest of justice "to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific

---

[71] *In re Volkswagen*, 545 F.3d at 315; *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

[72] *In re Volkswagen*, 545 F.3d at 315 (cleaned up).

[73] *Id.* (cleaned up).

[74] *Id.*

[75] *See Lake City Stevedores, Inc. v. Steamship Lumber Queen*, 343 F. Supp. 933, 935 (S.D. Tex. 1972) ("Judicial discretion over every motion to transfer should prevent a plaintiff from forum shopping"); *Turner & Newall, PLC v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1312 (D.D.C. 1987) (explaining that Section 1404(a) is designed to "prevent forum shopping"); *see also In re Volkswagen*, 545 F.3d at 313 (warning that plaintiffs should not abuse privilege of filing claims in any judicial division appropriate under the general venue statute).

14

precedents."[76] Such forum-shopping "may count against a plaintiff's choice of forum" in the transfer analysis.[77]

### D. This Court should transfer the case to the Central District of California.

Good cause supports to transfer this matter to the Central District of California. The first requirement for a transfer is met here—that is, SpaceX could have brought this action in the Central District of California, where it resides under 28 U.S.C. § 1391(e)(1)(C). And under 28 U.S.C. § 1391(e)(1)(B), a substantial part of the operative events giving rise to this action occurred within the Central District of California. That venue is where Region 31's investigation was based, where an action for Section 10(j) relief would be filed, and where the hearing that SpaceX seeks to enjoin is scheduled to take place. The second requirement is also met here—balancing the private and public-interest factors, along with the interest of justice, make it clear that transfer is appropriate. Accordingly, as shown below, the Court should find that the Board has satisfied its good cause burden to show that the factors favor a transfer.

> 1. Private-interest factors weigh in favor of transfer to the Central District of California.

None of the Fifth Circuit's four private-interest factors point towards the Southern District of Texas being an appropriate forum. As to the first factor, proof as to claims will largely come down to witness testimony and electronic records. Because electronic records are easily transported, the relative ease of access to sources of proof primarily considers witness testimony. SpaceX has requested injunctive relief, and evidence regarding balance-of-hardship and the public interest includes effects an injunction would have on SpaceX's Hawthorne workforce,

---

[76] *Schmid Labs., Inc. v. Hartford Accident & Indem. Co.,* 654 F. Supp. 734, 737 (D.D.C. 1986).

[77] *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 n.2 (7th Cir. 2010).

potentially necessitating testimony from California-based witnesses. Here, the ULP complaint alleges that several SpaceX supervisors and agents were involved in ULPs at SpaceX's Hawthorne Facility.[78] None of the eight terminated employees who filed charges initiating the proceedings SpaceX seeks to enjoin "have any relationship with the State of Texas"—rather, all of these potential non-party witnesses were managed from California, with seven of the eight having "lived in California and worked at SpaceX's headquarters in Hawthorne, California, during the entire course of their employment."[79] In contrast, SpaceX's complaint does not allege that any of the individuals at issue in the Region's complaint took any action in Texas.[80] Nor does it identify any Texas-based witnesses. Thus, the first private interest factor strongly points to venue in the Central District of California.

As to the second and third private interest factors, there is little reason to believe that the availability of compulsory process or the cost of attendance of witnesses supports venue in the Southern District of Texas. The operative facts primarily arose out of SpaceX's Hawthorne Facility and Region 31's investigation and prosecution in California. Indeed, this is where SpaceX is headquartered and where witnesses are most likely to be found. The terminated employees in question are (at present) non-party witnesses who are not subject to compulsory process in the Southern District of Texas, unlike the several potential SpaceX witnesses who reside and work in California and who would be subject to compulsory process in the Central District of California.[81] Moreover, SpaceX is represented by counsel in this suit with an office in

[78] ULP Compl. ¶¶6, 8-10, 12-13, 19-20, 24-28. See also Doc. 18-1 at p. 12.

