**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | |
| **Plaintiff,** | Civil Action No. 1:24-cv-00001 |
| **v.** | |
| **NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,** | |
| **Defendants.** | |

<u>**PLAINTIFF SPACEX'S RESPONSE IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C § 1406(a) AND § 1404(a)**</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF ISSUES .................................................................................. 1

ARGUMENT ........................................................................................................ 2

     I.     Venue is proper in this District because the Charging Parties caused substantial disruption here, the NLRB alleges companywide unfair labor practices and seeks to impose remedies in this District through its agency proceeding, and the agency proceeding is making demands of SpaceX personnel in this District. .................................................................. 2

     II.    Defendants fail to meet their burden to show the Central District of California is a clearly more convenient venue. ......................................... 9

          A.    Private Interest Factors ........................................................... 11

               1.    The relative ease of access to sources of proof. ........................... 11

               2.    The availability of compulsory process to secure the attendance of witnesses. ................................................ 11

               3.    The cost of attendance for willing witnesses. ............................. 12

               4.    All other practical problems that make trial of a case easy, expeditious and inexpensive. ......................................... 13

          B.    Public Interest Factors ........................................................... 14

               1.    The administrative difficulties flowing from court congestion. ...................................................... 14

               2.    The local interest in having localized interests decided at home. ........................................................ 15

               3.    The familiarity of the forum with the law that will govern the case. .......................................................... 16

               4.    The avoidance of unnecessary problems of conflict of laws or in the application of foreign law. .................................. 17

          C.    Defendants' forum-shopping accusations are meritless. ........................ 17

     III.    The Court should decide the preliminary injunction and transfer motions together. .................................................................. 19

CONCLUSION .................................................................................................... 20

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Am. Motorists Ins. Co. v. Cellstar Corp.*,
61 F. App'x 119 (5th Cir. 2003) ..............................................................2

*Andrade v. Chojnacki*,
934 F. Supp. 817 (S.D. Tex. 1996) ....................................................7, 8

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ..............................................................................19

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
No. 23-cv-206, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ...............3, 8, 11

*Cottman Transmission Sys., Inc. v. Martino*,
36 F.3d 291 (3d Cir. 1994)...................................................................7, 8

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ..............................................9, 11, 17, 19

*Def. Distributed v. Platkin*,
55 F.4th 486 (5th Cir. 2022) .........................................................19, 20

*FC Inv. Grp. LC v. Lichtenstein*,
441 F. Supp. 2d 3 (D.D.C. 2006) ..........................................................3

*Flores v. Blinken*,
No. 21-cv-66, 2021 WL 6037593 (S.D. Tex. Oct. 20, 2021) .............9, 10

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010)...............................................................................19

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)...............................................................................18

*Hawbecker v. Hall*,
88 F. Supp. 3d 723 (W.D. Tex. 2015).................................................2, 3

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) ...............................................................13

*Lab. Corp. of Am. Holdings v. NLRB*,
942 F. Supp. 2d 1 (D.D.C. 2013).........................................................16

*Long v. Grafton Executive Search, LLC*,
  263 F. Supp. 2d 1085 (N.D. Tex. 2003) ...................................................................6

*Maybelline Co. v. Noxell Corp.*,
  813 F.2d 901 (8th Cir. 1987) ...................................................................20

*McCuin v. Tex. Power & Light Co.*,
  714 F.2d 1255 (5th Cir. 1983) ...................................................................17, 18

*Mitrano v. Hawes*,
  377 F.3d 402 (4th Cir. 2004) ...................................................................3

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*,
  760 F.2d 312 (D.C. Cir. 1985) ...................................................................20

*Pac. Mar. Ass'n v. NLRB*,
  905 F. Supp. 2d 55 (D.D.C. 2012) ...................................................................16

*Paragon Indus., L.P. v. Denver Glass Mach., Inc.*,
  No. 07-cv-2183, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008) ...........................................18

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ...................................................................9, 11

*Polymer80, Inc. v. Garland*,
  No. 23-cv-29, 2023 WL 3605430 (N.D. Tex. Mar. 19, 2023) ...............................................20

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ...................................................................9, 13

*Ray v. Lynass*,
  No. 21-cv-20, 2021 WL 8443684 (W.D. Tex. Nov. 9, 2021) ...............................................3, 7

*Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.*,
  07-cv-643, 2007 WL 7238943 (S.D. Tex. 2007) ...........................................................2, 3, 7

*Sanders v. Seal Fleet, Inc.*,
  998 F. Supp. 729 (E.D. Tex. 1998) ...................................................................13

*SEC v. Jarkesy*,
  34 F.4th 446 (5th Cir. 2022) ...................................................................18

*Sherwin-Williams Co. v. Holmes Cnty.*,
  343 F.3d 383 (5th Cir. 2003) ...................................................................18

*Space Exploration Techs. Corp. v. Bell*,
  No. 1:23-cv-00137 (S.D. Tex. 2023) ...................................................................10, 15, 16, 17

*Texas v. Garland*,
No. 23-cv-34, 2023 WL 4851893 (N.D. Tex. July 28, 2023)................................11, 13, 15, 16

*Texas v. U.S. Dep't of Homeland Sec.*,
661 F. Supp. 3d 683 (S.D. Tex. 2023) ......................................................................13

*Texas v. United States*,
95 F. Supp. 3d 965 (N.D. Tex. 2015) ........................................................................6

*Uffner v. La Reunion Francaise, SA*,
244 F.3d 38 (1st Cir. 2001) ................................................................................3, 6

*Umphress v. Hall*,
479 F. Supp. 3d 344 (N.D. Tex. 2020) .....................................................................3

