**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

|  |  |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | Case No.  1:24-cv-00001 |
| Plaintiff, | |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, | |
| Defendants. | |

**BRIEF OF CHARGING PARTIES AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................1

II.     ISSUES IN DISPUTE ....................................................................................................3

III.    BACKGROUND .............................................................................................................3

IV.     LEGAL STANDARD ......................................................................................................7

V.      ARGUMENT ...................................................................................................................8

   A.   The Court May Transfer The Case Before Deciding Anything Else. .....................8

   B.   This Case Should Be Transferred to the Central District of California
        Pursuant to 28 U.S.C. § 1404(a). ..........................................................................9

        1.   SpaceX's complaint could have been brought in the Central
             District of California. ...................................................................................9

        2.   The private interest factors weigh in favor of transfer. ...............................9

             a.   Plaintiff's Choice of Forum .............................................................9

             b.   Convenience of parties and witnesses ...........................................11

             c.   The cost of attendance of witnesses and other trial expenses .......12

             d.   Availability of compulsory process ................................................13

             e.   Relative Ease of Access to Sources of Proof .................................13

             f.   Place of the alleged wrong .............................................................13

             g.   Possibility of delay and prejudice ..................................................14

        3.   The public interest factors weigh in favor of transfer. ...............................15

             a.   Administrative difficulties from court congestion .........................15

             b.   Local interest ..................................................................................15

             c.   Familiarity of the forum with the law that will govern and
                  avoidance of conflicts of law. ........................................................16

VI.     CONCLUSION .............................................................................................................17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Andrade v. Chojnacki*,
   934 F. Supp. 817 (S.D. Tex. 1996).................................................................. 8, 10, 11

*Care One, LLC v. Nat'l Lab. Rels. Bd.*,
   Civ. A. No. 23-3221 (MEF) (LDW), 2023 WL 4156859 (D.N.J. June 23,
   2023).......................................................................................................... *passim*

*Care One, LLC v. Nat'l Lab. Rels. Bd.*,
   No. 3:23-CV-00831 (RNC), 2023 WL 6457641 (D. Conn. Oct. 4, 2023) ................................. 3

*Clemons v. WPRJ, LLC*,
   928 F. Supp. 2d 885 (S.D. Tex. 2013) .................................................................. 7, 9

*Evergreen Media Holdings, LLC v. Safran Co.*,
   68 F. Supp. 3d 664 (S.D. Tex. 2014) ................................................................ *passim*

*Hanby v. Shell Oil Co.*,
   144 F. Supp. 2d 673 (E.D. Tex. 2001) ................................................................. 10, 11

*Lemery v. Ford Motor Co.*,
   244 F. Supp. 2d 720 (S.D. Tex. 2002) ...................................................................... 13

*Reyes De Perez v. Cont. Freighters, Inc.*,
   No. 5:06-cv-02, 2006 WL 3053400 (S.D. Tex. Oct. 26, 2006).......................................... 10, 11

*Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*,
   957 F. Supp. 843 (E.D. Tex. 1997) .......................................................................... 10

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ........................................................................................... 8

*Spiegelberg v. Collegiate Licensing Co.*,
   402 F. Supp. 2d 786 (S.D. Tex. 2005) ............................................................... *passim*

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................................ 3, 15, 16

**Statutes**

28 U.S.C. § 1391(b)(2) ........................................................................................ 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

28 U.S.C. § 1404(a) ................................................................................................ *passim*

National Labor Relations Act § 7 ....................................................................... 1, 3

**Court Rules**

Fed. R. Civ. P. 45(c) ............................................................................................. 13

Local Rule 7.1(D) ................................................................................................... 3

**Other Authorities**

Fed. Ct. Mgmt. Stat. (Sept. 30, 2023), available at
    https://www.uscourts.gov/statistics/table/na/federal-court-management-
    statistics/2023/09/30-1 ................................................................................. 14

Amici curiae Scott Beck, Paige Holland-Thielen, Deborah Lawrence, and Tom Moline ("Charging Parties") submit this brief supporting Defendants' motion for a transfer of venue to the Central District of California pursuant to 28 U.S.C. § 1404(a), alleging as follows:

