### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | |
| **Plaintiff,** | |
| v. | |
| NATIONAL LABOR RELATIONS BOARD, et al., | Civil Action No. 1:24-cv-00001 |
| **Defendants.** | |

**BRIEF OF PACIFIC LEGAL FOUNDATION AS *AMICUS CURIAE*
IN SUPPORT OF SPACE EXPLORATION TECHNOLOGIES CORP.'S
MOTION FOR A PRELIMINARY INJUNCTION**

## CORPORATE DISCLOSURE STATEMENT

Amicus Curiae Pacific Legal Foundation, a nonprofit corporation organized under the laws of California, states it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................... i

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF IDENTIFICATION ........................................................ 1

STATEMENT OF AUTHORSHIP AND FUNDING ................................... 2

ARGUMENT ........................................................................................... 3

   I.    The NLRB's In-House Adjudication Violates the Allied Requirements
       of the Separation of Powers and Due Process of Law ................................... 3

   II.   The Seventh Amendment Requires a Jury Trial for NLRB Claims for
       Compensatory Damages ...................................................................... 9

    A. An Unfair Labor Practice Claim Is a Suit at Common Law ......................... 10

    B. The NLRB Unfair Labor Practice Claim Is Not a Public Rights Claim ........ 11

    C. The Seventh Amendment Requires Any Legal Claim To Be Tried Before
       a Jury ............................................................................................. 14

       1.  The Seventh Amendment Was Ratified To Prohibit Congress From
          Controlling the Availability of Civil Jury Trials ...................................... 14

       2.  Agency Adjudication of Legal Claims Contradicts the Historical
          Understanding of the Seventh Amendment .............................................. 17

       3.  The Applicability of the Seventh Amendment Should Not Depend on
          Whether a Claim Involves a Public Right ............................................... 19

CONCLUSION ....................................................................................... 20

CERTIFICATE OF SERVICE .................................................................. 21

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*AFL & CIO v. NLRB,*
    57 F.4th 1023 (D.C. Cir. 2023) .................................................................................. 8

*Atlas Roofing Co., Inc. v. OSHRC,*
    430 U.S. 442 (1977) ................................................................................. 17–19

*Axon Enter., Inc. v. FTC,*
    598 U.S. 175 (2023) .......................................................................................... 3, 7

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................................................ 3

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
    494 U.S. 558 (1990) ...................................................................................... 13, 19

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
    526 U.S. 687 (1999) ................................................................................*passim*

*Curtis v. Loether,*
    415 U.S. 189 (1974) .......................................................................... 10–11, 17, 19

*Feltner v. Columbia Pictures Television, Inc.,*
    523 U.S. 340 (1998) ......................................................................................... 10

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) ........................................................................................... 3

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989) ......................................................................... 9, 12–14, 18

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023) ............... 13–14

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137 (1803) ............................................................................. 7

*Martin v. Hunter's Lessee,*
    14 U.S. (1 Wheat.) 304 (1816) ............................................................................ 8

*Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft*
   *Noise, Inc.*,
   501 U.S. 252 (1991) ................................................................ 3

*N.L.R.B. v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937) ........................................................... 12, 19

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   138 S. Ct. 1365 (2018) ................................................... 19–20

*Parsons v. Bedford, Breedlove & Robeson*,
   28 U.S. (3 Pet.) 433 (1830) .......................... 14–16, 18, 20

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ............................................................ 17

*Tamosaitis v. URS Inc.*,
   781 F.3d 468 (9th Cir. 2015) ............................................. 13

*Thryv, Inc.*,
   372 NLRB No. 22 (Dec. 13, 2022) ....................... 6, 8, 11–12

*Tilton v. SEC*,
   824 F.3d 276 (2d Cir. 2016), *cert. denied.* 137 S. Ct. 2187 (2017)........................... 7

*Tull v. United States*,
   481 U.S. 412 (1987) ................................................. 9–10, 17

*United States v. ERR, LLC*,
   35 F.4th 405 (5th Cir. 2022)................................... 11, 15–16

*United States v. Wonson*,
   28 F. Cas. 745 (C.C.D. Mass. 1812) ....................... 10, 14, 16

## U.S. Constitution

U.S. Const. art. I, § 1 ................................................... 4, 8

U.S. Const. art. II, § 1 ...................................................... 4