[79] Burgess Decl. ¶4, 12.

[80] SpaceX's complaint states that an unspecified, allegedly "significant," number of Texas-based SpaceX employees were among the many employees who "interacted with an Open Letter," which it admits "was broadly distributed to all SpaceX facilities across the country." Compl. ¶34.

[81] Fed. R. Civ. P. 45(c); Doc. 18-1 at p. 12, 13.

Los Angeles. So it is not clear why it would not be more convenient for SpaceX to litigate this case in Texas but for its apparent interest in the Fifth Circuit's recent decision in *Jarkesy*, 34 F.4th 446,[82] or other forum shopping considerations that Section 1404(a) is designed to hem-in.

As for other practical problems, this final private interest factor points in the direction of venue in the Central District of California. Not only will counsel for the Board and proposed intervenors have to appear *pro hac vice* here and retain local counsel, but so will SpaceX's attorneys.[83] In sum, the balance of private interest factors weighs in favor of transfer to the Central District of California. That is where the operative events arose, where witnesses are more likely to be found, where Region 31 is located, where the Region conducted its investigation, and where the administrative hearing that SpaceX now seeks to enjoin is scheduled to take place.

> 2. Public-interest factors weigh strongly in favor of transfer to the Central District of California.

Of the four public interest factors, the second—the local interest in deciding localized interests decided at home—weighs most heavily in favor of transfer here. There is a compelling interest in having local disputes and all related issues "resolved in the locale where they arise."[84] Courts have moreover recognized a "strong local interest" in having labor controversies decided by the court "where the affected employees are located."[85]

---

[82] *See, e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100.

[83] *See* Compl. at p. 25 (three of the four attorneys for SpaceX have stated that appearance by *pro hac vice* is forthcoming)

[84] *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) ; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home.").

[85] *Lab Corp. of Am. Holdings.*, 942 F. Supp. 2d at 4; *see also Pac. Mar. Ass'n*, 905 F. Supp. at 61 (transferring case to Oregon, the "true locus of this dispute," based in part on location of work, conduct at issue, and Board's administrative processes).

17

Here, the Hawthorne Facility was the site of almost all of the alleged ULPs by SpaceX managers or agents.[86] And while one discharged employee was interrogated while working from a Washington State facility, the remaining seven discharged employees were all based out of the Hawthorne Facility; all eight employees reported to management there.[87] "None of them have worked [in Texas], none of the protected activity that they engaged in occurred there, [and] their terminations did not occur there."[88] Moreover, the Region 31 Office that investigated and is prosecuting the ULP Complaint is based in Los Angeles, which is also where a hearing on the merits of the ULP Complaint is scheduled to occur.[89] And as discussed above, any potential Section 10(j) injunction action against SpaceX arising from the ULP Complaint would be brought there. This Court should find that transfer is supported by a profound local interest in having this matter, arising out of a California labor dispute, resolved in the that venue.

Relative docket congestion, related to the first public interest factor, also favors transfer here. While "congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered" by district courts in the

---

[86] ULP Compl. ¶¶4, 6, 8-10, 12-13, 19-20, 24-28 (identifying Brian Bjelde as having an office at the Hawthorne facility, identifying Lindsay Chapman, John Edwards, and Jessica Jensen as taking action at the Hawthorne facility); *see also* ULP Compl. ¶¶4, 7, 10-11, 14-18 (identifying Sandy Simmons as engaging with employees "outside of the Hawthorne facility," and identifying Michael Saqr and Gwynne Shotwell as taking action from an unspecified location); Doc. 19, Declaration of Tom Moline ("Moline Decl.") ¶12 (stating SpaceX President Gwynne Shotwell was based in Hawthorne around the time of his termination); Doc. 18-1 at p. 12 (alleging that Bjelde and Chapman, as well as another potential party witness, are located in California).

[87] Burgess Decl. ¶4.