*Utah v. Walsh*,
No. 23-cv-16, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023)..........................12, 13, 16, 18

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ...............................................................................13

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..................................................................... *passim*

*VP, LLC v. Newmar Corp.*,
No. 11-cv-2813, 2012 WL 6201828 (E.D. La. Dec. 12, 2012) ............................2, 7

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
982 F. Supp. 2d 714 (W.D. Tex. 2013)...............................................................2, 7

**Statutes**

28 U.S.C. § 1391(b)(2) ......................................................................................2

28 U.S.C. § 1391(e)(1).................................................................................1, 2, 7, 8

28 U.S.C. § 1404(a) ............................................................................... *passim*

28 U.S.C. § 1406(a) ........................................................................................1

**Other Authorities**

Fed. R. Civ. P. 12(b)(3).....................................................................................20

## INTRODUCTION

This lawsuit arises from the efforts of two groups to disrupt SpaceX's operations nationwide.  As part of those efforts, officials at the National Labor Relations Board ("NLRB") and the employees and attorneys who filed NLRB charges against SpaceX (the "Charging Parties") have intentionally reached into the Southern District of Texas and every other judicial district where SpaceX maintains operations.  The NLRB seeks to regulate the company's communications to all SpaceX employees at all SpaceX locations and impose administrative remedies at all SpaceX locations, including Starbase within this judicial Division.  And the NLRB's unconstitutional administrative proceeding is making demands of SpaceX personnel throughout the company—again including Starbase.  The administrative proceeding, in turn, was prompted by the Charging Parties' wide dissemination of an Open Letter through multiple company channels of communication, including to employees at Starbase and SpaceX's Houston facility, by their attempt to solicit support from employees at those Texas facilities (and others), and by their resulting disruption of operations at those Texas facilities (and others).

Despite the far-reaching aims of both the NLRB officials and the Charging Parties, Defendants now pretend that this case arises from a local controversy confined to the Central District of California.  This portrayal of the parties' disputes is patently false.  Venue is clearly proper in this District pursuant to 28 U.S.C. § 1391(e)(1).  And Defendants cannot carry their burden to show good cause to override SpaceX's venue choice; there is no reason why adjudicating this constitutional litigation would be more convenient—and certainly not clearly more convenient—in the Central District of California.  Defendants' motion to transfer should be denied.

## STATEMENT OF ISSUES

Have Defendants shown that this Court should exercise its discretion to find that venue is improper under 28 U.S.C. § 1391(e)(1) and transfer the case under 28 U.S.C. § 1406(a)?  Have

1

Defendants carried their burden to show that venue is clearly more convenient in the Central District of California, where none of the public and private interests factors support such a finding, justifying voluntary transfer under 28 U.S.C. § 1404(a)?

## ARGUMENT

I.    **Venue is proper in this District because the Charging Parties caused substantial disruption here, the NLRB alleges companywide unfair labor practices and seeks to impose remedies in this District through its agency proceeding, and the agency proceeding is making demands of SpaceX personnel in this District.**

This Court possesses considerable discretion in determining whether venue is proper under Section 1391.  *Am. Motorists Ins. Co. v. Cellstar Corp.*, 61 F. App'x 119, at *1 (5th Cir. 2003) (affirming district court's exercise of discretion in determining venue proper).  When a government agency or official is the defendant, a plaintiff can establish venue wherever "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e)(1)(B).[1]  It is well settled that venue under this test "may be proper in multiple locations."  *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 731 (W.D. Tex. 2015) (citing 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806 n.10 (4th ed.)).  The Court does not "determine the 'best' venue, but only whether or not its venue is proper."  *Safety Nat'l Cas. Corp. v. U.S. Dep't of Treas.*, 07-cv-643, 2007 WL 7238943, at *5 (S.D. Tex. 2007) (Ellison, J.); *accord VP, LLC v. Newmar Corp.*, No. 11-cv-2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012).  "'[T]he chosen venue does not have to be the place where the most relevant events took place,' but only where a 'substantial' part of the events or omissions giving rise to the claims occurred."  *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (citation omitted).

In determining what counts as "a substantial part of the events … giving rise to the claim," courts "look not to a single triggering event prompting the action, but to the entire sequence of

---

[1] This language is identical to the "transactional venue" standard in § 1391(b)(2).

events underlying the claim." *Safety Nat. Cas. Corp.*, 2007 WL 7238943, at *3 (citing *Uffner v. La Reunion Francaise, SA*, 244 F.3d 38 (1st Cir. 2001)); *accord FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). As a result, the transactional-venue test is met where the plaintiff is "present in the district or division in some real capacity and burdened" in that location. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-cv-206, 2023 WL 2975164, at *3 (N.D. Tex. Apr. 17, 2023); *see also, e.g.*, *Ray v. Lynass*, No. 21-cv-20, 2021 WL 8443684, at *6 (W.D. Tex. Nov. 9, 2021) ("Courts may now consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities."); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351-52 (N.D. Tex. 2020) (same); *Hawbecker*, 88 F. Supp. 3d at 731 ("[T]he Court may consider . . . the venue of where the harm was felt to determine the location of 'a substantial part of the events[.]'"). Here, several different occurrences in this District are among the substantial events giving rise to SpaceX's claims.