## I.      <u>INTRODUCTION</u>

Charging Parties are aggrieved workers in a complaint brought by the National Labor Relations Board ("NLRB") in California against Space Exploration Technologies Corp. ("SpaceX") for violations of Section 7 of the National Labor Relations Act ("NLRA"). As set forth below, Charging Parties respectfully submit that adjudication of SpaceX's Complaint for Declaratory and Injunctive Relief ("Complaint") should be transferred to the United States District Court for the Central District of California, where an NLRB hearing on the complaint is scheduled to commence on March 5, 2024 and where all the underlying events giving rise to it took place.  Indeed, it is this very action *pending in California* that SpaceX is seeking to disrupt via this Complaint in Texas.

Charging Parties file on behalf of themselves and four other individuals whose lives were changed forever by SpaceX's unlawful termination of their employment. The facts in support of their wrongful termination—almost all of which SpaceX concedes (Compl., ¶¶ 43-50)—establish that they were terminated from employment for the very specific protected conduct of seeking to create a lawful work environment. That is, they requested in an "Open Letter" to SpaceX executives that it take action to redress workplace harassment and discrimination including directing its CEO, Elon Musk to cease engaging in inappropriate, disparaging, sexually charged comments that infiltrated and infected their workplace on a daily basis. SpaceX summarily terminated their employment *because of* this activity—all of which took place in California. Accordingly, it is the NLRB's Region 31 office in Los Angeles, California that has processed and investigated Charging Parties' labor charges, and ultimately issued a consolidated

- 1 -

administrative complaint against SpaceX alleging 37 separate violations of the Act including unlawful termination of each of the eight Terminated Employees.  Thus, after a year of investigating the allegations and intense factual development and legal assessment by its Region 31 agents in Los Angeles, the NLRB has made a determination regarding the scope of the matters to be tried and has set a trial date of March 5, 2024, for the matter to be heard in Los Angeles.

SpaceX's Complaint now seeks to hijack the employees' rights to vindication by challenging the NLRB's authority to act in the California proceeding. Setting aside the merits of the Complaint, it plainly bears no relationship whatsoever to the Southern District of Texas; instead, venue should be transferred to the Central District of California "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

Wholly ignoring the pertinent facts, SpaceX avers that venue in Texas is proper for this action because it has a facility there, and some unidentified SpaceX employees in Texas who have no involvement whatsoever in the underlying case may have "interacted with" the Open Letter. Compl.,¶ 34. This does not support venue in Texas. The Charging Parties acknowledge SpaceX's right to be heard; they simply request that the hearing occur in the appropriate venue: the Central District of California.

There is direct precedent supporting transfer of venue. In June of 2023, another employer facing an NLRB complaint tried the same tactic that SpaceX advances here: arguing that the NLRB's ALJ's are unconstitutionally insulated from removal. *Care One, LLC v. Nat'l Lab. Rels. Bd.*, Civ. A. No. 23-3221 (MEF) (LDW), 2023 WL 4156859, at *2 (D.N.J. June 23, 2023).[1] That

---

[1] Within this brief, unless otherwise indicated, all citations and internal quotation marks within quotations are omitted and any emphasis has been added.

effort was ultimately rejected,[2] but as relevant here, it was first transferred to the district court where the NLRB action was proceeding. *Id*. The same result should occur here. The question of the constitutionality of the NLRB's proceedings should be adjudicated where those proceedings are taking place, and not in a venue that has no relationship to the matter. *Id*. at *3 (ordering transfer under 1404(a) and holding that where the NLRB action was proceeding in Connecticut and all of the underlying events leading to the NLRB action took place in Connecticut, "the District of New Jersey is hardly a natural place for this lawsuit")

Pursuant to this Court's Local Rule 7.1(D), counsel for Charging Parties conferred with counsel for the NLRB and counsel for SpaceX about this motion. The NLRB takes no position on this motion, and SpaceX opposes it.