U.S. Const. art. III, § 1 ................................................. 4, 8

U.S. Const. art. III, § 2, cl. 1............................................ 20

U.S. Const. amend. VII.................................................. 9, 18

**Statutes**

29 U.S.C. § 153(b) ..................................................................................... 5

29 U.S.C. § 157 ....................................................................................... 12

29 U.S.C. § 158 ................................................................................... 11–12

29 U.S.C. § 160 ........................................................................................ 8

29 U.S.C. § 160(a) .................................................................................... 11

29 U.S.C. § 160(b) ........................................................................... 5, 8, 11–12

29 U.S.C. § 160(c) ................................................................................. 8, 11

29 U.S.C. § 160(d) ..................................................................................... 8

29 U.S.C. § 160(f) ..................................................................................... 6

29 U.S.C. § 160(k) .................................................................................... 8

29 U.S.C. § 160(l) ..................................................................................... 8

29 U.S.C. § 161 ........................................................................................ 8

42 U.S.C. § 1983 .................................................................................. 10–11

**Regulations**

29 C.F.R. §§ 101.1–101.43 ........................................................................... 8

29 C.F.R. § 101.2 ...................................................................................... 5

29 C.F.R. § 101.4 ...................................................................................... 5

29 C.F.R § 101.8 ....................................................................................... 5

29 C.F.R. § 101.10(a) ................................................................................. 5

29 C.F.R. § 101.11(a) ................................................................................. 6

29 C.F.R. § 101.11(b) ................................................................................. 6

29 C.F.R. § 101.12(a) ................................................................................. 6

## Other Authorities

3 Blackstone, William, Commentaries on the Laws of England (1768) ................... 11

About NLRB: Division of Judges Directory,
    https://www.nlrb.gov/about-nlrb/who-we-are/division-
    judges/division-judges-directory
    (last visited Jan. 29, 2024) ..................................................................... 5

Baude, William, *Adjudication Outside
    Article III*, 133 Harv. L. Rev. 1511 (2020) ........................................ 5, 8

Chapman, Nathan S. & McConnell, Michael W.,
    *Due Process as Separation of Powers*,
    121 Yale L.J. 1672 (2012) .................................................................. 4–5

*THE FEDERALIST NO. 47* (Hamilton) ............................................................. 4

*THE FEDERALIST NO. 83* (Hamilton) ...................................................... 15–16

Henderson, Edith Guild, *The Background of the Seventh
    Amendment*, 80 Harv. L. Rev. 289 (1966) ........................................... 15

Lawson, Gary, *The Rise and Rise of the Administrative
    State*, 107 Harv. L. Rev. 1231 (1994) .................................................. 6

Lawson, Gary, *Take the Fifth . . . Please!: The Original Insignificance
    of the Fifth Amendment's Due Process of Law Clause*,
    2017 BYU L. Rev. 611 (2017) .............................................................. 9

Nelson, Caleb, *Adjudication in the Political
    Branches*, 107 Colum. L. Rev. 559 (2007) ........................................ 4, 7

Thomas, Suja A., *A Limitation on Congress: "In Suits at
    Common Law"*, 71 Ohio St. L.J. 1071 (2010) ........................... 10, 14–16

Whitehouse, Sheldon, *Restoring the Civil Jury's Role in the
    Structure of Our Government*, 55 Wm. & Mary L. Rev. 1241
    (2014) ................................................................................................ 16

Wolfram, Charles W., *The Constitutional History of the Seventh
    Amendment*, 57 Minn. L. Rev. 639 (1973) ...................................... 15–16

## STATEMENT OF IDENTIFICATION

Founded in 1973, Pacific Legal Foundation (PLF) is a nonprofit, tax-exempt California corporation established for the purpose of litigating matters affecting the public interest. PLF provides a voice in the courts for limited constitutional government, private property rights, and individual freedom. PLF is the most experienced public-interest legal organization defending the constitutional principle of separation of powers in the arena of administrative law. *See, e.g.*, *Sackett v. EPA*, 598 U.S. 651 (2023) (interpreting "waters of the United States" in the Clean Water Act); *Leachco, Inc. v. CPSC*, No. 6:22-cv-232 (E.D. Okla.) (removal power, Article III, Due Process of Law, Seventh Amendment); *McConnell v. USDA*, No. 4:23-cv-00024 (E.D. Tenn.) (Appointments Clause and Seventh Amendment).

The NLRB's in-house case against Space Exploration Technologies Corp. (SpaceX) purports to adjudicate private rights and threatens legal remedies—contrary to the Constitution's Separation of Powers, the Fifth Amendment's Due Process of Law Clause, and the Seventh Amendment. PLF represents individuals and small businesses in similar cases. This experience informs PLF's discussion concerning the NLRB's violations of the Constitution's structural protections of liberty.

## STATEMENT OF AUTHORSHIP AND FUNDING

This amicus brief was not authored in whole or in part by counsel for any party. No party or counsel for a party, and no person other than Amicus or its counsel, contributed money to fund this brief's preparation or submission. Amicus is simultaneously seeking leave of the court to file this brief.