[88] Burgess Decl. ¶12.

[89] *See Alpha Servs., LLC v. Looman*, No. CV 23-2988, 2023 WL 6795545, at *7 (E.D. La. Oct. 13, 2023) (denying transfer because "the administrative proceedings that Plaintiffs seek to enjoin are ongoing in this District.").

motion-to-transfer analysis.[90] The latest statistics reporting median case-processing times and pending cases per judgeship show median disposition times are significantly shorter, and fewer cases are pending per judge, in the Central District of California.[91]

The final two public-interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law—have little bearing here. This action primarily involves a claim of unconstitutional agency action grounded in federal law and the Constitution. The District Court for the Central District of California is not a disadvantage to this Court in resolving such claims.

Finally, Section 1404(a)'s "the interest of justice" factor weighs in favor of transfer, in light of SpaceX's forum-shopping in this Court.[92] This Court should not condone SpaceX's deliberate selection of this forum to obtain a perceived benefit from the application of certain

---

[90] *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974) (en banc).

[91] *See* Table C-5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September, 30, 2023, https://www.uscourts.gov/statistics/table/c-5/judicial-business/2023/09/30 (Sep. 30, 2023) (noting that median disposition time in civil cases for the Central District of California is 4.4 months compared to 7.9 months in the Southern District of Texas); U.S. District Courts—National Judicial Caseload Profile, 36, 68, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1 (Sep. 30, 2023) (showing that the Central District of California has 489 pending cases per judgeship versus 768 for the Southern District of Texas).

[92] *See Onyeneho v. Allstate Ins. Co.,* 466 F. Supp. 2d 1, 5 (D.D.C. 2006) ("To the extent that plaintiffs are engaging in forum shopping, it weighs in favor of transfer to a more appropriate forum."); *Turner & Newall,* 652 F. Supp. at 1312 (considering whether "transfer is warranted in the interest of justice because [plaintiff] engaged in forum shopping" by filing in this Court "simply to benefit from [the D.C.] Circuit's ruling" in another case); *accord Schmid Labs.,* 654 F. Supp. at 736.

19

precedents,[93] while avoiding a forum with perhaps less favorable precedent but much stronger connections to the underlying dispute.[94]

## CONCLUSION

Because venue here is improper and there is one clearly proper venue in which this case should be presented, the interest of justice and other relevant factors support immediately transferring this case to the Central District of California.

Respectfully submitted,

ALAMDAR S. HAMDANI
*United States Attorney*
*Southern District of Texas*

Daniel David Hu
*Chief, Civil Division*

By: *s/ Benjamin S. Lyles*
BENJAMIN S. LYLES
*Assistant United States Attorney*
S.D. Tex. ID No. 3062156
State Bar No. 24094808
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Benjamin.Lyles@usdoj.gov
*Attorney-in-Charge for Defendants*

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance and*
 *Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

DANIEL BRASIL BECKER
*Trial Attorney*

GRACE L. PEZZELLA
*Trial Attorney*

*s/ David Boehm*
DAVID P. BOEHM
*Trial Attorney*
D.C. Bar No. 1033755 – *pro hac vice*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-4202
Email: David.boehm@nlrb.gov

Dated this 11th day of January, 2023.

---

[93] *See*, *e.g.*, Compl. ¶¶ 4-6, 15, 22, 54-55, 85-86, 100 (citing *Jarkesy*, 34 F.4th 446).

[94] *See Lab. Corp. of Am. Holdings*, 942 F. Supp. 2d at 5 (citing the plaintiff's "forum shopping" as a reason to transfer a lawsuit seeking to enjoin an NLRB representation case); *see also Onyeneho*, 466 F. Supp. 2d at 5 (granting transfer where court was "indeed concerned about the possibility of forum shopping here" based on the argument "that plaintiffs have chosen this forum simply to avoid disadvantageous precedent in the Fourth Circuit").