*First*, the disruption caused by the Open Letter at Starbase and the Houston facility are substantial events giving rise to SpaceX's claims. The NLRB complaint seeks to hold SpaceX in violation of federal law precisely because of SpaceX's response to this disruption. *See* Dkt. No. 1 (Complaint) ¶ 34. The Charging Parties reached into the Southern District of Texas—and every other district where SpaceX maintains a physical presence—by blanketing thousands of employees across the company with unsolicited emails and requests to sign letters and fill out unsponsored surveys during the workday. Declaration of Michael Cramer ("Cramer Decl.), ¶¶ 4, 6-7 (attached as Exhibit A); Declaration of Steven Schmitz ("Schmitz Decl."), ¶¶ 5, 7 (attached as Exhibit B); *see* Declaration of Gwynne Shotwell ("Shotwell Decl."), Ex. B (June 16, 2022 email) (attached as Exhibit C). Employees from across all of SpaceX's facilities, including Starbase, reported that the Open Letter decreased their workplace productivity and distracted and distressed them through the

Open Letter's attempt to create a heightened sense of urgency.  Schmitz Decl., ¶¶ 7-8, 11-12; *see* Shotwell Decl., Ex. A (June 15, 2022 email).  These actions made many employees feel uncomfortable, and they complained that the Open Letter interfered with their ability to focus on their work.  Schmitz Decl., ¶ 7-8, 12; *see* Shotwell Decl., Exs. A & B.

At Starbase and the Houston facility, at least 215 employees interacted electronically with the Open Letter that the Charging Parties directed towards employees at those facilities, for a total of 1,537 to 2,230 intentional interactions at Starbase and another 23 to 33 intentional interactions at the Houston facility.  Cramer Decl., ¶¶ 9, 11-12; *see* Declaration of Donald Leclerc (attached as Exhibit D).  The Open Letter was not viewed in passing by Starbase and Houston employees before returning to normal work tasks—most had multiple digital interactions and some upwards of more than 30 interactions.  Cramer Decl., ¶¶ 11-12.  These statistics significantly underestimate the disruption caused in this District as they only measure interactions on SpaceX's computer network, and do not include interactions with employees' personal devices (e.g., their phones).  *See id.*, ¶14.

At Starbase, for at least a week, the Open Letter's distribution derailed technical conversations, was the main topic of conversation, distracted large portions of employees from their work tasks, and required management personnel to spend substantial time away from their ordinary job duties to navigate the disruption.  Schmitz Decl. ¶¶ 7-10.  The Open Letter required multiple unscheduled meetings at Starbase to address both the Open Letter itself and the best way to refocus Starbase personnel on their tasks.  *Id.*, ¶ 9; Declaration of Kimberly Chacon ("Chacon Decl."), ¶¶ 5-8 (attached as Exhibit E).  For example, Ms. Shotwell, the President and COO, personally came to Starbase a week after the Open Letter's distribution to answer questions about the letter and address the disruption it caused.  Chacon Decl., ¶¶ 6-8.  Starbase is the home of the Starship development efforts, and this disruption came at a crucial time when Starbase personnel

were working to meet key targets.  Schmitz Decl., ¶¶ 4, 6; *see also* Dkt. No. 37-1, Gallman Decl., ¶¶ 7, 9-10.  Ms. Shotwell specifically emphasized in her June 16, 2022 email to all SpaceX employees that this disruption took place at a time when "we are on the cusp of the first orbital launch attempt of Starship."  Shotwell Decl., Ex. B; *see* Schmitz Decl., ¶ 4, 6, 10.

*Second*, the administrative complaint identifies this June 16 email from Ms. Shotwell, which it specifically alleges as having been sent "to ***all employees***," as one of the alleged unfair labor practices.  NLRB Compl., ¶ 11 (emphasis added).  In this way, the NLRB complaint specifically alleges that one of the matters to be resolved—in the very administrative proceeding that SpaceX is challenging—happened in this District when Ms. Shotwell sent the email to Starbase and Houston employees among others.  *Id.*; Schmitz Decl., ¶¶ 11-12.

*Third*, the remedies sought in the administrative complaint reveal that the NLRB views the alleged unfair labor practices as affecting all SpaceX facilities, which would include Starbase and Houston.  The complaint requests, among other remedies, that: SpaceX be ordered to "[p]ost" a corrective "notice … including electronically" on employee communication platforms; "[h]old … meetings scheduled to ensure the widest possible attendance," with Ms. Shotwell reading the notice; and "conduct a training on the National Labor Relations Act and unfair labor practices for ***all management officials and supervisors employed by Respondent***."  NLRB Compl., at 8-9 (emphasis added).  By their terms, these remedies expressly involve employees, management, and supervisory personnel based in this District.  Gallman Decl., ¶¶ 10-11 (identifying personnel and senior leadership located at Starbase and other Texas facilities); *id.*, ¶ 23.  Notably, Defendants' transfer motion does not dispute that the administrative complaint pursues remedies not just for SpaceX's Hawthorne location, but for all SpaceX locations.  Mot. to Transfer 5, 7, 12.

*Fourth*, the unconstitutional NLRB proceeding is inflicting irreparable injury on SpaceX

in this District by making demands of personnel across many facilities, including Starbase, to assist

in preparing for and in some cases testifying at the hearing.  Gallman Decl., ¶ 14 (he was among

personnel involved in Open Letter events); *id.*, ¶¶ 14-17, 19-20; Declaration of Matthew Harper

("Harper Decl."), ¶¶ 12-14 (attached as Exhibit F).  The NLRB proceeding will also make demands

of senior leadership's time leading up to and during the administrative hearing, including of the

Texas-based President and COO, at a time SpaceX has two Starship test flights scheduled in Boca

Chica.  Gallman Decl., ¶¶ 7, 16, 19.  The injuries resulting until the unconstitutional administrative

hearing is enjoined are being felt, and will continue to be felt, at Starbase as well as other locations.