## II.   ISSUES IN DISPUTE

Whether this case should be transferred to the Central District of California "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The party seeking transfer must demonstrate that the case could have been filed in the judicial district to which transfer is sought; if so, the court then examines the convenience of the parties and witnesses. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004).

## III.   BACKGROUND

Charging Parties, along with four of their colleagues (collectively, "Terminated Employees"), were unlawfully fired by SpaceX in retaliation for engaging in concerted protected activity under Section 7 of the NLRA. Those terminations (along with allegations of unlawful interrogation, surveillance, and coercive statements) are now the subject of an NLRB complaint

---

[2] *Care One, LLC v. Nat'l Lab. Rels. Bd.*, No. 3:23-CV-00831 (RNC), 2023 WL 6457641, at *1 (D. Conn. Oct. 4, 2023).

scheduled for hearing in Los Angeles on March 5, 2024.

Terminated Employees were software and hardware engineers at SpaceX. Declaration of Scott Beck In Support of Motion to Intervene ("Beck Decl."), ¶¶ 2-3; Declaration of Paige Holland-Thielen In Support of Motion to Intervene ("Holland-Thielen Decl."), ¶ 2; Declaration of Deborah Lawrence In Support of Motion to Intervene ("Lawrence Decl."), ¶ 2; Declaration of Tom Moline In Support of Motion to Intervene ("Moline Decl."), ¶¶ 3-4; Declaration of Laurie Burgess in Support of Motion to Intervene ("Burgess Decl."),, ¶¶ 8-11.[3] Seven of the eight Terminated Employees resided in California during the time of all relevant actions that triggered the underlying consolidated Complaint and worked at SpaceX's headquarters in Hawthorne, California.  Beck Decl., ¶ 4; Holland-Thielen Decl., ¶ 3; Moline Decl., ¶ 5; Burgess Decl., ¶ 4. The eighth employee worked at a SpaceX office in Redmond, Washington. Lawrence Decl., ¶ 3. As is demonstrated below, each of the eight Terminated Employees participated in protected concerted activity California that SpaceX's concedes led to termination of their employment. Compl., ¶¶ 43-46.

During their otherwise highly productive careers at SpaceX, the Terminated Employees became concerned about a series of disturbing incidents related to SpaceX's handling of sexual harassment in the workplace that interfered with their ability to function at work. For instance, several former employees published accounts of having been sexually harassed at SpaceX, and then having been retaliated against by HR for reporting it. Beck Decl., ¶ 5; Holland-Thielen Decl., ¶ 4; Lawrence Decl., ¶ 4; Moline Decl., ¶ 6. Terminated Employees' concerns over SpaceX's failure to properly address allegations of harassment was heightened when CEO Elon

---

[3] Rather than cloud the docket by filing two copies of the exact same declarations, Charging Parties instead cite to their declarations filed in support of their previously submitted Motion to Intervene, filed at ECF 18-22, which contain all relevant facts.

Musk was accused of sexually harassing a SpaceX flight attendant and publicly ridiculed the alleged victim. Beck Decl., ¶ 6; Holland-Thielen Decl., ¶ 5; Lawrence Decl., ¶ 5; Moline Decl., ¶ 7. To the Employees' dismay, instead of affirming the right to speak up about harassment without fear of retaliation, the company's President, Gwynne Shotwell, actively and vociferously defended Musk. *Id.* All of this took place against a background of a continual stream of public posts on social media by CEO Elon Musk degrading women and LGBTQ individuals and featuring inappropriate sexual comments and jokes. Beck Decl., ¶ 7; Holland-Thielen Decl., ¶ 6; Lawrence Decl., ¶ 6; Moline Decl., ¶ 8. These posts were actively circulated in the workplace, with many actually posted on internal SpaceX platforms. *Id*. It was impossible for employees to avoid Musk's degrading and demeaning comments and management failed to take any action to remediate the hostile work environment. Beck Decl., ¶ 8; Holland-Thielen Decl., ¶ 7; Lawrence Decl., ¶ 7; Moline Decl., ¶ 9.