**ARGUMENT**

The NLRB's adjudication power is emblematic of the administrative state's erosion of the Constitution's separation of powers—the doctrine that lies "at the heart of our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 119 (1976). The "leading Framers of our Constitution" "viewed the principle of separation of powers as the central guarantee of a just government." *Freytag v. Comm'r*, 501 U.S. 868, 870 (1991). Through its in-house action here, the NLRB exercises all three powers of government and thereby subjects SpaceX to "an unconstitutionally structured decisionmaking process." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192 (2023). Due process of law is thus entirely absent: instead of making its case to an independent judge—and jury— the NLRB here need only convince itself. This Court should enforce the Constitution's structural guarantees of liberty and hold that the executive branch is precluded from acting as investigator, prosecutor, judge, jury, and appellate court in cases involving the core private rights of individuals and businesses. If the NLRB has a case against SpaceX, it can make that case in a court of law before a jury.

I. **THE NLRB'S IN-HOUSE ADJUDICATION VIOLATES THE ALLIED REQUIREMENTS OF THE SEPARATION OF POWERS AND DUE PROCESS OF LAW**

The "ultimate purpose" of the Constitution's separation of powers is "to protect the liberty and security of the governed." *Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991). As James Madison explained, the "accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." *THE*

*FEDERALIST NO. 47*, at 324 (Madison) (J. Cooke ed., 1961). To prevent tyranny and protect liberty, the Constitution divides all the government's powers into three—and only three—distinct branches. U.S. Const. art. I, § 1; art. II, § 1; art. III, § 1.

The Fifth Amendment's Due Process of Law Clause is an "instantiation of separation of powers." Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 Yale L.J. 1672, 1672 (2012). The close connection between Due Process of Law and the Separation of Powers may not be immediately obvious, but due process of law developed over many centuries through the "increasing institutional separation of lawmaking from law enforcing and law interpreting." *Id.* at 1679. The doctrine of due process of law therefore limits all three powers of government.

Most relevant here, the "allied requirements of due process and the separation of powers protect[]" the private rights of individuals and businesses against "interference by the political branches." Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 562 (2007). Accordingly, the government may not deprive private rights unless all three separate branches of government have acted: the Executive Branch must enforce a law enacted by Congress (with the President's signature or with a veto-proof majority), and the Executive must prove its case to an independent, life-tenured judge and, where appropriate, a jury. *See* Chapman & McConnell, *supra*, at 1679 (Due Process of Law means "that the executive could not deprive anyone of a right except as authorized by law, and that to be legitimate, a deprivation of rights had to be preceded by certain procedural protections

characteristic of judicial process….”); William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1541 (2020) (The “predominant principle of *executive* action is that it cannot deprive people of life, liberty, or property without *judicial* process.” (emphasis added)).

The NLRB’s in-house case against SpaceX requires the concentration of the government’s three powers and thus flouts the allied requirements of due process and the separation of powers. A mere description of the NLRB’s in-house proceedings—in which the NLRB itself acts as investigator, prosecutor, judge, jury, and appellate court—suffices to make this point. The process begins when an NLRB Regional Office, through authority delegated by the NLRB, investigates allegations, after which it may authorize an administrative complaint against employers. *See* 29 U.S.C. § 153(b) (describing NLRB’s delegation authority); *id*. § 160(b) (complaint and notice of hearing); *see also* Compl. ¶¶47–49 (describing NLRB Regional Office 31’s investigation into and authorization of complaint against SpaceX); ¶ 50 (scheduling in-house hearing against SpaceX).

Once an action is authorized, the “Government’s case” is conducted by an NLRB-employed attorney from the applicable Regional Office, and the case is presented to an NLRB-employed ALJ. 29 C.F.R. § 101.10(a); *see also id*. §§ 101.2, .4, .8 (describing procedures).[1] In these hearings, the Federal Rules of Evidence and of Civil Procedure are controlling—but only “so far as practicable.” *Id*. § 101.10(a). At

---

[1] *See* About NLRB: Division of Judges Directory, https://www.nlrb.gov/about-nlrb/who-we-are/division-judges/division-judges-directory (last visited Jan. 29, 2024) (identifying NLRB ALJs).

the end of the hearing, the NLRB's ALJ prepares a decision with findings of fact and conclusions, and a recommended remedy. *Id*. § 101.11(a). As a result of NLRB's legislative rulemaking through the adjudicative process, the remedies can include compensatory damages. *See Thryv, Inc.*, 372 NLRB No. 22, at *9 (Dec. 13, 2022). An ALJ's decision becomes final unless a party files "exceptions"—*i.e.*, an appeal—to the NLRB. *Id*. §§ 101.11(b), .12(b). If an appeal is filed, the NLRB itself reviews the record, including "the exhibits, briefs, and arguments." *Id*. § 101.12(a). The NLRB itself then issues a decision and order in which it may, unlike traditional appellate courts, "adopt, modify, or reject" the ALJs findings of fact and recommendations. *Id*. Up to this point, no one outside of the NLRB is involved in the prosecution or adjudication of the case.