These events are more than enough to support venue.  The sending of the Open Letter to

Texas employees, the resulting disruption among Texas employees, and the sending of the

allegedly unlawful June 16 email from Texas to Texas employees (among others) are all

substantial parts of the events giving rise to this litigation because they were a substantial part of

what prompted the proceeding SpaceX seeks to enjoin.  The First Circuit has held, for example,

that venue was proper even when the plaintiff's claim challenged a denial of coverage that did not

occur in the venue, because the accident underlying the request for coverage ***did*** occur in the venue.

*Uffner*, 244 F.3d at 43 ("an event need not be a point of dispute between the parties in order to

constitute a substantial event giving rise to the claim").  The events that prompted the

unconstitutional administrative proceeding are similarly a substantial part of the relevant events.

*See also Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003)

(categorizing an email to Texas recipients as a substantial Texas-based event).

In addition, the ongoing impacts of the NLRB's unlawful actions in this District are also a

substantial part of the events giving rise to SpaceX's claims.  For example, in *Texas v. United*

*States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015), the court addressed a challenge to a federal

agency's allegedly unlawful regulation of employers, and held that "a substantial part of the events or omissions giving rise to Plaintiffs' claims would occur in the Northern District of Texas were the [regulation] to become effective" because Plaintiffs were "employers in Wichita Falls."  Here, too, the administrative proceeding, if not enjoined, would continue to interfere with SpaceX's business and employment practices in this District.  *See* Gallman Decl., ¶¶ 9-10.

Defendants largely ignore the legal test for transactional venue.  Rather, they insist that events in California are ***more*** substantial than the events in this District.  Mot. to Transfer 5.  That is irrelevant, however, because this Court need not, and should not, evaluate whether this District is the "best" venue or the place where the "most substantial" events occurred.  *See, e.g.*, *VP, LLC*, 2012 WL 6201828, at *9; *Safety Nat. Cas. Corp.*, 2007 WL 7238943, at *5.  Defendants also find it "[n]otabl[e]" that none of the Defendants' conduct to date is alleged to have occurred in Texas.  Again, that is irrelevant: under the 1990 statutory amendments broadening the test for transactional venue, the inquiry does not exclusively consider the location of defendants' actions, but also where plaintiffs experience the resulting injuries.  *See, e.g.*, *Ray*, 2021 WL 8443684, at *6; *Zurich Am. Ins.*, 982 F. Supp. 2d 714, 722; *Safety Nat. Cas. Corp.*, 2007 WL 7238943, at *5.[2]

Defendants' two cited cases on transactional venue do not support them.  *See* Mot. to Transfer 7 nn. 37, 41.  Events here do not merely have "some tangential connection with the dispute in litigation."  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Andrade v. Chojnacki*, 934 F. Supp. 817, 827 n.18 (S.D. Tex. 1996).  The allegedly unlawful NLRB proceeding seeks to regulate SpaceX's conduct at Starbase just as it does at the company's other locations.  Moreover, the *Cottman* court applied a specific test for venue in "Lanham Act

---

[2] Similarly irrelevant is their repeated reference to the residence of various parties.  Mot. to Transfer 5-7.  Residency-based venue is governed by subparagraphs (A) and (C) of Section 1391(e)(1), separate from transactional venue under Section 1391(e)(1)(B).

trademark infringement case[s]," which is inapplicable here. *Id.* at 295. And the *Andrade* court, noting the "dearth of Fifth Circuit case law" construing the post-1990 transactional-venue standard, seems to have improperly adopted a most-substantial-events standard. 934 F. Supp. at 827 n.18. *Andrade* was filed in the Southern District of Texas alleging torts against federal officials arising from the Branch Davidian standoff and tragic resulting events in Waco. The plaintiffs conceded that "the acts alleged to have caused injury . . . occurred in Waco," and certain plaintiffs had represented in a separate lawsuit that "all incidents and occurrences" had happened in the Western District of Texas. *Id.* at 826, 829. The court found that the events and decisions by the Davidians themselves severed any connection with whatever initial planning decisions Defendants had been made in Houston. *Id.* at 828-29. Nothing about the case is on point.

Considering the events that gave rise to the unlawful agency hearing, the ongoing effects of the hearing, and the relief sought through the hearing, a substantial portion of those events occurred in or will create harm in this District. Venue is proper under Section 1391(e)(1).

Were this Court to disagree, Defendants are correct that transfer better serves the interests of justice than dismissal. Mot. to Transfer 7-8. But efficiency and respect for SpaceX's choice of venue favor the Western District of Texas, Waco Division, not the Central District of California.[3]

---

[3] Defendants cannot reasonably argue that venue would be improper in the Western District of Texas because at least two of the unfair labor practices alleged in the administrative complaint occurred there when Ms. Shotwell sent the June 15 and 16, 2022 emails. Shotwell Decl., ¶¶ 3-5; NLRB Compl., ¶¶ 7, 11. The Open Letter also caused significant disruption at the McGregor and Bastrop facilities, *see* Cramer Decl., ¶¶ 7, 9, and the NLRB hearing and remedies sought make demands on key SpaceX personnel based in the Western District. Gallman Decl., ¶¶ 10-11. Ms. Shotwell, who resides in the Western District, is expected to testify in the NLRB proceeding. Gallman Decl., ¶ 16; Shotwell Decl., ¶ 2. In addition, given the schedule for the upcoming hearing and time-sensitive need for injunctive relief, which Defendants control, party and court resources are best preserved by keeping the case in this Circuit and avoiding any need to re-brief the preliminary injunction motion under the law of a different circuit, as Defendants seek to have happen here. Mot. to Transfer 9 n.49; *see Career Colls.*, 2023 WL 2975164 at *3 (transferring to proper venue within Fifth Circuit to afford "respect" to plaintiff's choice of forum).