Desperate to effectuate change in the workplace to simply bring company policy into compliance with the law, in late May 2022 the Terminated Employees decided to work together to take action to protest the company's handling of sexual harassment. Beck Decl., ¶ 9; Holland-Thielen Decl., ¶ 8; Lawrence Decl., ¶ 8; Moline Decl., ¶ 10. After a series of meetings at SpaceX headquarters in Hawthorne and at nearby off-campus locations, they ultimately wrote an Open Letter to SpaceX's executive team asking that the company distance itself from Musk's social media comments—that is, make clear that those comments were not SpaceX's own position— and that it clarify and enforce an anti-harassment policy in the workplace. *Id*. They shared this letter internally within SpaceX channels on June 15, 2022. Beck Decl., ¶ 10; Holland-Thielen Decl., ¶ 9; Lawrence Decl., ¶ 9; Moline Decl., ¶ 11.

The next day, June 16, 2022, SpaceX fired Mr. Beck, Ms. Holland-Thielen, Mr. Moline,

- 5 -

and one other Terminated Employee in meetings in Hawthorne, California. Beck Decl., ¶¶ 3, 11-12; Holland-Thielen Decl., ¶¶ 2, 10-11; Moline Decl., ¶¶ 4, 12-13; Burgess Decl., ¶ 10. The June 16 meetings were each attended by Vice President of HR, Brian Bjelde, HR Manager Rebecca Balayan, and President Gwynne Shotwell. *Id*. These SpaceX officials told the Terminated Employees that they were being fired for conceiving of, drafting, and distributing the Open Letter. *Id*. Later that day, President Shotwell sent an email to the entire company confirming that it had performed an investigation into the Open Letter and terminated those involved. Lawrence Decl., ¶ 10.

But the retaliation did not stop there. Over the next several weeks, SpaceX's HR department proceeded to interrogate employees that it suspected of involvement in the Open Letter, and fired the remaining four Terminated Employees once they had admitted their participation. Lawrence Decl., ¶¶ 10-11X; Burgess Decl., ¶¶ 8-9, 11. This intimidation campaign was headed by HR Director Lindsay Chapman, based in Hawthorne, and the interrogations and firings took place in Hawthorne, with the exception of one Terminated Employee who was located in Redmond, Washington—she was interrogated by Ms. Chapman in Redmond, and later fired by Ms. Chapman via email. Lawrence Decl., ¶ 11; Burgess Decl., ¶¶ 8-9, 11.

Terminated Employees retained counsel and filed charges of unfair labor practices with the NLRB Region 31 in Los Angeles on November 16, 2022. Beck Decl., ¶¶ 13-14; Holland-Thielen Decl., ¶¶ 12-13; Lawrence Decl., ¶¶ 12-13; Moline Decl., ¶¶ 14-15 & Ex. A. Amended charges were filed to conform to the evidence elucidated during the investigation and on January 3, 2024, after over a year investigating the charges, the NLRB issued a consolidated administrative complaint on behalf of all eight Terminated Employees alleging 37 separate violations of the NLRA. Moline Decl. ¶16 & Ex. B; Burgess Decl., ¶ 13. A hearing before an

NLRB administrative law judge is scheduled to commence on March 5, 2024 in Los Angeles. It is this California hearing that SpaceX seeks to enjoin in its Complaint filed in Texas (hereafter, the "NLRB Action").

## IV.   LEGAL STANDARD

Under § 1404(a), a district court may transfer a case "to any other district . . . where it might have been brought," when transfer would be "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

"The threshold issue under § 1404(a) is whether the Plaintiff's claim could have been filed in the judicial district to which transfer is sought." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 789 (S.D. Tex. 2005) (citing *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004)). "If so, a court then examines 'the convenience of the parties and witnesses.'" *Id*. The determination of convenience turns on a number of private and public interest factors, which are not exhaustive or exclusive, and none is dispositive. *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 896–97 (S.D. Tex. 2013).