Only after this process is complete may a charged party seek review in a court of law. 29 U.S.C. § 160(f). But even then, because the courts' judicial power is severely restricted in these reviews, the regulated parties' rights are not protected. Thus, rather than making findings of fact with a jury, the court *must* defer to the NLRB's findings and consider them "conclusive" if they are "supported by substantial evidence." *Id*. And, rather than reaching independent judgments, courts regularly defer to agencies' legal conclusions. *See* Gary Lawson, *The Rise and Rise of the Administrative State*, 107 Harv. L. Rev. 1231, 1248–49 (1994) ("[T]he agency decision, even before the bona fide Article III tribunal, possesses a very strong presumption of correctness on matters both of fact and of law.").

Accordingly, even if it were otherwise constitutional for executive agencies to adjudicate private rights (it is not), deferential judicial review at the back-end violates the separation of powers and due process of law because, as a practical matter, it deprives the charged party of effective review by an Article III court.[2] Moreover, belated and deferential review likewise deprives a charged party of its right to an independent, Article III court in the first instance. *See* Nelson, *supra*, at 590 ("When core private rights are at stake, [] not just any sort of 'judicial' involvement [will] do," and courts must "be able to exercise their own judgment" about the details relevant to a particular case or controversy.). Finally, courts' routine deference to agency legal conclusions violates a charged party's right to an independent legal judgment. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

SpaceX pointed out that the NLRB's combination of prosecutor and judge violates the Due Process of Law Clause, which guarantees that "'no man can be a judge in his own case.'" ECF No. 37, at 15 (quoting *Williams v. Pennsylvania*, 579 U.S. 1, 9 (2016)). But, as noted above, a more fundamental problem exists: the Due

---

[2] Unlike SpaceX, many businesses lack the wherewithal to survive agency adjudications. And agencies know they can threaten regulated parties with in-house "trials" and browbeat them into submission. *Cf. Tilton v. SEC*, 824 F.3d 276, 298 n.5 (2nd Cir. 2016) (Droney, J., dissenting) (noting "the vast majority" of respondents settle; and in a "number of cases" the SEC "threaten[s] administrative proceedings" before ALJs in a calculated effort to compel settlement), *cert. denied*, 137 S. Ct. 2187 (2017). *Tilton*'s holding—that district courts lack jurisdiction to hear collateral suits challenging the constitutionality of agency structure—was effectively overruled by *Axon*, 598 U.S. 175.

Process of Law and the allied Separation of Powers prohibit a single branch of government from depriving private rights.

In the NLRB's in-house adjudication, through which it seeks to deprive private rights, the NLRB unconstitutionally exercises all three of the government's powers. It exercises legislative power when it adopts—almost exclusively through in-house adjudication—rules that bind private parties. *See, e.g., Thryv*, 372 NLRB at \*9; *cf. AFL & CIO v. NLRB*, 57 F.4th 1023, 1026–27 (D.C. Cir. 2023) ("Unique among major federal agencies, the [NLRB] sets almost all of its policy through adjudications rather than rules."). It exercises executive power when it investigates and prosecutes alleged wrongdoing. 29 U.S.C. §§ 160, 161. And it exercises judicial power when it resolves factual and legal disputes, makes findings of fact, and issues binding orders on private parties. *Id*. § 160(b)–(d), (k), (l); 29 C.F.R. §§ 101.1–101.43.

The Constitution, of course, vests the government's legislative power in Congress and the judicial power in the courts. U.S. Const., art. I, § 1; art. III, § 1. These vesting clauses, along with the doctrine of due process of law, preclude the executive branch from exercising those powers. *See, e.g.*, *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 330–31 (1816) (Congress "cannot vest any portion of the judicial power of the United States, except in courts ordained and established by itself."); Baude, *supra*, at 1541 ("[O]ne of the most fundamental requirements" of the Due Process of Law Clause is "one of form and legality—as a limit on the legislature's ability to dispense with the courts.").

- 8 -

Because of these fundamental constitutional violations, the (purported) fairness of the procedures within agency adjudications is irrelevant. *See* Gary Lawson, *Take the Fifth . . . Please!: The Original Insignificance of the Fifth Amendment's Due Process of Law Clause*, 2017 BYU L. Rev. 611, 631 (2017) ("Executive procedures, even highly formal, court-like executive procedures, may or may not be a good idea, and they may or may not serve any number of functions, but they cannot legitimate a deprivation that is not otherwise legitimate."). The Separation of Powers and the Due Process of Law Clause preclude the government from depriving rights through mere executive action.