II.     **Defendants fail to meet their burden to show the Central District of California is a clearly more convenient venue.**

A "plaintiff's choice of venue is entitled" to "appropriate deference" and, unless the defendant shows "good cause," "should be respected*." In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). To establish "good cause," "[a] movant seeking transfer under 28 U.S.C. § 1404(a) must show that the transferee venue is '***clearly more convenient***' than the venue chosen by the plaintiff." *Flores v. Blinken*, No. 21-cv-66, 2021 WL 6037593, at *2 (S.D. Tex. Oct. 20, 2021) (Olvera, J.) (emphasis added) (citing *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013), and *Volkswagen*, 545 F.3d at 315). Defendants fall well short of meeting their burden. This action exclusively involves constitutional claims that are pure issues of law not requiring live witness testimony or a trial, and there is no reason why litigating these issues of constitutional law would be more convenient in California.

Although district courts have "broad discretion in deciding whether to order a transfer," *Volkswagen*, 545 F.3d at 311, the Fifth Circuit has explained that this discretion is not limitless: when "jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (reversing transfer as an abuse of discretion). "[T]he standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.*; *see also In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) ("some inconvenience is expected and acceptable").

Four private interest factors and four public interest factors guide this analysis. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315 (citations and quotation marks omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (citations and quotation marks omitted). "[A]lthough a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer" and any analysis must "directly manifest[] the importance that [must be given] to the plaintiff's choice." *Id.*, 315 n.10. A plaintiff's choice of forum should not be disturbed unless the balance of factors strongly favors the moving party. *Id.* at 315.

Here, all factors are either neutral or weigh in favor of litigating this dispute in the Southern District of Texas, so Defendants fail to override SpaceX's choice of forum. *Cf. Flores*, 2021 WL 6037593 (denying intra-district transfer where "six factors are neutral, one weighs slightly in favor of transfer, and one weighs solidly in favor of transfer"). But it bears noting up front—given Defendants' heavy accusations of forum shopping—that SpaceX had every reason to believe that the government would recognize this Court as an appropriate venue for this constitutional challenge. After all, this Court is currently presiding over a very similar constitutional challenge by SpaceX with similar venue facts, and the federal government has not contested venue there. *See generally Space Exploration Techs. Corp. v. Bell*, No. 1:23-cv-00137 (S.D. Tex. 2023) (Olvera, J.). Given the speed at which Defendants seek to begin unconstitutional administrative proceedings and SpaceX's resulting need for quick preliminary injunctive relief, SpaceX rationally chose a forum that was familiar with the complex constitutional issues raised by this case.

10

### A.      Private Interest Factors

Defendants argue that "[n]one of the … four private-interest factors point towards the Southern District of Texas."  Mot. to Transfer 15.  This flips the analysis on its head.  **Defendants** bear the burden of showing that the factors make another venue "clearly more convenient." *See Def. Distributed*, 30 F.4th at 433; *Volkswagen*, 545 F.3d at 315.  They have failed.

#### 1.      The relative ease of access to sources of proof.

Factor one "requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Def. Distributed*, 30 F.4th at 434.  When the evidence is not physical in nature, this factor is not particularly relevant. *Planned Parenthood*, 52 F.4th at 630.  Here, Defendants admit that the evidence, if any, in this constitutional challenge is in electronic form, Mot. to Transfer 15, and therefore cannot show this factor favors transfers.  *See Texas v. Garland*, No. 23-cv-34, 2023 WL 4851893, at *7 (N.D. Tex. July 28, 2023); *Career Colls.*, 2023 WL 2975164, at *3.  Instead, Defendants try to shoehorn speculation about witnesses into this factor.  Mot. to Transfer 15-16.  Witness availability is analyzed under the next two factors, which, as explained, do not favor transfer.

#### 2.      The availability of compulsory process to secure the attendance of witnesses.

Defendants have failed to establish that compulsory process of witnesses is at all relevant here.  "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630-31.  This is a constitutional challenge "based primarily on legal arguments," *Garland*, 2023 WL 4851893, at *7, where it is highly unlikely that any live witness testimony will be needed.  Moreover, Defendants do not allege or show that any witnesses it speculates may be necessary are unwilling to testify.  *See id.*  This factor does not favor transfer.

11

### 3.      The cost of attendance for willing witnesses.

Were any witnesses needed to decide the suit for injunctive relief, the only witness identified thus far is Jamin Gallman, *see* Dkt. No. 37-1 (submitting declaration in support of preliminary injunction motion), who is based at Starbase in this Division.  Thus, this factor weighs in favor of this case remaining in the Southern District of Texas.

Defendants' speculation that additional witnesses may be necessary deserves no weight and conflates this limited challenge to an unconstitutionally structured agency with the separate NLRB administrative hearing on the merits of the Charging Parties' allegations.  *See, e.g.*, *Utah v. Walsh*, No. 23-cv-16, 2023 WL 2663256, at *2 (N.D. Tex. Mar. 28, 2023).  But even indulging such speculation, Los Angeles is not clearly more convenient than Brownsville.  The current named Defendants all reside in Washington, D.C., nowhere near the Central District of California.[4] And while SpaceX is headquartered in Hawthorne, California, its President and COO identified in the NLRB administrative complaint resides in Texas.  Other SpaceX personnel who might testify in the NLRB hearing are currently scattered about the country.  Gallman Decl., ¶¶ 14-16; Harper Decl., ¶ 14.  And the Charging Parties' location is irrelevant.  They admitted in a recent filing that "[t]heir identities are not germane to any issue before this Court" and that "this is not a lawsuit on the merits of the NLRB's charges against SpaceX; this is a wholly separate constitutional challenge to the NLRB's operations, where the identities of the underlying charging parties are irrelevant." Dkt. No. 46, at 2, 5.  These admissions refute Defendants' representation that the Charging Parties are potential witnesses or that their location is relevant to the transfer analysis.[5]

---

[4] To SpaceX's knowledge, no ALJ has been assigned yet.  Defendants state all ALJs have "home office[s] located in San Francisco, New York City, or Washington, D.C."  Mot. to Transfer 6, 36.