The private interest factors include (1) the plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the cost of attendance of witnesses and other trial expenses; (4) the availability of compulsory process; (5) the relative ease of access to sources of proof; (6) the place of the alleged wrong; and (7) the possibility of delay and prejudice. *Spiegelberg*, 402 F. Supp. 2d at 789 (citing *In re Volkswagen AG,* 371 F.3d at 203).

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary conflict of law problems. *Id*.

## V.   ARGUMENT

There can be no question that the 1404(a) factors favors transfer to California. The NLRB Action is pending in California, and virtually all of the events giving rise to the NLRB action happened there. Moreover, the vast majority of witnesses are located in California, and the parties themselves are located there. Texas, on the other hand, has no connection to this matter whatsoever, giving rise to a strong interference that SpaceX is engaged in nothing more than forum-shopping. In these circumstances, this Court readily grants motions to transfer to the appropriate venue. *Andrade v. Chojnacki*, 934 F. Supp. 817, 825 (S.D. Tex. 1996); *Spiegelberg*, 402 F. Supp. 2d at 790; *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 678–79 (S.D. Tex. 2014). In the interest of justice, and as further explained below, this case should be transferred to the Central District of California.

### A.   The Court May Transfer The Case Before Deciding Anything Else.

Courts possess discretion to determine the appropriate venue as a threshold issue, without needing to first address the underlying merits of the matter. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Consistent with this principle, courts generally decide questions of venue prior to other threshold or merits issues, even including the court's own subject matter jurisdiction. *See Andrade*, 934 F. Supp. at 825 ("While decision on Defendants' substantive motions might obviate the need for determining the transfer motions, an important element in the litigation . . . should not be decided by the transferor court but should be adjudicated by the court that has responsibility for ultimately deciding the case. If the converse were true, Sections 1404(a) and 1406(a) would be undermined, because judicial economy would dictate that the court that decided the substantive motions retain jurisdiction, even if venue were properly . . . or improperly laid in the original forum.").

This Court should therefore determine this motion to transfer venue before considering

- 8 -

the underlying merits of SpaceX's Complaint. This will avoid potential procedural complications down the road. If this Court were to decide SpaceX's request for declaratory and injunctive relief first, its order would be appealable to the Fifth Circuit. However, if the case were later transferred to California, any final orders or interlocutory appeals would be heard by the Ninth Circuit, creating the potential for conflicting orders and unnecessary complication.

**B.      This Case Should Be Transferred to the Central District of California Pursuant to 28 U.S.C. § 1404(a).**

     **1.      SpaceX's complaint could have been brought in the Central District of California.**

The first requirement for transfer is met: SpaceX's complaint could have been brought in the Central District of California. The NLRB Action that SpaceX seeks to enjoin is proceeding in Los Angeles, located within the Central District. And nearly all the operative events giving rise to the NLRB Action arose and are continuing to take place within the Central District of California. Venue is therefore proper in the Central District of California as the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(2).

     **2.      The private interest factors weigh in favor of transfer.**

The private interest factors confirm that venue belongs in California.

       **a.      Plaintiff's Choice of Forum**

The first private interest factor is the Plaintiff's choice of forum, but that factor receives little or no weight here, because SpaceX chose a forum with no connection to the underlying case. "Deference to a plaintiff's choice of forum 'disappears' when, as here, the suit has no connection to the chosen venue." *Clemons*, 928 F. Supp. 2d at 904. *See also Spiegelberg*, 402 F. Supp. 2d at 790 (holding that "because Houston lacks any legally relevant factual nexus with Plaintiff or the claims in this case, Plaintiff's choice of the Houston forum receives less

deference"); *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001) ("Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer."); *Reyes De Perez v. Cont. Freighters, Inc.*, No. 5:06-cv-02, 2006 WL 3053400, at *3 (S.D. Tex. Oct. 26, 2006) (same); *Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957 F. Supp. 843, 844 (E.D. Tex. 1997) (same); *Andrade*, 934 F. Supp. at 832 (same).