## II. THE SEVENTH AMENDMENT REQUIRES A JURY TRIAL FOR NLRB CLAIMS FOR COMPENSATORY DAMAGES

The Constitution also ensures a specific form of judicial process—the civil jury trial. The Seventh Amendment guarantees that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The phrase "Suits at common law" is broad and includes statutory claims that meet two criteria. First, the statutory claim must be similar to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and provide a legal remedy. *Tull v. United States*, 481 U.S. 412, 417–18 (1987). Second, the claim must regard private rights such that it cannot be assigned to a tribunal other than an Article III court. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 51 (1989). The second factor should be applied as a limited exception to the Seventh Amendment in light of the amendment's original purpose as a prohibition against congressional control of the availability of a jury trial

for any legal claims. *See United States v. Wonson*, 28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (Story, J.); Suja A. Thomas, *A Limitation on Congress: "In Suits at Common Law"*, 71 Ohio St. L.J. 1071, 1106 n.227 (2010). The NLRB unfair labor practice action against SpaceX satisfies both criteria and requires a jury trial.

### A. An Unfair Labor Practice Claim Is a Suit at Common Law

The Seventh Amendment applies to unfair labor practice claims brought by the NLRB because they are tort-like in nature and impose compensatory remedies. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999). A "Suit[] at common law"—for purposes of the Seventh Amendment—includes any "suit[] in which *legal* rights [a]re to be ascertained and determined." *Id.* at 708. For statutory causes of action, they need only be "'analogous'" to an 18th-century English common law cause of action. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998). This comparison looks at "both the nature of the statutory action and the remedy sought." *Id.*

Establishing the nature of the statutory action does not require the identification of a "precise[]" analog in 18th-century English common law. *Tull*, 481 U.S. at 421 (rejecting the necessity of an "'abstruse historical' search"). The comparison is to categories of actions that were brought at common law (*i.e.*, tort, contract, etc.). *See Monterey*, 526 U.S. at 711. For example, the cause of action for violations of constitutional or statutory rights by a state official in 42 U.S.C. § 1983 is a "Suit[] at common law" because it "sound[s] in tort and s[eeks] legal relief." *Id.*; *see also Curtis v. Loether*, 415 U.S. 189, 195 (1974). It is of no moment whether there

is an "action equivalent to" the statutory action under consideration. *Monterey*, 526 U.S. at 709.

Like a § 1983 claim, the NLRB's unfair labor practice claim sounds in tort. *See Monterey*, 526 U.S. at 711. With respect to unfair labor practices, the National Labor Relations Act (NLRA) "merely defines a new legal duty, and authorizes the [NLRB] to compensate a [charging party] for the injury caused by the defendant's wrongful breach." *Curtis*, 415 U.S. at 195; *see also United States v. ERR, LLC*, 35 F.4th 405, 412 (5th Cir. 2022). This is the essence of a tort claim. *See* 3 W. Blackstone, Commentaries on the Laws of England 115–19 (1768); *Monterey*, 526 U.S. at 727 (Scalia, J., concurring in part) ("[T]orts are remedies for invasions of certain rights."). More specifically, the statute prohibits employers from engaging in "unfair labor practice[s]" and empowers the NLRB to adjudicate whether an employer has violated that prohibition. 29 U.S.C. §§ 158, 160(a)–(c). Employers that are found liable can be required to reinstate the employee "with or without backpay." 29 U.S.C. § 160(c). The NLRB has more recently claimed the power to award compensatory damages (although it refuses to call them that) that are the "foreseeable" result of an unfair labor practice. *Thryv, Inc.*, 372 NLRB at *9. Because unfair labor practice claims "can be said to 'soun[d] basically in tort,' and seek legal relief," "the Seventh Amendment jury guarantee extends to" this statutory claim. *Monterey*, 526 U.S. at 709.

## B.   The NLRB Unfair Labor Practice Claim Is Not a Public Rights Claim

Because the NLRB claims the authority to award compensatory damages for a private party, its unfair labor practice claims involve private rights. Agency

- 11 -

adjudication of otherwise legal claims is presently permitted through the public rights exception. *Granfinanciera*, 492 U.S. at 52–53. Where Article III does not require a cause of action to be heard in an Article III court (*i.e.*, where it adjudicates a public right) the Seventh Amendment currently does not apply. *Id.* at 53. But private rights claims must be heard in an Article III court. *See id.* at 54–55.