[5] Moreover, the Charging Party declarations submitted in support of the Motion to Intervene indicate several of them may currently be located outside central California and thus would have

Even if there were potential witnesses who would need to travel, Brownsville is likely to be significantly cheaper for the parties and witnesses than Los Angeles, California for many reasons. *See Texas v. U.S. Dep't of Homeland Sec.*, 661 F. Supp. 3d 683, 691 (S.D. Tex. 2023); *Garland*, 2023 WL 4851893, at *7; *Walsh*, 2023 WL 2663256, at *4. Thus, the cost of attendance for willing witnesses—if any are needed in this constitutional challenge—weighs in favor of the Southern District of Texas retaining venue.

### 4.    All other practical problems that make trial of a case easy, expeditious and inexpensive.

As to the final, catch-all factor, other considerations also weigh in favor of retaining venue in the Southern District of Texas. To start, the pendency of the preliminary injunction motion weighs in favor of retaining venue as it would eliminate the delay resulting from any transfer in adjudicating that motion. *See Sanders v. Seal Fleet, Inc.*, 998 F. Supp. 729, 738 (E.D. Tex. 1998) ("keeping the case in the Eastern District will eliminate any delay that might occur from the transfer"). Defendants steadfastly refuse to move the March 5 NLRB hearing date, which is entirely within its control, to give this Court or a potential transferor court adequate time to adjudicate issues it acknowledges are "complex." *See* Dkt. No. 56, at 4; *see generally* Dkt. Nos. 37-2, 49, 49-1, 56. This scenario and relevant equities rise above garden-variety delay resulting from transfer, and crosses into the sort of delay and prejudice that favor retaining the current venue. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *Radmax*, 720 F.3d at 289.

Defendants contend that their counsel and proposed intervenors' counsel will need to appear pro hac or obtain local counsel in this District. Mot. to Transfer 17. Such considerations are generally irrelevant. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004)

---

to travel regardless. *See* Dkt. No. 21 (Lawrence Declaration signed in Berlin, Germany); Dkt. No. 22 (Holland-Thielen Declaration signed in Raleigh, North Carolina).

("[C]onvenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."). But if they were relevant, they would support retaining venue. Counsel for SpaceX, Defendants, and Proposed Intervenors have now all filed and been granted pro hac vice status. *See* Dkt. Nos. 14, 15, 25, 32-34, 51-52. Proposed Intervenors have counsel admitted in the District. *See* Dkt. No. 46 at 6 (Attorney-In-Charge is admitted in SDTX). And Defendants are represented locally by the Southern District of Texas U.S. Attorney's Office. It is transferring the case that would necessitate a new round of pro hac motions, plus a new U.S. Attorney's Office quickly getting up to speed. Thus, the fourth factor favors the Southern District of Texas.

*****

The private interest factors all either favor the Southern District of Texas or are irrelevant.

## B.    Public Interest Factors

The public interest factors also do not help Defendants carry their burden to demonstrate that the Central District of California is "clearly more convenient." *Volkswagen*, 545 F.3d at 315.

### 1.    The administrative difficulties flowing from court congestion.

Recent statistics indicate that this Court only has one civil case that has been pending over three years, and the only motion on the "six-month list" is a motion in limine in that case (which is set for trial).[6] And beyond this Court's own docket, the number of "weighted filings" by judge—which is the most relevant statistic because it "account[s] for the different amounts of time district judges require to resolve various types of civil and criminal actions"—is lower in this District (577) than in the Central District of California (596).[7] Docket congestion does not favor transfer.

Nor do Defendants "assert that the Court is unable to resolve this dispute expeditiously" or

---

[6]  https://www.uscourts.gov/sites/default/files/data_tables/cjra_7_0930.2023.pdf, at p. 4204; https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0930.2023.pdf, at p. 874.

[7] https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf, at pp. 36, 68; https://www.uscourts.gov/sites/default/files/explanation-of-selected-terms-september-2014_0.pdf

explain how it "would alleviate court congestion" to send this case to Central District of California with almost no time to resolve complex constitutional issues before the start of the NLRB hearing. *Garland*, 2023 WL 4851893, at *8. This "Court has an established track record of swiftly resolving cases involving requests for emergency injunctive relief," *id.*, as the recent *Bell* litigation shows. This first public interest factor weighs in favor of this Court retaining the case.

### 2. The local interest in having localized interests decided at home.

SpaceX has a strong presence in the District, and the employees located in the Southern District of Texas who would be affected by the Defendants' actions have an interest in this case being heard here. As discussed supra at pp. 3-8, substantial events giving rise to the NLRB proceedings occurred in this District, the NLRB proceedings would affect SpaceX personnel in this District and Texas more broadly, and the NLRB seeks remedies through the proceeding that will apply to facilities and personnel in this District. Starbase is a crucial hub for SpaceX: not only is it SpaceX's fastest growing location employing over 2,225 individuals and senior corporate officers, but it is also the launch site for the Starship rockets that will take American astronauts to the Moon and to Mars. Gallman Decl., ¶¶ 7, 10-11, 19-20.[8] SpaceX is deeply invested in the local Brownsville economy and is Brownsville's largest private employer.[9] Not just SpaceX employees in this district have an interest in this suit being decided here, local citizens do too.