The NLRB Action is taking place in California. Also, nearly all events giving rise to the NLRB Action occurred in California. Seven of the eight Charging Parties were employed in California, wrote the Open Letter in California, and were terminated in California. (The eighth worked in Washington and participated in the Open Letter efforts taking place in California remotely. Lawrence Decl., ¶ 8.) SpaceX's response to the Open Letter was directed and carried out by President Gwynne Shotwell, Vice President of HR Brian Bjelde, HR Director Lindsay Chapman, and HR Manager Rebeca Balayan in California. Even the Washington employee was fired by Lindsay Chapman from California.

In sharp contrast, the most SpaceX can say in its Complaint is that it has a facility in Boca Chica, and that unspecified persons "interacted with" the Open Letter at that facility—which allegation is wholly unsupported by any declaration or affidavit. Compl., ¶ 34. Tellingly, SpaceX does not explain what it means by "interacted with." Regardless, the mere fact that the plaintiff does business in a district does not matter when "none of that 'business' is shown to be directly in connection with the claims in this action." *Hanby*, 144 F. Supp. 2d at 675. While SpaceX employees at locations throughout the United States *saw* the Open Letter, that is of no consequence to venue because the aggrieved workers (seven of eight of whom worked in California) were *all* terminated from California by California-based executives. *See Care One*, 2023 WL 4156859, at *3 (holding that plaintiff's choice of venue was entitled to little weight

where the NLRB proceedings that plaintiff sought to enjoin were pending in another district, and all underlying events took place there).

Given that there is no connection to Texas, the inference of forum shopping is strong. SpaceX may believe that its constitutional arguments will receive a more sympathetic ear in this forum, but indicia of forum shopping weighs against the Plaintiff's choice of venue. *Andrade*, 934 F. Supp. at 826 (noting that party's decision to file "a lawsuit in the Southern District strongly suggest[ed] forum-shopping," and that "[v]enue rules were designed precisely in order to prevent such conduct"). Indeed, SpaceX's decision to litigate this matter in Texas is particularly suspect given its strong preference for litigation in California. Its employment agreements with the Terminated Employees requires all matters regarding their employment to be adjudicated in California. Beck Decl., ¶¶ 16-17; Holland-Thielen Decl., ¶¶ 15-16; Lawrence Decl., ¶ 16; Moline Decl., ¶¶ 17-18.

Thus, SpaceX's choice of venue should be given little or no deference. To the extent that the Court considers it at all, it is clearly outweighed by the balance of the other factors. *Hanby*, 144 F. Supp. 2d at 677.

**b.** **Convenience of parties and witnesses**

"The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a)." *Spiegelberg*, 402 F. Supp. 2d at 790. Moreover, "it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Id*. at 790–91 (quoting *State St. Cap. Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994)). *See also Reyes De Perez*, 2006 WL 3053400, at *4 ("The convenience of *non-party* witnesses is of particular importance.").

The Terminated Employees are non-party witnesses and, as the persons whose legal interests are actually at stake in the underlying NLRB Action, their convenience deserves

paramount importance. The vast majority worked for SpaceX in California; none did so in Texas. They filed charges with the NLRB in California because that is the only logical place this dispute should be adjudicated. They should be allowed to present evidence in that venue, not in a district where they have never lived, worked, or indeed had any connection to whatsoever. *See Evergreen Media*, 68 F. Supp. 3d at 678–79 (holding that transfer was appropriate where "most, if not all, potential third-party witnesses are located in the Central District of California").

Although of lesser importance, the party witnesses are in California as well. This includes, among others, Vice President of HR Brian Bjelde, HR Director Lindsay Chapman, and HR Manager Rebeca Balayan.[4] Indeed, the parties themselves are located in California. Plaintiff SpaceX is headquartered in Hawthorne, outside of Los Angeles. Defendant NLRB's agents who have investigated the case and issued the consolidated administrative complaint are all located in the Region 31 office in Los Angeles. *See Spiegelberg*, 402 F. Supp. 2d at 791 (finding transfer appropriate where the plaintiff resided in the transferee forum); *Evergreen Media*, 68 F. Supp. 3d at 678 (finding transfer appropriate where defendant resided in transferee forum, and plaintiff did business there).