The NLRA confers a statutory right on workers not to be subjected to unfair labor practices. *See* 29 U.S.C. §§ 157–58. While the NLRB acts as the plaintiff in the case, it does so pursuant to charges raised by former employees. *See* 29 U.S.C. § 160(b). Such a statutory right "must be adjudicated by an Article III court" if (1) it "is not closely intertwined with a federal regulatory program Congress has power to enact," and (2) "if that right neither belongs to nor exists against the Federal Government." *Granfinanciera*, 492 U.S. at 54–55. In 1937, the Court held that unfair labor practice actions did not require a jury trial under the Seventh Amendment because they provided only equitable relief. *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48–49 (1937). But the NLRB's recently claimed authority to award compensatory damages requires a second look. *See Thryv, Inc.*, 372 NLRB at *9.

In reevaluating unfair labor practice claims, the Supreme Court's Seventh Amendment analysis of a bankruptcy trustee's fraudulent conveyance claim is instructive. *See Granfinanciera*, 492 U.S. at 55–56. In *Granfinanciera*, a bankruptcy trustee sought to recover funds from two third parties that the trustee alleged received a fraudulent transfer of funds from the bankruptcy trust. *Id.* at 36. Critically, the third parties had not made any claims against the bankruptcy estate.

*Id.* at 48. The Court held that fraudulent conveyance claims against non-claimants in the bankruptcy required a jury trial. *Id.* at 55–64. Despite the connection of fraudulent conveyance claims to the resolution of the bankruptcy estate, it was not "integral to the restructuring of debtor-creditor relations." *Id.* at 58.

The compensatory relief the NLRB claims to be able to provide creates a break from the NLRB's traditional equitable remedies analogous to the absence of claims filed in bankruptcy in *Granfinanciera*. Traditionally, the NLRB's unfair labor practice claim was "concerned primarily with the public interest in effecting federal labor policy." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990). But the shift to compensatory remedies changes the focus of unfair labor practice claims to "the wrong done the individual" rather than a vindication of a public interest in labor relations. *See id.* That changes the nature of the claim to a legal one. *See id.*

The introduction of compensatory remedies by the NLRB effectively converts the unfair labor practice claim into a wrongful discharge claim—a tort involving a private right. Wrongful discharge is "'a tort so widely accepted in American jurisdictions today'" courts "'are confident that it has become part of our evolving common law.'" *Tamosaitis v. URS Inc.*, 781 F.3d 468, 486 (9th Cir. 2015). The recency of this specific tort is inconsequential; what matters is that it is a common law tort. *See Monterey*, 526 U.S. at 709. Such a claim "neither belongs to nor exists against the Federal Government." *Granfinanciera*, 492 U.S. at 54. And "Congress cannot circumvent the Seventh Amendment jury-trial right simply by passing a statute that

assigns 'traditional legal claims' to an administrative tribunal." *Jarkesy v. SEC*, 34 F.4th 446, 453 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). So, the NLRB's claims against SpaceX must be adjudicated by an Article III court with a jury.

## C. The Seventh Amendment Requires Any Legal Claim To Be Tried Before a Jury

The Seventh Amendment is properly understood to require *any* claim involving legal rights and remedies—including those brought by the federal government—to be tried before a jury. *See Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447 (1830). Consistent with this understanding, the Supreme Court has narrowed the public rights exception to the Seventh Amendment to focus on the nature of the claim rather than the forum. *See Granfinanciera*, 492 U.S. at 52. This counsels for a narrow application of the public rights exception here.

### 1. The Seventh Amendment Was Ratified To Prohibit Congress From Controlling the Availability of Civil Jury Trials

The history of the Seventh Amendment's adoption demonstrates that it was intended—of its own force—to protect the right to a civil jury trial for all legal claims. The Seventh Amendment repudiated the Federalists' argument, made during the 1787 Constitutional Convention and the ratification debates, that the original Constitution empowered Congress to provide for civil jury trials where appropriate—and that it could be trusted to do so. *See* Thomas, *supra*, at 1106 n.227. The defeat of the Federalists' position in the ratification debate informs the scope of the Seventh Amendment. *Wonson*, 28 F. Cas. at 750 (Story, J.).

The ratification of the Seventh Amendment resulted from the 1787 Constitutional Convention's omission of a civil jury trial guarantee from the original

Constitution. *ERR*, 35 F.4th at 409–10; Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639, 656–57 (1973). The lack of a civil jury trial guarantee was raised shortly before the end of the convention. Wolfram, *supra*, at 658–60. But the convention voted down its inclusion. *Id.* at 659–60. One of the principal arguments raised by opponents at the convention was that the power to provide for a jury trial in civil actions could be left to Congress. *Id.* at 659, 664–66; Thomas, *supra*, at 1106 n.227. One delegate, Nathaniel Gorham of Massachusetts, said that the "Representatives of the people may be safely trusted" to determine when a jury was appropriate. Wolfram, *supra*, at 659.