---

[8] News coverage has noted that this "choice of venue was not a random choice: The company's Starbase, from which it recently did a test flights of a 33-engine rocket, sits on a peninsula just outside of Brownsville." Cameron Langford, *SpaceX fights feds' unfair labor practices inquiry with lawsuit*, Courthouse News Service (Jan. 5, 2024), https://www.courthousenews.com/spacex-fights-feds-unfair-labor-practices-inquiry-with-lawsuit/.

[9] Steven Masso, *SpaceX plans to open $15M shopping center, restaurant in Texas*, KXAN (NBC) (Jan. 20, 2024), https://www.kxan.com/news/texas/spacex-plans-to-open-15m-shopping-center-restaurant-in-texas/; Joyti Mann, *SpaceX has become the largest employer in Brownsville, Texas, and estimates $885 million gross output for the county it's based in, reports say*, Business Insider (Apr. 23, 2022), https://www.businessinsider.com/spacex-largest-employer-texas-brownsville-2022-4.

Defendants claim there is a strong interest in resolving labor disputes in forums where the actions will be felt.  That is no reason for transfer as the NLRB is alleging companywide unlawful labor practices and seeks companywide remedies.  Employees at SpaceX's two facilities in this District have as much an interest in the outcome of those allegations and the constitutionality of the proceedings used to prosecute and adjudicate them as SpaceX's California employees.

Nor is the underlying NLRB proceeding limited to a local union election or a localized dispute between two unions over a local port contract, as in the two cases Defendants cite.  *See Pac. Mar. Ass'n v. NLRB*, 905 F. Supp. 2d 55, 57 (D.D.C. 2012) (dispute between two local unions over a local port contract); *Lab. Corp. of Am. Holdings v. NLRB*, 942 F. Supp. 2d 1, 4 (D.D.C. 2013) (this "case is essentially a challenge to a union election that will take place in New Jersey").  As explained already, Defendants purport to seek relief beyond SpaceX's Hawthorne employees.  And more importantly, this dispute is over the structure of Defendants' administrative agency.  They are based in Washington, D.C., not Hawthorne, and the constitutionality of the NLRB's structure is in no sense a matter of merely localized concern for Hawthorne.  *See Walsh*, 2023 WL 2663256, at *4 ("Where parties 'are located across the state and across the country,' this is not the sort of 'localized case' where the citizens of Washington, D.C. have a greater 'stake' in the litigation than the residents of Amarillo."); *Garland*, 2023 WL 4851893, at *9 ("The citizens of the Lubbock Division have no lesser interest in the constitutionality of federal laws than do those in metroplexes such as Austin and Washington, D.C.").  This factor is either neutral or weighs in favor of adjudicating the dispute here in Brownsville.

### 3.     The familiarity of the forum with the law that will govern the case.

Defendants argue this factor is not relevant, Mot. to Transfer 19, and typically it would not be relevant because this action involves federal claims.  But given the complexity of the constitutional claims in this case, the similarity to the ones this Court recently addressed in *Bell*,

and the time pressure created by Defendants to obtain timely injunctive relief, this case presents a situation where this Court's "superior familiarity" with the claims asserted weighs against transfer. *See Def. Distributed*, 30 F.4th at 436.  Although there are some key differences between the claims here and in *Bell*, this Court's overall familiarity with the legal issues in this case will create important efficiencies for quick adjudication of SpaceX's claims.

### 4.  The avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

There is no risk of a conflict here, as Defendants agree.  Mot. to Transfer 19.  But Defendants' framing of their argument here again shows they fundamentally misunderstand their burden.  They argue that "The District Court for the Central District of California is not at a disadvantage to this Court in resolving such claims." *Id.*  But Defendants need to show the Central District of California is "clearly more convenient"—not just that it is "not at a disadvantage."

***** 

In sum, neither the private nor public interest factors support transfer here.  If anything, the factors show convenience and the interests of justice are best served by adjudicating the case in this District.  Defendants come nowhere close to showing the "good cause" needed to overrule SpaceX's venue choice through proof that the Central District of California is "clearly more convenient."  Transfer would be error under the Fifth Circuit's test for Section 1404(a).

### C.  Defendants' forum-shopping accusations are meritless.

As Defendants cannot carry their burden, they spend much of their brief accusing SpaceX of improper forum shopping.  As addressed supra at p. 10, SpaceX had ample reason to believe that the federal government would not contest venue in Brownsville.

But even putting that aside, SpaceX's subjective motivations are irrelevant under Fifth Circuit law.  A litigant is entitled "to select the forum that [it] considers most receptive to [its] cause," and "[t]he motive of the suitor in making this choice is ordinarily of no moment." *McCuin*

*v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983); *see also Walsh*, 2023 WL 2663256, at *6 (citing *McCuin*, 714 F.2d at 1261).  Although the Fifth Circuit has explained that a plaintiff's privilege in choice of venue is not unlimited—hence the availability of transfer where a defendant meets its burden—the privilege should be revoked only where the "open door [admits] those who seek not simply justice but perhaps justice blended with some harassment." *Volkswagen*, 545 F.3d at 313 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). Defendants' out-of-circuit cases on this topic thus carry no weight.  *See* Mot. to Transfer 19 n.92. Having to litigate in this forum is hardly a form of harassment.