Thus, this second and "most important factor" weighs very strongly in favor of transferring venue to California.

c.   **The cost of attendance of witnesses and other trial expenses**

This factor weighs in favor of transfer for largely the same reasons as factor two. The NLRB hearing is scheduled to take place in California, and its agents and trial materials are located there. The vast majority of party and non-party witnesses are located in California. There

---

[4] Upon information and belief, CEO Elon Musk, who will also be a key witness, is peripatetic; but as the CEO of two major California employers—SpaceX and X (formerly Twitter)—California cannot be deemed an inconvenient forum for him.

- 12 -

is no good reason to require the parties to incur the costs and burdens of bringing these witnesses to Texas. *See Spiegelberg*, 402 F. Supp. 2d at 791 (finding this factor supported transfer where "it undoubtedly would be less expensive to secure the appearance of the identified nonparty witnesses"). In fact, there can be little doubt that California is the more convenient venue for SpaceX as well, given that it is headquartered there, and that the lawyers representing it in the NLRB Action are located in California (as are counsel for Terminated Employees). Burgess Decl., ¶ 2-4. Considerations of expense clearly favor transfer of venue.

### d.    Availability of compulsory process

This factor, too, heavily favors transfer. The non-party witnesses in this case are the Terminated Employees who are not subject to compulsory process in the Southern District of Texas. SpaceX's witnesses, by contrast, are subject to compulsory process in the Central District of California, as they reside and work there. Fed. R. Civ. P. 45(c).

### e.    Relative Ease of Access to Sources of Proof

In addition to the fact that the witnesses almost all reside in California, the underlying documentation is all in California, as well—either with the NLRB Region 31 office or with SpaceX headquarters. In *Evergreen Media*, this Court granted transfer to California where the defendant's principal place of business was there, concluding that "[t]here is easy access to sources of proof in California." 68 F. Supp. 3d at 678. The same is true here.

### f.    Place of the alleged wrong

"The place of the alleged wrong is of primary importance in the Court's venue determination." *Lemery v. Ford Motor Co.,* 244 F. Supp. 2d 720, 732 (S.D. Tex. 2002); *Spiegelberg*, 402 F. Supp. 2d at 791 ("The place of the alleged wrong is one of the more important factors in venue determinations."). Here, the wrong took place in California. California is where the Terminated Employees exercised their statutorily protected rights to advocate for a

- 13 -

workplace free from sexual harassment. California is where SpaceX executives fired them for this activity. California is where the underlying NLRB Action is pending. *See Care One*, 2023 WL 4156859, at *4 (holding that the claim of unconstitutionality arose in the proposed transferee district because that is where the underlying NLRB proceeding was pending).

It also should not be overlooked that SpaceX is headquartered in California, including the executives responsible for Human Resources and specifically for the terminations at issue. In *Spiegelberg*, an intellectual property infringement suit, the court noted that such cases focus on the activities of the alleged infringer, its employees, and its documents; "therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." 402 F. Supp. 2d at 792. The same principle is applicable here. This case involves labor actions that took place at SpaceX headquarters in California, and most if not all of the relevant evidence will be located in the HR department there. Thus, this very important factor weighs strongly in favor of transfer.

### g.   Possibility of delay and prejudice

This factor favors transfer, as the case is likely to be adjudicated more quickly in the Central District of California. According to the United States' Courts Management Statistics for September 2023, the Central District of California has 28 judgeships and the median time from filing to disposition in civil cases is five months, while the Southern District of Texas has 19 judgeships and the median time is 7.6 months.[5] Moreover, the Southern District of Texas has over seven times the number of criminal cases than the Central District of California, which receive priority. *Id. See also Evergreen Media*, 68 F. Supp. 3d at 679 (noting these same factors as supporting transfer to Central District of California).

---

[5] *See* Fed. Ct. Mgmt. Stat. (Sept. 30, 2023), available at
https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1.