As the convention adjourned and the ratification debate began, the absence of a civil jury trial guarantee was a central argument of the Anti-Federalists against ratification. *Id.* at 667–71; Edith Guild Henderson, *The Background of the Seventh Amendment*, 80 Harv. L. Rev. 289, 295 (1966); *Parsons,* 28 U.S. at 446; *ERR*, 35 F.4th at 410. Anti-Federalists argued that jury trials were "'the surest barrier against arbitrary power'" and that "'[j]udges, unincumbered by juries, have been ever found much better friends to government than to the people.'" *ERR*, 35 F.4th at 409 & n.3. More specifically, they believed that civil jury trials were necessary in suits brought by citizens against the government to ensure a fair trial and in tax-enforcement actions to protect against abuse of the taxing power. Wolfram, *supra*, at 705–08; *THE FEDERALIST NO. 83*, at 563 (Hamilton). They would surely have felt the same way about civil enforcement suits.

Just as they did during the convention, the Federalists responded that Congress would protect the right to a civil jury trial. *ERR*, 35 F.4th at 410; *Wonson*, 28 F. Cas. at 750 (Story, J.); Wolfram, *supra*, at 664–65, 712 n.200; Thomas, *supra*, at 1106 n.227; Sheldon Whitehouse, *Restoring the Civil Jury's Role in the Structure of Our Government*, 55 Wm. & Mary L. Rev. 1241, 1250 & n.54 (2014). During the Virginia ratification convention, Madison argued that the contours of the jury trial right "must be [] left to the discretion of the legislature to modify [] according to circumstances." Wolfram, *supra*, at 712 n.200. Alexander Hamilton took the same position, arguing that it was "impossible" to "fix" the boundaries for the use of a civil jury. *THE FEDERALIST NO. 83*, at 573 (Hamilton).

The Anti-Federalists won. *See ERR*, 35 F.4th at 410. Madison himself introduced what would become the Seventh Amendment in the House of Representatives. Wolfram, *supra*, at 726–29. This victory was a rejection of the Federalists' claim that Congress could define the scope of the civil jury trial. *See* Thomas, *supra*, at 1106 n.227. And it is the background through which the court should "comprehend the scope and object of the amendment." *Wonson*, 28 F. Cas. at 750 (Story, J.); *see also* Wolfram, *supra*, at 672–73. The Seventh Amendment cannot be understood to permit Congress to assign suits at common law to forums without juries. *See* Thomas, *supra*, at 1106 n.227.

Soon after ratification, the U.S. Supreme Court too understood the Seventh Amendment to prohibit Congress from controlling the civil jury trial right in any circumstance. *Parsons*, 28 U.S. at 446–47. In 1830, Justice Story explained that the

Seventh Amendment "may well be construed to embrace *all* suits which are not of equity and admiralty jurisdiction," regardless of how they "settle legal rights." *Id.* at 447 (emphasis added). His understanding encompassed any "suits in which *legal* rights were to be ascertained and determined," not just those involving existing common law claims. *Id.* After all, most, if not all, states had created "new legal remedies" that were tried by jury. *Id.* This expansive view of the Seventh Amendment has persisted into modern times when applied to statutory rights adjudicated in federal court, including for claims brought by the federal government. *See, e.g.*, *Ross v. Bernhard*, 396 U.S. 531, 532–33, 541–42 (1970) (jury trial required in shareholder derivative suit where underlying claim is legal); *Curtis*, 415 U.S. at 195 (jury trial required for fair housing claim for damages); *Tull*, 481 U.S. at 423 (jury trial required for civil money penalty claims); *Monterey*, 526 U.S. at 710 (jury trial required for § 1983 claim).

### 2.   Agency Adjudication of Legal Claims Contradicts the Historical Understanding of the Seventh Amendment

Despite the historical record, the Supreme Court created an ahistorical exception to the Seventh Amendment by permitting Congress to assign certain statutory claims brought by the government to administrative agencies for adjudication. *See Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442, 460–61 (1977). *Atlas Roofing* involved a Seventh Amendment challenge to the imposition of civil money penalties for workplace safety violations by the Occupational Safety and Health Review Commission—an executive branch agency—rather than through a jury trial. *Id.* at 448–49. The Court held that a "new cause of action . . . unknown to

common law" could be assigned by Congress to an administrative tribunal for adjudication. *Id.* at 461. Such an assignment can be made by Congress "even if the Seventh Amendment would have required a jury" if the claim were in a federal court. *Id.* at 455. This is so, the Court explained, because the Seventh Amendment "did not purport to require a jury trial where none was required before." *Id.* at 459.