Remarkably, Defendants seek to use the existence of apposite Fifth Circuit precedent, *SEC v. Jarkesy*, 34 F.4th 446 (5th Cir. 2022), as an affirmative reason to transfer this case.  Mot. to Transfer 12, 17, 20.  They cite no authority that authorizes a district court to transfer a case so that one of the litigants can avoid applicable circuit precedent.  And it is improper and disturbing for the federal government to try to escape to a perceived friendlier venue based on the possibility that applicable law might classify its operations as unconstitutional.

Defendants' discussion of anticipatory suits is wholly off base.  *See* Mot. to Transfer 10-12.  That doctrine applies to efforts to deprive "the 'true plaintiff'" of its chosen forum by filing a declaratory judgment action, but only where the two lawsuits "involv[e] the same issues." *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 07-cv-2183, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008); *see also Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003) ("Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'").  Here, SpaceX sought injunctive and declaratory relief in response to an already-filed unconstitutionally structured administrative proceeding, as Supreme Court

precedent permits. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010). Defendants do not claim that ***they*** intended to file a suit elsewhere to litigate with SpaceX about the constitutionality of the NLRB's structure.

The imminent Section 10(j) determination does not make this litigation anticipatory, either. SpaceX's theory here is simple—if the Board's Members authorize 10(j) relief, they must recuse from adjudicatory functions on those same allegations. Compl., ¶ 130. SpaceX's theory at this point in the litigation logically *cannot* be a contention that Section 10(j) relief fails on the merits, because no Section 10(j) action yet exists, no contours of such an action have been defined, and thus there are no "merits" to argue. Tellingly, Defendants do not contend the NLRB actually will seek Section 10(j) relief—only that "the matter is being considered." Mot. to Transfer 11 n.59. And for all their protests about forum-shopping, Defendants never explain why their "usual choice of venue in Section 10(j) cases" should override SpaceX's forum preferences here. *See id.* at 12.

## III.   The Court should decide the preliminary injunction and transfer motions together.

Finally, Defendants argue that a procedural knot may result if this Court does not address the venue motion before the preliminary injunction motion. Those concerns are overstated and ignore the procedural complications that would arise from an erroneous transfer. One only need look to *Defense Distributed,* where the Fifth Circuit reversed the district court's decision to transfer part of the case to the District of New Jersey, but did so after the transfer had been effected, and the District of New Jersey refuses to give the case back. *See Defense Distributed v. Bruck*, 30 F.4th 414, 421 (5th Cir. 2022); *Def. Distributed v. Platkin*, 55 F.4th 486, 489 (5th Cir. 2022).

Ruling on the preliminary injunction motion before, or together with, the motion to transfer would not create any procedural complications. It is unclear how this would create the "potential for conflicting orders" between the Fifth Circuit and the Ninth Circuit, as Defendants claim. Mot. to Transfer 9. As Defendants concede, an injunction ruling of this Court would be appealable to

19

the Fifth Circuit.  *Id.* at 8-9.  Even if this Court granted transfer and one side appealed the preliminary injunction ruling to the Fifth Circuit, proceedings in the transferee court would turn to summary judgment and potential final remedies, such as a permanent injunction and/or declaratory relief.  The biggest risk of a procedural "thicket" would be if this Court granted transfer and was later reversed, after the transfer already was already complete.  *Platkin*, 55 F.4th at 491.

Defendants also err in arguing in the motion to expedite briefing that this Court lacks authority to grant the preliminary injunction at the same time as ruling on the motion to transfer. Dkt. No. 54 (Expedite Reply), at 1.  Defendants' cited cases address circumstances where the interests of justice may warrant *dismissal* under Rule 12(b)(3) rather than transfer to another forum. *See Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 902-03 (8th Cir. 1987) (reversing grant of injunction and denial of motion to dismiss or transfer for improper venue); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 317 (D.C. Cir. 1985) (vacating denial of preliminary injunction and remanding with instructions to dismiss).  But, where, as here, Defendants concede the interests of justice and exigencies favor transfer, the same equitable considerations favor a speedy resolution of the preliminary injunction motion.  Particularly when Defendants concede that improper venue does not undermine this Court's jurisdiction, Dkt. No. 54 (Expedite Reply), at 2, the Court has authority to issue an injunction either before or in tandem with a ruling on the venue motion.  *See, e.g.*, *Polymer80, Inc. v. Garland*, No. 23-cv-29, 2023 WL 3605430, at *1, *5 (N.D. Tex. Mar. 19, 2023).  And not even Defendants dispute that the Court may appropriately issue an injunction if venue is proper, even if the Court decides to transfer under Section 1404(a).  *See* Dkt. No. 49 (Expedite Opposition), at 4-6; Dkt. No. 54 (Expedite Reply), at 2 n.1.

## **CONCLUSION**

For all these reasons, the Court should deny Defendants' Motion to Transfer.

20

Dated: February 1, 2024

Respectfully submitted,

By:     _s/ Catherine L. Eschbach_

**ROERIG, OLIVEIRA & FISHER, L.L.P.**
David G. Oliveira
10225 N. Tenth Street
McAllen, TX 78504
doliveira@rofllp.com
(956) 393-6300

**MORGAN LEWIS & BOCKIUS LLP**
Catherine L. Eschbach
Attorney-In-Charge
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
(713) 890-5719

Harry I. Johnson, III (*pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
harry.johnson@morganlewis.com
(310) 907-1000

Michael E. Kenneally (*pro hac vice*)
Amanda L. Salz (*pro hac vice*)
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004-2541
michael.kenneally@morganlewis.com
amanda.salz@morganlewis.com
(202) 739-3000

*Attorneys for Plaintiff*
*Space Exploration Technologies Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties of record.

s/ <u>*Catherine L. Eschbach*</u>
Catherine L. Eschbach