As to prejudice, SpaceX cannot be prejudiced by litigating in the location of its own headquarters. As the court found in *Evergreen Media,* "Plaintiffs will not be burdened by having to litigate in California, where they do business, where they have legal counsel, and where they are already participating in the arbitration of a related dispute." 68 F. Supp. 3d at 679. Indeed, there is a related legal dispute in California, as Charging Parties have filed complaints of violations of California state employment law with California's Civil Rights Division. Burgess Decl., ¶ 16. Moreover, as trial in the NLRB Action is not set to begin until March 5, SpaceX has ample time to renew its complaint with the transferee court. Thus, this factor favors transfer as well.

In sum, *all* of the private factors—apart from the plaintiff's choice of forum, which should receive no weight here—strongly favor transfer. No private factors weigh in favor of maintaining venue in Texas.

### 3. The public interest factors weigh in favor of transfer.

#### a. Administrative difficulties from court congestion

Charging Parties are not aware of any specific court congestion issues in either this Court or the Central District of California. However, as noted above with respect to the possibility of delay, the relative criminal dockets of the two courts provide good reason to think the case will be adjudicated more quickly in the Central District of California. This factor favors transfer.

#### b. Local interest

As the Fifth Circuit held in *Volkswagon AG*, the local interest lies in the place of the alleged wrongdoing. 371 F.3d at 206. In that case, the Court granted transfer from the Eastern to the Western District of Texas noting that since the underlying vehicle accident occurred in the Western District, "the local interest in having localized interests decided at home weighs heavily in favor of [transfer]." *Id.* "[T]here is absolutely nothing in this record to indicate that the people

- 15 -

of Marshall, or even the Eastern District of Texas, have any meaningful connection or relationship with the circumstances of these claims." *Id*. So, too, here: there is nothing in this record to indicate that the Southern District of Texas has any connection or relationship to the events giving rise to the NLRB Action. The local interest is entirely in California where the NLRB Action is pending. *See also Spiegelberg*, 402 F. Supp. 2d at 792 ("[Transferee court] has a strong interest in this case because the case arises out of events occurring in [that district].")

SpaceX is seeking to enjoin the NLRB's Region 31 in California from prosecuting a case against it. Matters might be different if SpaceX were challenging an NLRB action in Texas, but it is not. This Court and the people that it serves have no interest in whether the NLRB Action proceeds in California. By contrast, the Central District of California and the residents there have a strong interest in whether a major regional employer, with several thousand local employees and an important role as a government defense contractor, is held to account for unlawful labor actions committed there. *See Care One*, 2023 WL 4156859, at *7 (holding that the local interest factor plainly favored transfer to the district where the NLRB proceeding was pending).

### c.  Familiarity of the forum with the law that will govern and avoidance of conflicts of law.

These factors have little bearing here. SpaceX's complaint raises issues of federal constitutional law, and the NLRB Action raises issues of federal labor law. There is no conflict, and the Central District of California is not at a disadvantage to this Court in hearing and resolving such claims.

In sum, the public interest factors heavily favor transfer as well. In particular, the Court should find that transfer is supported by a profound local interest in having this matter resolved in the Central District of California.

- 16 -

VI.    **CONCLUSION**

For the foregoing reasons, Charging Parties respectfully request that the Court grant

Defendants' motion for transfer pursuant to 28 U.S.C. § 1404(a), and transfer this action to the

Central District of California.

Dated: February 2, 2024                    Respectfully submitted,


                                           */s/Anne B. Shaver*
                                           _____

                                           Anne B. Shaver (admitted *pro hac vice*)
                                           Of Counsel
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
                                           Phone: (415) 956-1000
                                           Fax: (415) 956-1008
                                           ashaver@lchb.com

                                           Laurie Burgess (admitted *pro hac vice*)
                                           Of Counsel
                                           Burgess Law Offices, P.C.
                                           498 Utah Street
                                           San Francisco, CA 94110
                                           Phone: (312) 320-1718
                                           lburgess@burgess-laborlaw.com

                                           *Counsel for Charging Parties*

2920103.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/Anne B. Shaver*

Anne B. Shaver

2920103.4