   *Atlas Roofing* rests on a misunderstanding of the history of the Seventh Amendment and Supreme Court precedent.[3] The Seventh Amendment indeed "preserve[s]" the existing jury trial right. U.S. Const. amend. VII; *Atlas Roofing*, 430 U.S. at 459. But the word "preserve[s]" was *not* understood to limit the right to a jury trial exclusively to common law claims that existed in the late 18th-century. *Parsons*, 28 U.S. at 446–47. The Court in *Atlas Roofing* cited no authority to support this contradiction of the Court's earlier—and correct—view in *Parsons. Atlas Roofing*, 430 U.S. at 459. And the Court has since, at least partially, resurrected *Parsons. See Granfinanciera*, 492 U.S. at 41–42. *Atlas Roofing* also contradicts *itself* by recognizing that the Seventh Amendment applies to certain statutory claims *if* they are "assigned [] to a federal court." *Id.* at 455. But Congress's eliminating the jury trial in civil suits involving the government is precisely what the Anti-Federalists sought to prevent. *See supra*, Part II.C.1.

---

[3] The Supreme Court itself has recognized the overly broad sweep of *Atlas Roofing. See Granfinanciera*, 492 U.S. at 52 ("'[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity.'"); *id.* at 79 (White, J., dissenting) ("Perhaps . . . *Atlas Roofing* is no longer good law.").

The Court also extended its mischief by reinterpreting *Jones & Laughlin* to broadly uphold the practice of agency adjudication. *Atlas Roofing*, 430 U.S. at 453–54. *Atlas Roofing* claimed that *Jones & Laughlin* "upheld 'congressional power to entrust enforcement of statutory rights to an administrative process or specialized court of equity free from the strictures of the Seventh Amendment.'" *Id.* at 454 (quoting *Curtis*, 415 U.S. at 194–95). But that is not the holding of *Jones & Laughlin*.

*Jones & Laughlin* dealt with an equitable NLRB claim that the Seventh Amendment would never reach. 301 U.S. at 48–49. At issue was whether the NLRB's award of net wages to the charging employees violated the Seventh Amendment. *Id.* at 48. The Court held that the wages were "incident to equitable relief" and did not convert the proceeding into a suit at common law. *Id.* The backpay was equitable restitution because it was money "wrongfully held" by the employer that should have been paid absent the unlawful discharge. *See Chauffeurs*, 494 U.S. at 571. *Jones & Laughlin* has nothing to say about the Seventh Amendment's applicability to awards of compensatory damages—a legal remedy—by administrative agencies, including the NLRB. Its description in *Atlas Roofing* is another example of the opinion misusing the historical record to undermine the Seventh Amendment.

### 3. The Applicability of the Seventh Amendment Should Not Depend on Whether a Claim Involves a Public Right

The Seventh Amendment should be applied to legal claims—whether common law or statutory—without engaging in the cumbersome public rights analysis. The Court has recognized that a public right has not been "'definitively explained'" nor have the existing precedents "'been entirely consistent.'" *Oil States Energy Servs.,*

*LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018) (citation omitted). And under the historical understanding of the Seventh Amendment, engaging with that confusion is unnecessary. *See supra*, Part II.C.1. A jury trial should be required for *any* statutory claims that are by their "'nature'" analogous to a common law cause of action in late 18th-century England and provide a legal remedy. *See Monterey*, 526 U.S. at 724 (Scalia, J., concurring in part).

This approach would also be consistent with Article III, which "extend[s]" the "judicial power" "to all cases, in Law, and Equity." U.S. Const. art. III, § 2, cl. 1. The meaning of the word "law" in Article III is coextensive with the meaning of the phrase "common law" in the Seventh Amendment. *Parsons*, 28 U.S. at 447 ("By common law, they meant what the constitution denominated in the third article 'law.'" (emphasis omitted)). So, any "suits in which *legal* rights [are] to be ascertained and determined" must be tried by a jury in an Article III court. *Id.*

## CONCLUSION

For all the foregoing reasons, this Court should GRANT SpaceX's motion for a preliminary injunction.

DATED: January 31, 2024.

Respectfully submitted,

/s/ *Joshua M. Robbins*

OLIVER J. DUNFORD
PACIFIC LEGAL FOUNDATION
Florida Bar #1017791
4400 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
Telephone: (561) 691-5000
ODunford@pacificlegal.org

JOSHUA M. ROBBINS
PACIFIC LEGAL FOUNDATION
Attorney-in-Charge
Virginia Bar #91020
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
JRobbins@pacificlegal.org

*Counsel for Amicus Curiae Pacific Legal Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system, which will send notice of this submission to all counsel of record.

s/ *Joshua M. Robbins*
JOSHUA M. ROBBINS